SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

January 25, 2021

Magistrate Judge Nathanael M. Cousins
San Jose Federal Courthouse, Courtroom 5, 4th Floor
280 South 1st Street
San Jose, CA 95113

      Re:    *Palantir Technologies Inc. v. Marc Abramowitz, et al.*, No. 5:19-cv-06879-BLF

Dear Magistrate Judge Cousins:

    Defendants respectfully request an order compelling Palantir to produce documents responsive to Requests for Production 6, 7, 12, 17, 95, 97–103, and a complete response to Interrogatory 8. These requests seek information concerning the credibility of Palantir's trade secret allegations. Palantir has refused to provide the requested discovery on the ground that its litigation conduct is not discoverable unless it is directly tethered to an "operative" pleading (*i.e.*, Palantir's ***sixth*** complaint or ***third*** trade secret disclosure). Palantir's argument "misses the point. Although it is true that [Defendants] will not have to respond to the allegations in these prior complaints [or trade secret disclosures], these documents . . . still contain admissions [and inconsistent statements] . . . relevant to [Defendants'] case." *United States ex rel. Brown v. Celgene Corp.*, 2014 WL 12588296, at *1, n.3 (C.D. Cal. Mar. 21, 2014).

    **Background**. This proceeding is one of many disputes between Palantir and Abramowitz arising from a mid-2015 phone call between Abramowitz and Palantir's CEO, Alex Karp, where Karp accused Abramowitz of theft. *See KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738 (Del. 2019). Abramowitz then decided to exit his Palantir investment. *Id.* Palantir blocked Abramowitz's sale, which is the subject of litigation pending in Delaware Superior Court. Before filing that case, KT4 sent Palantir a request under an Investors' Rights Agreement ("IRA"), which sought information concerning Palantir's misconduct and financial statements. *Id.* at 745. Palantir initially "led KT4 to believe it was considering KT4's information request" only to "pull[] the rug out from under KT4" by retroactively amending the IRA to "eviscerate[ KT4's] contractual right to seek information." *Id.* Palantir filed this lawsuit ***the same day***, asking the Court to approve the retroactive amendment and asserting Abramowitz stole its trade secrets.

    This Court is familiar with the evolution of Palantir's trade secret disclosures, which have vacillated wildly with respect to both the number and type of secrets supposedly misappropriated. *See* Dkt. No. 79-4 at 1, 5-6. The first disclosure contained 39 trade secrets comprised almost entirely of "compilation" secrets with no "design concepts," whereas Palantir's "operative" disclosure contains 23 trade secrets comprised of 8 "design concepts" and zero "compilations." In between, Palantir filed a disclosure alleging the misappropriation of 164 trade secrets.

    **Defendants' Discovery Requests**. The parties met and conferred telephonically and in writing, and Palantir has refused to provide discovery for the following requests at issue here:

    <u>RFP 95, 97–103</u>: Requests 95 and 98 ask for documents "concerning [Palantir's] claim" that the trade secrets identified in Palantir's first and second "trade secret disclosure[s] . . . are actually trade secrets and that those trade secrets were disclosed to Defendants;" Request 97 is for all documents "concerning the preparation" of the first trade secret disclosure; and Request 101 is

for documents concerning the difference between Palantir's first and third trade secret disclosures. Request 100 asks for all documents referenced or consulted in the preparation of any of Palantir's trade secret disclosures. Requests 99, 102, and 103 relate to Palantir's in-court representations concerning its first and second disclosures, including documents used to prepare declarations on the trade secret issues submitted by a key witness in this case. Palantir has refused to provide the responsive documents, asserting that information relating to prior allegations is not discoverable. But Palantir cannot "advance one version of the facts in its pleadings" and then amend those pleadings, "sage in the belief that the trier of fact will never learn of the change in stories." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984). Palantir has offered inconsistent versions of what it allegedly provided Abramowitz, and this information remains "discoverable based on [Palantir's] prior allegations." *See Du Preez v. Banis*, 2015 WL 13567128, at *2 (D. Haw. Sept. 28, 2015). Defendants are entitled to full discovery as to what Palantir changed and why.

Interrogatory 8: Interrogatory 8 asks Palantir to explain the difference between its first trade secret disclosure and its third, "operative" trade secret disclosure. Palantir's interrogatory response states that its "second amended trade secret disclosure is different from the disclosure it served on November 11, 2017 because the state court ordered Palantir to submit a revised disclosure pursuant to the court's guidance, and Palantir complied with that order." That is not a response. The California Superior Court instructed Palantir to add particularity to its disclosure, it did not order Palantir to manufacture a completely different set of trade secrets, including 8 "design concept" trade secrets that Palantir told the Superior Court were "not at issue" in this litigation. More importantly, how and why Palantir changed the at-issue "trade secrets" bears directly on the credibility of the allegations Palantir is now making.

RFP 12: Request 12 asks for documents in which Palantir made representations regarding the status of its intellectual property. Each Palantir Stock Purchase Agreement to which Defendants are a party contains a representation that every person with access to Palantir's trade secrets has executed a "Proprietary Information Agreement" and that Palantir is not aware of any violations thereof. Despite raising nearly $1 billion in its Series K round *after* its CEO accused Abramowitz of theft, Palantir has refused to produce documents containing such representations. Defendants are entitled to discover if Palantir made representations to Series K investors (or customers) inconsistent with the arguments it intends to make to the jury.

RFP 6, 7, and 17: Requests 6 and 7 ask for documents related to the IRA and Palantir's amendments; Request 17 asks for the financial statements that KT4 requested in its August 2016 IRA demand. Palantir retroactively amended the IRA to strip KT4 of its information rights and, the same day, filed this lawsuit based on years-old allegations. Defendants are entitled to discover "whether [Palantir] has a particular, personal motivation for bringing suit," *Finisar Corp v. Nistica, Inc.*, 2015 WL 3988132, at *3 (N.D. Cal. June 30, 2015), including what motivated Palantir to "pull[] the rug out from under KT4" and file this litigation.

RFP 119: Palantir is defending the tortious interference case in Delaware, in part, by claiming that Abramowitz filed that suit in retaliation for Palantir's filing of this case. As a result, the Delaware case has included considerable testimony regarding Palantir's purported trade secrets. Request 119 asks Palantir to produce this testimony, and Palantir has conditioned its production of transcripts on Defendants' agreement to do the same. Defendants are willing to produce transcripts within their possession with one exception: the Delaware Superior Court held Palantir in contempt for violating its protective order and ordered a sanction that specifically prohibits Palantir from using Abramowitz's deposition in this action. Palantir cannot condition its discovery obligations on Defendants' agreement to relieve Palantir of that sanction.

Respectfully submitted,

*/s/ Jack P. DiCanio*

Jack P. DiCanio
*Counsel for Defendants*