United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

PALANTIR TECHNOLOGIES INC.,

　　　　　　　Plaintiff,

　　　　v.

MARC L. ABRAMOWITZ, et al.,

　　　　　　　Defendants.

Case No.  19-cv-06879-BLF

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

[Re:  ECF 127]

　　　　Before the Court is a motion filed by Defendants Marc L. Abramowitz, KT4 Partners LLC ("KT4"), and Marc Abramowitz Charitable Trust No. 2 ("the Trust") (collectively, "Defendants") to dismiss the fifth amended complaint ("5AC") filed by Plaintiff Palantir Technologies, Inc. ("Palantir"). *See* Mot. to Dismiss ("Mot."), ECF 127. The Court held a hearing on the motion on March 4, 2021. For the reasons discussed below, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.

## I.　　BACKGROUND

### A.　　Factual Background

　　　　Palantir is a data analytics company that was founded in 2003. Fifth Am. Compl. ("5AC") ¶¶ 1, 16-17, ECF 126. To preserve its competitive advantage, Palantir allegedly places great emphasis on maintaining the secrecy of its proprietary information, and therefore its trade secrets constitute some of its most valuable assets. 5AC ¶¶ 2, 20. For example, Palantir allegedly restricts access to its sensitive internal information to employees with proper authorization and who need the information to perform their jobs. 5AC ¶ 20. Palantir also allegedly monitors its network for potential risks and protects its networks from unauthorized access. 5AC ¶ 20. Additionally, Palantir allegedly restricts access to its facilities and requires employees with access to proprietary

information to sign confidentiality agreements. 5AC ¶¶ 21-22.

Marc Abramowitz is a private investor with no technical or engineering background. 5AC ¶¶ 3, 24. He became interested in Palantir in 2005, and he invested in the company through KT4 and the Trust, "two entities Abramowitz controls and uses to make investments and hold interests in companies with new or emerging technologies." 5AC ¶¶ 3, 24. KT4 is a limited liability company that Abramowitz manages. 5AC ¶ 25. Abramowitz wholly owns a company with a 49% ownership in KT4, and the remaining 51% is owned by a handful of Abramowitz family trusts, including the Trust. 5AC ¶ 25. Abramowitz also administers the Trust and is its trustee and settlor. 5AC ¶ 25. Rather than personally invest in companies, Abramowitz uses the Trust and KT4 to invest in companies. 5AC ¶ 25.

Abramowitz allegedly leveraged his investment in Palantir to position himself as a trusted advisor, agent, and fiduciary of Palantir. 5AC ¶¶ 4, 26. KT4 and the Trust's investments in Palantir assured Palantir that Abramowitz would not betray its trust. 5AC ¶ 26. By 2012, as Palantir's alleged agent, advisor, and fiduciary, Abramowitz allegedly was actively involved in Palantir's day-to-day activities, frequently discussed Palantir's business with company executives, worked or purported to work on various projects on behalf of Palantir, and purported to seek guidance from Palantir in connection with his work for the company. 5AC ¶ 27. Palantir alleges that between 2012 and 2014, it assented to Abramowitz acting as an agent on its behalf on several occasions, and Abramowitz allegedly agreed to be subject to Palantir's supervision and control for these projects. 5AC ¶ 28. Palantir also alleges that Abramowitz advertised himself as Palantir's "strategic advisor in the business development function." 5AC ¶ 29.

Between 2010 and 2015, Abramowitz visited Palantir's offices on 60 occasions, held numerous offsite meetings, and even requested a permanent office at Palantir's facilities. FAC ¶ 31. Palantir alleges that, because of Abramowitz's promises to secure new lines of business for Palantir, find clients for Palantir's products, and otherwise be helpful to Palantir, the company "invited Abramowitz into its inner circle and relaxed its ordinary care and vigilance with respect to outsiders precisely because Abramowitz held himself out to Palantir and others to be acting as an insider for the benefit of Palantir." 5AC ¶ 33. As a result, Abramowitz gained access to

Palantir's proprietary information. 5AC ¶ 33.

Palantir alleges that Abramowitz signed several confidentiality agreements that required him, KT4, and the Trust to safeguard Palantir's confidential and proprietary information. 5AC ¶ 34. On August 14, 2012, Abramowitz, in his capacity as trustee of the Trust, electronically executed the Preferred Stock Transfer Agreement (the "2012 Transfer Agreement"), which memorializes the confidentiality obligations of the Trust and all "Covered Persons." 5AC ¶ 35; *see* Mot., Ex. A, 2012 Transfer Agreement, ECF 127-2. The 2012 Transfer Agreement contains a section on confidentiality, which states, in relevant part:

> Each of Purchaser and Seller agrees to, and agrees to cause its respective Covered Persons to, keep confidential and refrain from using or disclosing all agreements, documents and other information regarding the Company or its securityholders provided or made available to Purchaser or Seller either (a) in connection with the exploration, negotiation, execution, and closing of this Agreement or (b) in its capacity as a stockholder of the Company following the date of this Agreement . . . . Each of Purchaser and Seller is responsible thereunder and shall be liable for any breaches of this Section 7 and any disclosure or misuse of any information or documents described in this section by its respective Covered Persons.

2012 Transfer Agreement § 7.

On July 12, 2014, Abramowitz, in his personal capacity, electronically executed a Non-Disclosure Agreement (the "NDA"). 5AC ¶ 36; *see* Mot., Ex. C, NDA, ECF 127-4. Among other things, the NDA states that Abramowitz will "hold all Proprietary Information in strict confidence and will not use (except as expressly authorized by Palantir) or disclose any Proprietary Information for any purpose." NDA ¶ 1. The NDA defines Proprietary Information as "non-public business, technical or other information, materials and/or ideas of Palantir," which "shall include, without limitation, anything you learn or discover as a result of exposure to or analysis of any Proprietary Information." NDA at 1.

On July 17, 2015, Abramowitz, in his capacity as managing member of KT4, electronically executed a Preferred Stock Transfer Agreement (the "2015 Transfer Agreement"). 5AC ¶ 37; *see* Mot., Ex. B, 2015 Transfer Agreement, ECF 127-3. The 2015 Transfer Agreement memorializes the confidentiality obligations of both KT4 and all "Covered Persons." 5AC ¶ 37. The 2015 Agreement contains a section on confidentiality, which states, in relevant part:

Each of Purchaser and Seller agrees to, and agrees to cause its respective Covered Persons to, keep confidential and refrain from using or disclosing all agreements, documents and other information regarding the Company or its securityholders provided or made available to Purchaser or Seller either (a) in connection with the exploration, negotiation, execution, and closing of this Agreement or (b) in its capacity as a stockholder of the Company following the date of this Agreement, except (i) such information that is required to be provided to legal or accounting advisors to the Purchase and Seller . . . and (ii) any information that (A) is or becomes publicly available other than by breach of this provision by the Purchaser or Seller, . . . (B) was previously known to the Purchaser or Seller, as applicable, completely free of restrictions at the time of disclosure, or (C) was independently developed by the Purchaser or Seller . . . . Each of Purchaser and Seller is responsible hereunder and shall be liable for any breaches of this Section 7 and any disclosure or misuse of any information or documents described in this section by its respective Covered Persons.

2015 Transfer Agreement § 7.

By the early 2010s, Palantir was expanding its technology to target: "(i) clinical drug trials and health insurance (the "Healthcare Technology"); (ii) cyber insurance and cyber security (the "Cyber Technology"); and (iii) natural resources exploration and management (the "Natural Resources Technology"). 5AC ¶ 39. Between 2012 and 2014, Abramowitz engaged in discussions with Palantir's employees regarding these technologies and gained access to Palantir's confidential and proprietary information regarding its Healthcare, Cyber, and Natural Resources Technologies. 5AC ¶¶ 42, 45-65. In 2014, 2015, and 2018, Abramowitz filed 14 domestic and international patent applications based on this confidential and proprietary information, falsely claiming on each application to be the sole inventor. 5AC ¶¶ 43, 66-71. And between 2014 and 2018, Abramowitz took steps to launch competing businesses to profit from Palantir's trade secrets and inventions. 5AC ¶¶ 44, 74-78. In executing this scheme, Abramowitz acted for the benefit of himself and the "Abramowitz Enterprise," which allegedly includes KT4 and the Trust. 5AC ¶¶ 40, 44. Palantir alleges that it was harmed by Defendants' actions because it spent millions of dollars developing its Healthcare, Cyber, and Natural Resources Technologies; lost value from its trade secrets by Defendants' unauthorized publication of the trade secrets in patent applications; spent significant funds and resources investigating Defendants' misconduct; initiated proceedings before the U.S. Patent and Trademark Office ("USPTO") and before German courts to establish that Palantir is the true inventor of the patent applications at issue; lost substantial

4

1  financial gain; and lost valuable business opportunities. 5AC ¶ 70.

2      **B.      Procedural Background**

3      Based on these actions, Palantir initiated this lawsuit in the County of Santa Clara Superior

4  Court on September 1, 2016. *See* Not. of Removal ¶ 2, ECF 1. The Superior Court twice granted

5  Palantir's motions for leave to file an amended complaint. Not. of Removal ¶¶ 2-3. After Palantir

6  timely filed the Third Amended Complaint, which added a federal civil claim under the Racketeer

7  Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c), Defendants removed

8  the action to federal court. *See generally* Not. of Removal. On February 13, 2020, the Court

9  granted Defendants' motion to dismiss Palantir's third amended complaint. ECF 63. On March 16,

10  2020, Palantir filed its fourth amended complaint, and the Court granted Defendants' motion to

11  dismiss on July 13, 2020. ECF 114. Palantir then filed a fifth amended complaint on August 12,

12  2020. ECF 115. The parties stipulated to Palantir filing a modified fifth amended complaint, and

13  Palantir did so on September 24, 2020. *See* 5AC. This version is the operative complaint in this

14  dispute.

15      The operative fifth amended complaint asserts causes of action for (1) violation of the

16  federal RICO Act, 18 U.S.C. § 1962(c); (2) breach of contract; and (3) misappropriation of trade

17  secrets in violation of California Civil Code § 3426, *et seq*. 5AC ¶¶ 72-93. On September 25,

18  2020, Defendants moved to dismiss the fifth amended complaint. *See* Mot. Palantir opposes. *See*

19  Opp'n to Mot. ("Opp'n"), ECF 130.

20  **II.    LEGAL STANDARD**

21      "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a

22  claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*

23  *Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d

24  729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as

25  true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.

26  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court

27  need not "accept as true allegations that contradict matters properly subject to judicial notice" or

28  "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

*United States District Court*
*Northern District of California*

5

inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

## III.   DISCUSSION

### A.   Request for Judicial Notice[1]

Defendants request judicial notice of the following documents on the basis that these documents are incorporated-by-reference into the fifth amended complaint: Mot., Ex. A, 2012 Transfer Agreement, ECF 127-2; Mot., Ex. B, 2015 Transfer Agreement, ECF 127-3; Mot., Ex. C,

---

[1] Palantir claims that Defendants object to Palantir's incorporation-by-reference of its Second Amended Trade Secret Disclosure (the "Disclosure"). Opp'n 23. The Court disagrees and finds that Defendants are arguing that the Disclosure does not fix Palantir's failure to allege with particularity the trade secrets that were disclosed to Abramowitz and which parts of the patent applications contain those purported trade secrets. *See* Mot. 22. Defendants do not address any alleged objection in their Reply brief. *See* Reply, ECF 132. The Court finds no objection to Palantir's incorporation-by-reference of the Disclosure.

United States District Court
Northern District of California

NDA, ECF 127-4; Reply, Ex. D, January 19, 2014 email chain, ECF 132-2; Ex. E, April 20, 2014 email chain, ECF 132-3; and Ex. F, May 29, 2014 email chain, ECF 132-4. Palantir does not object to judicially noticing these documents.

Palantir requests the Court take judicial notice of two documents: Opp'n, Ex. A, Notice of Allowance in regard to Marc L. Abramowitz's Patent Application No. 14/919,506 ("Notice of Allowance"), ECF 130-2; and Ex. B, November 16, 2015 authorization letter for a wire payment from KT4 Partners, LLC ("Authorization Letter"), ECF 130-3. Defendants object to Ex. B as improper external evidence. Reply 5, ECF 132.

District courts generally may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). When "matters outside the pleading are presented to and not excluded by the court," the motion to dismiss converts into a motion for summary judgment under Rule 56, where both parties must have the opportunity "to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Courts may take judicial notice of matters either that are "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The incorporation-by-reference doctrine "permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (internal quotations and citation omitted). Accordingly, the Court finds it proper to take judicial notice of the documents requested by Palantir.

The Court will also take judicial notice of the Notice of Allowance as well, as it is a matter of public record. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 827 (N.D. Cal. 2019) ("Specifically, a court may take judicial notice: (1) of matters of public record, (2) that the market was aware of information contained in news articles, and (3) publicly accessible websites whose

1   accuracy and authenticity is not subject to dispute.") (internal citations and quotation marks

2   omitted). Palantir has not provided any argument as to why it is proper to take judicial notice of

3   the Authorization Letter, and the Court declines to take judicial notice of this document as it does

4   not qualify under the Federal Rule of Evidence 201 or incorporation-by-reference exceptions.

5       **B.   RICO Claim**

6       Defendants argue that Palantir has failed to state a RICO claim. Mot. 5-18. This Court

7   agrees and finds that Palantir has not sufficiently pled the requisite continuity needed to establish a

8   pattern of racketeering activity.

9       To state a RICO claim, a plaintiff must allege that "the defendant engaged in (1) conduct

10  (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must

11  establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset v.*

12  *Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002); *see* 18 U.S.C. § 1962(c). Thus,

13  Palantir's RICO claim requires a pattern of racketeering activity, and, "[a]t a minimum, a 'pattern'

14  requires that the predicate criminal acts be 'related' and 'continuous.'" *Allwaste, Inc. v. Hecht*, 65

15  F.3d 1523, 1527 (9th Cir. 1995) (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S.

16  229, 239 (1989)). The Court will address the arguments regarding the alleged pattern of

17  racketeering activity and continuity.

18      **i.   Pattern of Racketeering Activity**

19      "A 'pattern of racketeering activity requires at least two acts of racketeering activity, one

20  of which occurred after 1970 and the last of which occurred within 10 years after the commission

21  of a prior act of racketeering activity.'" *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,

22  865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (quoting 18 U.S.C. § 1961(5)). "[P]redicate acts

23  alleging fraud must be pleaded with particularity." *In re WellPoint*, 865 F. Supp. 2d at 1036 (citing

24  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004*); see also Schreiber Distrib.*

25  *Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). Additionally, "'[i]n the

26  context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the

27  role of each defendant in the alleged fraudulent scheme.'" *In re Chrysler-Dodge-Jeep Ecodiesel*

28  *Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 973 (N.D. Cal. 2018) (quoting

8

1    *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (internal quotation marks omitted)).

2          Racketeering activity includes, among other things, mail and wire fraud. *See* 18 U.S.C. §

3    1961(1). "Mail and wire fraud are identical offenses except for the particular method used to

4    disseminate the fraud." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*

5    *("VW Franchise Dealers")*, No. MDL 2672 CRB (JSC), 2017 WL 4890594, at *11 (N.D. Cal.

6    Oct. 30, 2017) (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th

7    Cir. 2014)). "The elements are (1) a scheme to defraud, (2) the use of the mails or wires to further

8    that scheme, and (3) the specific intent to defraud." *VW Franchise Dealers*, 2017 WL 4890594, at

9    *11 (citing *Eclectic Props.*, 751 F.3d at 997. The "scheme to defraud" element requires "an

10   affirmative, material misrepresentation." *VW Franchise Dealers*, 2017 WL 4890594, at *11 (citing

11   *United States v. Green*, 592 F.3d 1057, 1064 (9th Cir. 2010). Additionally, the "scheme to

12   defraud" element of mail and wire fraud is "treated like conspiracy in several respects." *United*

13   *States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2002). "As a result, each member of the scheme

14   does not need to make a separate misrepresentation." *VW Franchise Dealers*, 2017 WL 4890594,

15   at *12. Accordingly, Palantir can demonstrate that Defendants engaged in the predicate acts of

16   mail and wire fraud with allegations that each Defendant was (1) a knowing participant in a

17   scheme to defraud, (2) that each Defendant participated in the scheme with the intent to defraud,

18   and (3) that a co-schemer's acts of mail and wire fraud occurred during each Defendant's

19   participation in the scheme and were within the scope of the scheme. *VW Franchise Dealers*, 2017

20   WL 4890594, at *13 (citing *Stapleton*, 293 F.3d at 1117-18).

21          The Parties are in agreement that the alleged predicate acts are wire fraud based on alleged

22   affirmative misrepresentations and omissions. 5AC ¶ 85; Mot. 9; Opp'n 9. Defendants argue that

23   Palantir has failed to adequately allege a pattern of racketeering for multiple reasons, including a

24   failure to meet Rule 9(b)'s heightened pleading standard required for allegations of fraud. Mot. 8-

25   16. Defendants argue Palantir has not made any allegations against KT4 or the Trust that identify

26   their alleged role in the purported scheme. Mot. 9-10. Defendants argue that Palantir fails to allege

27   that KT4 or the Trust made any misrepresentation or omission or that KT4 or the Trust were under

28   a duty to disclose. *Id.* 10. Defendants additionally argue that Palantir fails to allege any actionable

United States District Court
Northern District of California

1   fraud against Abramowitz under its theories of affirmative misrepresentations and omissions. *Id.*

2   10-16.

3          Palantir responds that it has alleged Defendants' fraudulent scheme with the requisite

4   particularity and further details its theories. Opp'n 9-18. Palantir alleges KT4 and the Trust, which

5   are controlled and managed by Abramowitz, became early investors in Palantir, and Abramowitz

6   leveraged that investment to position himself as a trusted advisor, agent, and fiduciary to the

7   company. 5AC ¶ 83. According to Palantir, Abramowitz then used his position to gain access to

8   Palantir's confidential and proprietary information and then misused that information by filing

9   patent applications naming himself as the sole inventor and establishing competing businesses for

10  the benefit of himself, KT4, and the Trust. 5AC ¶ 83; *see also* Opp'n 10-11. Abramowitz,

11  according to Palantir, obtained this information based on misrepresentations to induce the sharing

12  of confidential information and through omissions concerning his fraudulent plans. Opp'n 10-15.

13  Palantir argues that the omissions are actionable because Abramowitz owed a fiduciary duty to

14  Palantir because of his "special relationship of trust and confidence" with Palantir. Opp'n 12-13.

15         Palantir has not met the Rule 9(b) pleading standard regarding KT4 and the Trust because

16  Palantir has failed to plausibly plead that either KT4 or the Trust violated the terms of their

17  respective stock transfer agreements, which were the only documents binding them to

18  confidentiality, or that either entity made any misrepresentations or omissions. Palantir's other

19  allegations regarding KT4 and the Trust's supposed fraudulent conduct are too speculative or

20  attenuated. As to Palantir's theory that a fraudulent scheme was developed at the time of the initial

21  2005 investment by KT4 and the Trust, *see* 5AC ¶¶ 24, 27, which was allegedly put into play by

22  Abramowitz to enable him to worm his way into the company so that he could obtain and

23  misappropriate Palantir's confidential and proprietary information, the fifth amended complaint

24  fails to plausibly allege facts to support that supposed long-term, premeditated scheme.

25         Separately, the Court is satisfied that Palantir has alleged sufficient facts to support

26  misrepresentations and omissions by Abramowitz, acting in his personal capacity, but Palantir has

27  failed to tie the Defendants together to support a pattern of racketeering. However, even if Palantir

28  could cure these deficiencies by further amendment, the RICO claim would still fail for lack of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   continuity.

### ii.   Continuity

2   "The continuity requirement reflects Congress 'concern[ ] in RICO with long-term

3   criminal conduct.'" *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL

4   1048252, at *10 (N.D. Cal. Mar. 5, 2019) (quoting *H.J.*, 492 U.S. 229, 240 (1989)). "[C]ontinuity

5   is both a closed- and open-ended concept, referring either to a closed period of repeated conduct or

6   to past conduct that by its nature projects into the future with a threat of repetition." *Mocha Mill*,

7   2019 WL 1048252, at *10 (internal quotation marks omitted).

8   "Closed-ended continuity is established by showing that related predicate acts occurred

9   over a substantial period of time." *Id.* (internal quotation marks omitted). "[T]he Ninth Circuit has

10   explained that activity spanning only a matter of months, involving a single victim, with a singular

11   goal, cannot sustain a RICO claim." *Mocha Mill, 2019 WL 1048252*, at *10 (citing *Medallion

12   Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987)). A

13   "single episode," containing multiple predicate acts, "having the singular purpose of

14   impoverishing [the plaintiff]," with "no suggestion that these defendants…ever intended anyone

15   but [plaintiff] any harm" also cannot sustain a RICO claim. *Mocha Mill, 2019 WL 1048252*, at *10

16   (quoting *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992)).

17   On the other hand, "[o]pen-ended continuity is the threat that criminal conduct will

18   continue into the future," and "[i]t is established by showing either that the predicate acts include a

19   specific threat of repetition extending indefinitely into the future or that the predicate acts were

20   part of an ongoing entity's regular way of doing business." *Id.* (internal quotation marks omitted).

21   As a preliminary matter, Palantir argues that "[c]ase law suggests that the burden on

22   plaintiffs to plead [this] element is relatively low," citing *Slack v. Int'l Union of Operating

23   Engineers*, No. C-13-5001 EMC, 2014 WL 4090383, at *24 (N.D. Cal. Aug. 19, 2014) (alteration

24   in original). Opp'n 18. However, *Slack* cites one Second Circuit opinion and two cases from the

25   Southern District of New York for this contention and suggested that the plaintiffs in its case

26   needed to plead more facts to meet its burden on the continuity element. *Slack*, 2014 WL 4090383,

27   at *24. The Court finds that the Ninth Circuit has offered ample guidance on the requirements for

28

continuity, *see, e.g.*, *Sever*, 978 F.2d at 1535 (finding a lack of requisite continuity) and *Medallion*, 833 F.2d at 1363 (same). The Court will apply the law of this circuit and analyze closed- and open-ended continuity separately.

### a. Closed-Ended Continuity

Defendants argue that, since this alleged scheme only has a single fraud—establishing competing businesses based on Palantir's own technology to benefit the Abramowitz enterprise— and a single victim—Palantir—there can be no closed-ended continuity under Ninth Circuit law. Mot. 17. Palantir argues that the multiyear length of the alleged scheme is sufficient to allege closed-ended continuity and suggests, for the first time, that the USPTO is also a victim of the scheme. Opp'n 18-20.

As the Court noted in its previous order dismissing the fourth amended complaint, in the Ninth Circuit, "RICO's continuity requirement is not satisfied if plaintiffs have merely alleged a single fraud perpetrated on a single victim." *United Energy Owners Comm., Inc. v. U.S. Energy Mgmt. Sys., Inc.*, 837 F.2d 356, 360 (9th Cir. 1988) (internal quotation marks omitted); *accord Shwurong Lee v. Bank of New York Mellon*, No. 16-CV-05094-JST, 2016 WL 8729924, at *9 (N.D. Cal. Dec. 9, 2016). The Court also previously noted that the second factor, the number of victims, is more determinative as the Ninth Circuit rarely upholds a finding of continuity where there is only a single victim. *See Sever*, 978 F.2d at 1535 (affirming dismissal of RICO claim because collective conduct was "in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts" and "there [wa]s no suggestion that these defendants would have continued to tamper with witnesses, or that they ever intended anyone but Sever any harm"); *Medallion*, 833 F.2d at 1363 (finding no continuity where there was no threat of continuing activity and the "case involved but a single alleged fraud with a single victim"); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (affirming dismissal of RICO claims where "complaint alleged the fraudulent diversion of a single shipment," thus it was an isolated event and did not have threat of continuing activity); *Mocha Mill, Inc. v. Port of Mokha, Inc.*, No. 18-CV-02539-HSG, 2019 WL 1048252, at *10 (N.D. Cal. Mar. 5, 2019) ("But the Ninth Circuit has explained that activity spanning only a matter of

United States District Court
Northern District of California

months, involving a single victim, with a singular goal, cannot sustain a RICO claim.").

Palantir incorrectly states that the Court previously decided that the allegations of closed-ended continuity would suffice if Defendants' scheme was alleged to have lasted two years. Opp'n 18-19. In its prior order dismissing the fourth amended complaint, the Court explicitly did not reach arguments regarding the length of the scheme and explained to Palantir why its closed-ended continuity claim was deficient independent of the scheme length. Order (4AC MTD Order) 25-26, ECF 114. The Court agrees with Defendants that "longevity is only one piece of the puzzle." Reply 11. As Defendants note, Palantir's allegations regarding the victim of the scheme (Palantir) and the single goal of the scheme ("establishing competing businesses based on Palantir's own technology to benefit himself, KT4, and the Trust") have not changed since the Court previously found them deficient. *See id.*; *see also* 5AC ¶ 74.

Palantir cites *Sun Savings and Loan Association v. Dierdorf*, 825 F.2d 187 (9th Cir. 1987) and *Allwaste, Inc. v. Hecht*, 65 F.3d 1523 (9th Cir. 1995) as precedential Ninth Circuit opinions that establish that a single-victim scheme as short as thirteen months can establish close-ended continuity. Opp'n 19.[2] However, *Sun Savings and Loan Association* found the continuity requirement satisfied based on a threat of continuing activity, which is a requirement for an open-ended continuity case, not a closed one. *See Sun Savings*, 825 F.2d at 194. The Court does not find *Allwaste* analogous to this case, either. In *Allwaste*, the Ninth Circuit held that the district court abused its discretion by not allowing the plaintiffs an opportunity to amend their complaint. *Allwaste*, 65 F.3d at 1530. The Court further found that Allwaste had argued at the hearing that it could show that the predicate acts occurred over "as much as thirteen months," which would have satisfied the continuity requirement. *Id.* at 1528. However, *Allwaste* was not a single victim case, as the alleged kickbacks scheme targeted multiple businesses. *Id.* at 1529. Therefore, the Court disagrees with Palantir that *Allwaste* establishes that a single victim case can satisfy closed-ended

---

[2] Palantir also cites *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 759 (9th Cir. 2015), *Socheat Chy v. Lam Sin Yam*, 2017 WL 10676596, at *10 (C.D. Cal. Nov. 7, 2017) and *Uthe Tech. Corp. v. Aetrium, Inc.*, 2012 WL 4470536, at *5 (N.D. Cal. Sept. 27, 2012) for this proposition, but, since the Ninth Circuit's decisions in *Sever* and *Medallion* are both precedential and sufficiently analogous to this case, the Court need not rely on an unpublished memorandum disposition or district court cases to reach its decision.

United States District Court
Northern District of California

continuity.

The Ninth Circuit's decisions in *Sever* and *Medallion* compel this Court's decision in this case. In *Sever*, the plaintiff alleged that his former employer, Alaska Pulp Corporation, and a number of management employees (collectively, "APC") took retaliatory actions against him and effectively prevented him from finding other work in his town because APC "blacklisted" him. *Sever*, 978 F.2d at 1532. The plaintiff alleged that APC engaged in a pattern of racketeering activity that damaged his ability to "obtain employment or earn a living." *Id.* at 1533. The Ninth Circuit noted that "although Sever alleges a number of 'acts,' APC's collective conduct is in a sense a single episode having the singular purpose of impoverishing Sever, rather than a series of separate, related acts." *Id.* at 1535. The Ninth Circuit found that these allegations do not satisfy the continuity requirement established by the Supreme Court in *H.J. v. Northwestern Bell*. *Sever*, 978 F.2d at 1535. Analogizing to *Medallion*, the Ninth Circuit found that predicate acts designed to bring about a single event did not pose a threat of continuity. *Id.* at 1535-36. Single-victim cases with a single episode—regardless of the alleged number of actual acts—and a single purpose do not meet the continuity requirement. *See id.* at 1535.

In this case, there is a single victim (Palantir) and acts that can properly be characterized as a single episode (stealing Palantir's confidential and proprietary information) for a single purpose (establishing competing businesses based on Palantir's own technology). Like the actions allegedly taken to impoverish *Sever*, the actions here "[are] in a sense a single episode," *Sever*, 978 F.2d at 1535, and that does not satisfy the continuity requirement.

*Medallion*, which *Sever* relied on heavily, also supports this Court's decision. In *Medallion*, the owner of Medallion contacted the president of SelecTV to discuss forming a joint venture to acquire and exploit the television rights to professional boxing match between Muhammed Ali and Trevor Berbick. *Medallion*, 833 F.2d at 1361. The president of SelecTV allegedly misrepresented to Medallion that SelecTV had commitments from pay and cable television stations around the United States to pay a total of at least two million dollars to telecast the fight. *Id.* Medallion later discovered that SelecTV did not have two million dollars' worth of broadcast licensing agreements with television stations, and both Medallion and SelecTV ended

14

United States District Court
Northern District of California

1    up losing money in the joint venture. *Id.* Medallion sued SelecTV under the RICO statute, alleging

2    that SelecTV's misrepresentations "had induced Medallion to enter into the joint venture and to

3    obtain the letters of credit, and that these representations constituted mail fraud, wire fraud, and

4    interstate transportation of stolen property." *Id.* at 1361–62. The Ninth Circuit found that the

5    alleged acts did not constitute a "pattern of racketeering activity" because "[t]his case involved but

6    a single alleged fraud with a single victim" with no threat of continued activity. *Id.* 1363–64. The

7    Court found that "[i]n essence, Medallion's allegations concern a single fraudulent inducement to

8    enter a contract." *Id.* at 1364. The situation in this case is analogous: a single alleged fraud—theft

9    of Palantir's trade secrets in order to establish competing businesses to benefit the Abramowitz

10   enterprise—was committed against a single alleged victim—Palantir.

11          *Mocha Mill*, a recent decision from this district, follows *Sever* and *Medallion*. *Mocha Mill*,

12   2019 WL 1048252. In *Mocha Mill*, the plaintiffs alleged conspiratorial conduct lasting over two

13   years "with a singular goal of stealing Mocha Mill's business." *Mocha Mill*, 2019 WL 1048252, at

14   *10. Citing *Medallion* and *Sever*, *Mocha Mill* found that the plaintiffs had not established closed-

15   ended continuity—"the Ninth Circuit has explained that activity spanning only a matter of months,

16   involving a single victim, with a singular goal, cannot sustain a RICO claim." *Id.* (internal

17   citations omitted). The Court finds the factual circumstances here analogous and likewise finds

18   Palantir has failed to allege closed-ended continuity.

19          Palantir argues in its opposition brief that this is a multi-victim scheme because Defendants

20   made misrepresentations to the USPTO in allegedly fraudulent patent applications. Opp'n 19 n.4.

21   However, Palantir did not allege the USPTO was a victim in the fifth amended complaint. As the

22   Court previously found in its prior order, allegedly fraudulent patent applications cannot constitute

23   wire fraud under *Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1380

24   (Fed. Cir. 2000), and the Court declines to revisit its prior finding here. *See* 4AC MTD Order 20-

25   22 (dismissing without leave to amend Palantir's RICO claim to the extent it relies on statements

26   in patent applications).

27          Since Palantir has only pled a singular goal with a single alleged episode constituting a

28   single fraud against a single victim, it has not sufficiently pled closed-ended continuity. Because

United States District Court
Northern District of California

Palantir has repeatedly failed to cure the deficiencies with its closed-ended continuity theories by amendment, Palantir's RICO claim based on closed-ended continuity is DISMISSED WITHOUT LEAVE TO AMEND.

### b. Open-Ended Continuity

Defendants argue that Palantir has also failed to establish open-ended continuity because its allegations rest on the 2018 patent application, which cannot constitute wire fraud under RICO. Mot. 17. Palantir does rely on the 2018 patent application to support its open-ended continuity allegations (5AC ¶ 78), as well as previously filed patents (5AC ¶¶ 66-67) and alleges that "in light of this [patent] application, Abramowitz and the Abramowitz Enterprise appear to be engaged in or are gearing up for further commercial activities to profit off of Palantir's proprietary information." (5AC ¶ 78). Opp'n 20. Palantir argues that these allegations are sufficient to establish open-ended continuity. Opp'n 20. This Court disagrees.

Palantir bases its continuity arguments squarely and solely on the patent applications. Even Palantir's allegations concerning continued commercialization of Palantir's trade secrets are based on patent applications. *See* 5AC ¶ 78. As stated above, this Court has found that fraudulent patent applications cannot constitute wire fraud under *Semiconductor Energy.* 204 F.3d at 1380 (finding that a "[patent] application that has not yet matured into a patent cannot properly be deemed . . . property,"). Palantir's contention that the issuance of the patent is "imminent," *see* Opp'n 6, 16, does not change this analysis since the application has not yet matured into a patent. Because the patent application is not property, Palantir cannot be said to be defrauded of property as required to constitute wire fraud.

Only *predicate* acts can form the basis of an open-ended continuity allegation. *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir. 1991) ("To satisfy the continuity prong of the test, one need only show that the *predicates* pose a threat of continued criminal activity, such as when the illegal conduct is "a regular way of conducting [a] defendant's ongoing legitimate business.") (emphasis added) (quoting *H.J.*, 492 U.S. 229, 243 (1989)); *see also* Gregory P. Joseph, *Civil RICO: A Definitive Guide* 148-49 (3d ed. 2010) (collecting cases). Because Palantir's allegations regarding open-ended continuity rely on alleged fraud regarding patent applications—conduct that

16

does not constitute mail or wire fraud—Palantir has not sufficiently pled open-ended continuity. *See Fleet Credit Corp. v. Sion*, 893 F.2d 441, 448 (1st Cir. 1990) ("A threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that the Sions' acts of common law fraud were a regular way of conducting their ongoing businesses. Rather, Fleet must demonstrate that the *predicate* acts—here the acts of mail fraud—were a regular way of conducting the ongoing businesses.") (emphasis in original).  All of the cases Palantir cites in support of its open-ended continuity argument are distinguishable from this case, as they all involve allegations of open-ended continuity based on predicate acts. *See Bunnett & Co., Inc. v. Gearheart*, No. 17-CV-01475-RS, 2018 WL 1070298, at *3 (N.D. Cal. Feb. 27, 2018) ) (alleging predicate acts as defined in 18 U.S.C. § 1961(1));  *NSI Tech. Servs. Corp. v. Nat'l Aeronautics & Space Admin.*, No. 95-20559 SW, 1996 WL 263646, at *3 (N.D. Cal. Apr. 13, 1996) (same); *Sebastian Int'l, Inc. v. Russolillo*, 186 F. Supp. 2d 1055, 1066 (C.D. Cal. 2000)[3] (same). The alleged predicate acts in this case, the misrepresentations by Abramowitz to induce the sharing of confidential information and material omissions concerning fraudulent plans, had ceased by the time this lawsuit was filed. 4AC MTD Order 24.

Since Palantir has repeatedly failed to cure the deficiencies with its open-ended continuity theories by amendment, Palantir's RICO claim based on open-ended continuity is DISMISSED WITHOUT LEAVE TO AMEND.

### iii.   Conclusion

Congress's intent that RICO be read broadly "is not an invitation to apply RICO to new purposes that Congress never intended." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). After six operative complaints, Palantir's RICO claim fails because it has not sufficiently pled a pattern of racketeering activity. Because the RICO claim fails based on this deficiency alone, the Court need not reach the Parties' other arguments regarding this claim. Accordingly, the RICO claim is DISMISSED WITH PREJUDICE.

---

[3] Palantir cites *Sebastian* for the proposition that "The standard for showing open-ended continuity is extremely low." *Sebastian*, 186 F. Supp. 2d at 1067, However, *Sebastian* cites no authority for this proposition, *id.*, and this Court declines to follow it as dicta that is not binding on this Court.

United States District Court
Northern District of California

## C.    Breach of Contract Claims[4]

Defendants next move to dismiss Palantir's breach of contract claims. Mot. 18-21. Palantir opposes on the grounds that Defendants' arguments implicate factual issues that cannot be decided at the motion to dismiss stage. Opp'n 20-22. Palantir also argues that Defendants mischaracterize and misconstrue the terms of the NDA because nothing indicates that the agreement is limited to information received by Abramowitz on the day it was signed. Opp'n 22.

"[I]nterpretation of an unambiguous contract is a matter of law." *Rescap Liquidating Tr. v. First California Mortg. Co.*, No. 18-CV-03283-WHO, 2019 WL 402318, at *4 (N.D. Cal. Jan. 31, 2019) (citing *Gen. Cas. Co. of Am. v. Azteca Films, Inc.*, 278 F.2d 161, 168 (9th Cir. 1960) ("Under California law where a written agreement attempts to cover all relationships of the contracting parties, interpretation [is a] a matter of law")). "As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract." *Chan v. Empire Fire & Marine Ins. Co.*, No. C 10-02528 EJD, 2011 WL 3267765, at *5 (N.D. Cal. July 29, 2011) (citing *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993) *Henry v. Assoc. Indem. Corp.*, 217 Cal. App. 3d 1405, 1416–17 (Cal. Ct. App. 1990)). Accordingly, the Trust can only be found potentially liable under the 2012 Transfer Agreement; KT4 only under the 2015 Transfer Agreement; and Abramowitz only under the NDA, as those are the only agreements each Defendant signed. Of course, any conduct attributed to either the Trust or KT4 necessarily was performed by Abramowitz, but this conduct was performed while wearing either the Trust or KT4 hat.

In its complaint, Palantir alleges that Abramowitz is liable under the 2012 Transfer Agreement and the 2015 Transfer Agreement, *see* 5AC ¶¶ 89-90, and in its opposition brief, Palantir does not distinguish between Defendants when arguing about the two transfer agreements. Opp'n 21-22. However, Palantir has cited no authority, and this Court is not aware of any, suggesting that Abramowitz, as a non-party to the 2012 and 2015 Transfer Agreements, can be held liable under them. Both the 2012 and 2015 Transfer Agreements define the parties to the

---

[4] Although all of the claims over which this Court has original jurisdiction have been dismissed, the Court uses its discretion and retains supplemental jurisdiction under 28 U.S.C. § 1367.

18

1  agreement. The 2012 Agreement states, "This Stock Transfer Agreement (this "Agreement") is

2  made and entered into as of August 12, 2012 (the "Effective Date") by and among Akkadian

3  Venture II, LP, a Delaware limited partnership ("Purchaser"), Marc Abramowitz Charitable Trust

4  No. 2 ("Seller") and Palantir Technologies Inc, a Delaware corporation (the "Company")." 2012

5  Transfer Agreement. The 2015 Transfer Agreement uses the same language, listing Highbridge

6  International LLC as the purchaser, KT4 Partners LLC as the seller, and Palantir as the company.

7  2015 Transfer Agreement. Under the clear, unambiguous terms of the contract, Abramowitz is not

8  a party to either, and Palantir has failed to address this argument.

9       In its complaint, Palantir alleges that Abramowitz, is liable under as a "covered person" as

10 it is defined in identical sections in both Transfer Agreements. 5AC ¶¶ 89, 91. However, according

11 to the Transfer Agreements, it is the Purchaser or Seller that is liable for any breach committed by

12 a "covered person," not the "covered person:" "Each of Purchaser and Seller is responsible

13 hereunder and shall be liable for any breaches of this Section 7 and any disclosure or misuse of

14 any information or documents described in this section by its respective Covered Persons." 2012

15 Transfer Agreement § 7; 2015 Transfer Agreement § 7. Thus, liability does not attach to

16 Abramowitz, a non-party to both Transfer Agreements.

17      The Court will analyze the claims regarding each Agreement, and each Defendant,

18 separately.

19           **i.**   **2012 Transfer Agreement**

20      The Trust argues the breach of contract claim against it must fail because it ceased being a

21 Palantir shareholder in 2012, which predates the time Palantir allegedly provided proprietary

22 information to Defendants. Mot. 18. Further, the Trust argues that the confidentiality section of the

23 Agreement only covers a limited set of information, namely information related to the stock

24 transfer and information received by the Trust in its capacity as a stockholder *after* the date of the

25 Agreement. Mot. 18; 2012 Transfer Agreement § 7 (emphasis added). Palantir argues that the

26 confidentiality provision is not as narrow as the Trust argues and covers Palantir's business

27 information, including client lists and Palantir's plans for its technologies, that "Defendants" (not

28 the Trust specifically) obtained in conversations and meetings between 2012 and 2015. Opp'n 22.

United States District Court
Northern District of California

United States District Court
Northern District of California

1      Despite guidance from the Court that Palantir needed to allege that "trade secrets or
2  confidential information was provided to the Trust or KT4 during the negotiations for sale of
3  stock," 4AC MTD Order 27, Palantir has not done so. In fact, Palantir has not pled any allegations
4  specific to the Trust to give Defendants notice what confidential information the Trust allegedly
5  received. Further, the 2012 Transfer Agreement was executed on August 14, 2012, *see* 2012
6  Transfer Agreement, yet the earliest date Palantir alleges Abramowitz received confidential
7  information is December 2012, *see* 5AC ¶ 48, after the Trust ceased being a Palantir stockholder.
8  For these reasons, the Court finds that the breach of contract claim against the Trust fails. Because
9  Palantir has repeatedly failed to cure this claim through amendment, it is DISMISSED WITH
10  PREJUDICE.

### ii.    2015 Transfer Agreement

12      KT4 argues that the breach of contract claim against it fails because the 2015 Transfer
13  Agreement's confidentiality provision only covers two types of information: 1) information that
14  KT4 received "in connection with the exploration, negotiation, execution, and closing of this
15  Agreement" and 2) information provided "in its capacity as a stockholder of the Company
16  following the date of this Agreement." 2015 Transfer Agreement § 7. KT4 argues that Palantir has
17  failed to plead that it provided any information to KT4 during the exploration, negotiation,
18  execution, or closing of the 2015 Transfer Agreement, and all of the information that Palantir
19  allegedly provided to Abramowitz occurred before this Agreement was executed, meaning it did
20  not come "following the date of this Agreement." Mot. 20. Palantir does not directly respond to
21  these arguments. The Court has reviewed the operative complaint and agrees with KT4: despite
22  explicit directions from the Court, Palantir has not pled any trade secrets or confidential
23  information was provided to KT4 during the negotiations for sale of stock, and all of the
24  information allegedly provided to Abramowitz occurred before the 2015 Transfer Agreement was
25  signed. Accordingly, the breach of contract claim against KT4 fails. Because Palantir has
26  repeatedly failed to cure this claim through amendment, it is DISMISSED WITH PREJUDICE.

### iii.    The NDA

28      Abramowitz argues that the breach of contract claim against him, based on the NDA he

signed, must fail because Palantir has not alleged that it provided Abramowitz with any information after he signed the NDA on July 12, 2014. Mot. 20-21. Abramowitz argues that the NDA unambiguously states that it is forward-looking: "During your visit, *you may or will become aware* of non-public business, technical or other information, materials and/or ideas of Palantir ('Proprietary Information,' which term shall include, without limitation, anything you learn or discover as a result of exposure to or analysis of any Proprietary Information)." NDA at 1 (emphasis added). Abramowitz argues that the added specificity in the fifth amended complaint makes plain the fact that the latest date that Palantir alleges it gave Abramowitz confidential information was June 2014, so this claim must fail. Mot. 20-21.

Palantir argues that nothing in the NDA suggests it is not backward-looking, *see* Opp'n 22. Palantir also argues that it alleges that it met with Abramowitz to discuss confidential information in August and September 2014, after the NDA was signed. *See* 5AC ¶¶ 61-62, Opp'n 22. Drawing all inferences in favor of Palantir, as it must at this stage, the Court finds that Palantir has plausibly alleged that it provided Abramowitz with confidential information in the fall of 2014, Abramowitz filed a patent application based on this information, and he breached the NDA. Factual issues regarding this claim can be resolved at a later stage in the case. Accordingly, the motion to dismiss the breach of contract claim against Abramowitz is DENIED.

### iv.    Conclusion

For the reasons stated above, the breach of contract claims against The Trust and KT4 are DISMISSED WITH PREJUDICE. The motion to dismiss the breach of contract claim against Abramowitz is DENIED.

### D.    Misappropriation of Trade Secrets

Finally, Defendants argue that Palantir has failed to allege a trade secrets claim against any of the Defendants. Mot 21-24. The Court agrees that Palantir has failed to state a claim against The Trust and KT4 but finds that it has plausibly alleged facts demonstrating that Abramowitz misappropriated Palantir's trade secrets.

To state a claim for misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), "a plaintiff must plead facts sufficient to show (1) the existence of

subject matter which is capable of protection as a trade secret; (2) that the secret was disclosed to the defendant under circumstances giving rise to an obligation not to use or disclose the secret to the detriment of the discloser; and (3) the defendant either used the trade secret or disclosed it to a third party." *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112-13 (N.D. Cal. 2012). As to the first element, "[a] plaintiff need not 'spell out the details of the trade secret,'" *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015); however, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies," *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (quoting *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). Additionally, to qualify as a trade secret, the information must be the "subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Accordingly, "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

Defendants argue that Palantir has not plausibly alleged that the Trust or KT4 received, used, or disclosed Palantir's supposed trade secrets. Mot. 22. Palantir only addresses this argument in a footnote, *see* Opp'n 25 n.6, that directs the Court to two pages of argument regarding Palantir's RICO claim with no further direction, *see id*. The Court has reviewed Palantir's arguments and does not see that Palantir has specifically alleged that any trade secrets were disclosed to the Trust or KT4 or that the entities either used the trade secrets or disclosed them to a third party. Accordingly, the trade secrets claims against the Trust and KT4 are DISMISSED WITH PREJUDICE since Palantir has repeatedly failed to cure them with amendment.

As to Abramowitz, the Court finds that Palantir has plausibly pled a trade secrets claim against him. Palantir has alleged that trade secrets were disclosed to Abramowitz under circumstances giving rise to an obligation not to use or disclose the secrets to the detriment of Palantir, yet Abramowitz used and disclosed the trade secrets in a detrimental manner. 5AC ¶¶ 60,

66. The Court finds that the particularity Defendants demand goes beyond what is required at the pleading stage, and the Court has already rejected Defendants' argument that Palantir has not adequately alleged that it took reasonable efforts to maintain the secrecy of its trade secrets. 4AC MTD Order 29. Whether Palantir's alleged efforts at maintaining secrecy were reasonable under the circumstances is a question of fact that should not be decided at the motion to dismiss stage. *See Vendavo, Inc. v. Price f(x) AG*, No. 18-cv-03283-WHO, 2019 WL 4394402, at *2 (N.D. Cal. Sept. 13, 2019). Accordingly, Defendants' motion is DENIED as to the trade secrets claim against Abramowitz.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' motion to dismiss is:

1. GRANTED as to the RICO claim, which is DISMISSED WITH PREJUDICE;

2. GRANTED as to the breach of contract claim against the Trust, which is DISMISSED WITH PREJUDICE;

3. GRANTED as to the breach of contract claim against KT4, which is DISMISSED WITH PREJUDICE;

4. DENIED as to the breach of contract claim against Abramowitz;

5. GRANTED as to the misappropriation of trade secrets claim against the Trust, which is DISMISSED WITH PREJUDICE;

6. GRANTED as to the misappropriation of trade secrets claim against KT4, which is DISMISSED WITH PREJUDICE;

7. DENIED as to the misappropriation of trade secrets claim against Abramowitz.

Defendants KT4 and the Trust are dismissed from the case.

Dated: June 11, 2021

BETH LABSON FREEMAN
United States District Judge