BARRY SIMON (admitted *pro hac vice*)
bsimon@wc.com
JONATHAN B. PITT (admitted *pro hac vice*)
jpitt@wc.com
STEPHEN L. WOHLGEMUTH (admitted *pro hac vice*)
swohlgemuth@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
NIELS J. MELIUS (SBN 294181)
niels.melius@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Defendant*

*[Counsel for Plaintiff Listed on Signature Page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARC L. ABRAMOWITZ, in his individual capacity and as trustee of the MARC ABRAMOWITZ CHARITABLE TRUST NO. 2, KT4 PARTNERS LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:19-cv-06879-BLF<br><br>**JOINT LETTER BRIEF RE: DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS RESPONSIVE TO RFPS 68, 79, 90, AND 92**<br><br>Date:      N/A<br>Time:     N/A<br>Courtroom  5 (4th Floor)<br>Judge:    Honorable Nathanael Cousins |

Dear Magistrate Judge Cousins:

The parties submit this joint letter pursuant to the Court's standing orders.

I. **Defendant's Position**

Palantir contends that any damages in this case should include investigatory and legal fees that it incurred in connection with three patent proceedings that it filed against Defendant Marc Abramowitz. Palantir claims that it was supposedly "forced" to filed these proceedings as "a result" of Abramowitz's alleged misappropriation and to protect its "intellectual property." But Palantir has refused to timely provide Abramowitz with the documents needed to refute this novel theory—namely, (1) documents that relate to the amount of fees that Palantir paid, and (2) contemporaneous communications that relate to the actual reasons Palantir filed the proceedings. The first category of documents will allow Abramowitz to contest whether Palantir has actually paid fees in the amounts claimed, as well as their reasonableness; the second category will allow Abramowitz to contest whether Palantir actually filed the proceedings as "a result" of the alleged misappropriation, or whether they were "a result" of something else. Palantir has no basis for withholding non-privileged documents on these topics. The same is true for privileged communications, which are likely to be *the only contemporaneous evidence* of Palantir's true reasons for filing the proceedings at issue. At bottom, Palantir cannot seek significant damages based on its untested, after-the-fact representation about why it filed these patent proceedings, while at the same time asserting privilege over contemporaneous communications that reflect its real reasons for bringing the weight of a $40 billion corporation to bear on an individual defendant.

*Background*. Palantir's allegations about damages have largely proven to be false. Although Palantir's complaint alleged that Defendant "damaged Palantir's business opportunities" and created a "competing business" that "profit[ed] off" Palantir's technology, Dkt. 126 at ¶¶ 78-79, discovery has shown that there never was any "competing business" and that Palantir has not lost a *single contract, customer, or opportunity* because of anything that Abramowitz allegedly did. Because Palantir's traditional damages are non-existent, it has resorted to novel theories. It has alleged that it is entitled to recover for costs investigating Abramowitz's alleged conduct, as well as over $4 million in legal fees that Palantir incurred in three patent proceedings against Abramowitz: (1) a petition to institute a derivation proceeding before the USPTO (that was denied), (2) a pending German case relating to the European applications, and (3) a proceeding under 28 U.S.C. § 1782 that it filed to obtain discovery for use in Germany. All three of these cases relate to Palantir's "Cyber" technology, which Palantir has never commercialized.

The only authority that Palantir has cited supporting this theory holds that fees are only recoverable if the defendant's misconduct makes it "necessary to incur [the] expense." *Food Servs. of Am., Inc. v. Carrington*, 2013 WL 4507593, at *14 (D. Ariz. Aug. 23, 2013). Palantir's complaint therefore alleges that it was "forced" to file the proceedings and that they were "not voluntary but necessary to protect Palantir's intellectual property rights." Dkt. 126 at ¶ 79(e), (d). Palantir alleges that these fees were "a result" of Defendant's alleged misappropriation. *Id.* ¶ 79.

By claiming that these proceedings were a direct "result" of Defendant's alleged misappropriation and "necessary to protect Palantir's intellectual property rights," Palantir has put its reasons for initiating these proceedings at issue. After all, if Palantir initiated these proceedings for reasons other than to protect its "intellectual property rights," they would not have been "forced" or a direct "result" of Defendant's alleged misappropriation. Publicly available facts

suggest that Palantir was not motivated by protecting its intellectual property.  For example, Palantir did not "need" to file an action before the USPTO, as it is already seeking an order from this Court forcing Abramowitz to transfer his rights in the US patent applications.  Dkt. 126, at p. 40-41.  As to the German action, Abramowitz's European patent applications had been ***in the public domain*** and well-known to Palantir for ***over two years*** before Palantir filed suit.  If Palantir had truly been "forced" to file the German suit as a direct "result" of the alleged misappropriation, it would have done so immediately.  The facts strongly suggest that these proceedings were not "forced" and were not a "result" of the alleged misappropriation but that Palantir filed them for other reasons, such as to gain litigation leverage over Abramowitz as he pursues litigation in Delaware arising out of Palantir's intentional interference with Abramowitz's efforts to sell stock.[1]  The inference is strengthened by Palantir's willingness to spend $4 million to "protect" supposed "trade secrets" that have not made a penny in revenue for anyone.  Still, to refute these allegations with more than inference, Defendants need discovery into the amount of costs incurred and the reasons why the proceedings were initiated, which are called for by RFPs 68, 79, 90, and 92.

*Argument*.  Abramowitz must be able to defend against Palantir's allegation that it incurred $4 million in fees, as well as Palantir's allegation that these fees were "forced" and a direct "result" of the alleged misappropriation.  After months of delay, Palantir recently agreed to produce legal bills evidencing these fees.  While claiming that there is no "dispute," Palantir has only produced bills evidencing less than $75,000 of the $4 million in fees sought even though the fact discovery deadline is fast approaching.  A prompt deadline for production is required.  In any event, Palantir's production of non-privileged documents should not be limited to the bills but must also extend to (1) documents reflecting billing rates, (2) documents reflecting payments, and (3) non-privileged documents, if any, reflecting the reasons that Palantir filed the three proceedings.  Palantir should produce these documents—which were the subject of RFPs served ten months ago—in five days.

Palantir should also produce privileged documents, including engagement letters.  A party impliedly waives privilege if it: (1) takes an "affirmative act" (like filing suit) that (2) puts privileged communications "at issue," while (3) asserting privilege in a manner that "would deny the opposing party access to information vital to its defense."  *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999).  This test ensures that "parties in litigation [do] not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."  *Apple Inc. v. Samsung Elecs.*, 306 F.R.D. 234, 241 (N.D. Cal. 2015).  The test boils down to "fairness" to the opposing party.  *Chevron v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).  The waiver extends to work-product.  *United States v. Sanmina*, 968 F.3d 1107, 1119 (9th Cir. 2020); *Rambus v. Samsung*, 2007 WL 3444376, at *3 (N.D. Cal. Nov. 13, 2007).

All three prongs are satisfied.  Palantir has taken an "affirmative act" by filing suit and seeking damages for legal fees incurred in the three patent proceedings.  And by arguing that these proceedings were "forced" and "not voluntary," Palantir has put its reasons for filing them at issue.  In other words, to refute Palantir's allegation that it filed the proceedings because they were "necessary" and "a result" of the alleged misappropriation, Abramowitz must have access to Palantir's ***contemporaneous communications*** about ***the actual reasons*** for filing the proceedings, which may show that the proceedings had nothing to do with protecting Palantir's "intellectual property" and everything to do with burying Abramowitz in fees as he pursues litigation against Palantir.  Given that the "subject matter" here is "patent litigation," Palantir's "justifications" and

---

[1] The Delaware court recently denied Palantir's motion for summary judgment.

(Continued...)

reasons for filing the proceedings will "necessarily involve attorney-client advice."[2] *See Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *7 (N.D. Cal. Aug. 9, 2016).

Finally, contemporaneous communications about Palantir's justifications for the lawsuits are "vital" to Defendants' defense. Without "access to contemporaneous information" about Palantir's ***actual*** reasons for filing the proceedings, Defendants would be forced to rely on Palantir's unchecked "characterization of events," which is cold comfort (particularly given Palantir's other false allegations about damages). These circumstances require an implied waiver. *Lidoderm*, 2016 WL 4191612, at *7; *see also Amlani*, 169 F.3d at 1196 (waiver where "alternative sources of evidence would be of little, if any value"); *Spin Master, Ltd. v. Zobmondo Ent., LLC*, 2012 WL 8134011, at *4 (C.D. Cal. Mar. 9, 2012) (waiver where plaintiffs were "in a similar bind"). Barring discovery into privileged communications would require Abramowitz to accept Palantir's say so about why it filed these lawsuits. The implied waiver doctrine does not permit Palantir to take this approach, which is essentially to say: "[t]rust us"—we filed these proceedings because we were "forced" to do so as a "result" of the alleged misappropriation and not as a direct "result" of anything else. *See Lidoderm*, 2016 WL 4191612, at *7.

## II.     Palantir's Position

One of the forms of relief Palantir seeks in this action is reimbursement of the costs and fees it has incurred in the patent proceedings it filed to remediate and mitigate Defendant Marc Abramowitz's wrongful attempts to patent its technologies. To be clear—contrary to Defendant's assertions—Palantir has not "refused" to provide documents substantiating this damages theory. Indeed, Palantir has agreed to produce non-privileged information in its billing invoices and statements describing, among other things, the services performed in the patent proceedings for which Palantir seeks reimbursement, the rates charged for and time spent on those services, and the identities of the relevant attorneys and staff. As Palantir already explained to Defendant, moreover, it has no objection to producing, pursuant to the parties' negotiated search protocol, any non-privileged documents concerning the reasons for Palantir filing the patent proceedings, as well as documents sufficient to show the payments Palantir has made in connection with those proceedings.

The only dispute is over Defendant's demand that Palantir also produce (i) its privileged communications with counsel concerning the reasons for expending the fees in the patent proceedings, and (ii) Palantir's engagement agreements with counsel, which Defendant demanded for the first time in this Joint Statement. As to the privileged communications, Palantir has not put such communications "at issue" by virtue of bringing its claim for attorneys' fees and therefore has not waived privileged over them. *See Rutgard v. Haynes*, 185 F.R.D. 596, 599 (S.D. Cal. 1999) ("This Court agrees with this reasoning, and the many other courts that have held that a party does not place otherwise privileged attorney-client communications 'at issue' merely by seeking an award of attorney fees as damages."). Indeed, to the extent Defendant wishes to argue that the fees Palantir

---

[2] Palantir suggests that has not "used" or "relied" on privileged advice, but a party need not "attempt to utilize privileged material" for there to be a waiver. *Rambus*, 2007 WL 3444376, at *3. Palantir also argues that Abramowitz can defend against these damages with "objective evidence." But, in the case it relies on (*KCC*), the issue was whether "an oral or written agreement" existed. *KCC CLass Action Servs., LLC v. Aetna, Inc.*, 2019 WL 8060670, at *2 (C.D. Cal. Oct. 15, 2019). That issue can easily be resolved with non-privileged evidence. Contrary to Palantir's suggestion, no amount of "expert testimony" about the reasonableness of individual billing entries can answer the fundamental question here: why did Palantir file the patent proceedings? None of Palantir's cases involve the type of damages sought here, where Palantir affirmatively put its reasons for filing the patent proceedings at issue in the complaint.

incurred were not necessary to protect its intellectual property rights, he is free to do so through "objective evidence"—such as expert testimony or billing records—"without obtaining confidential communications [with counsel]." *See KCC CLass Action Servs., LLC v. Aetna, Inc.*, 2019 WL 8060670, at *1 (C.D. Cal. Oct. 15, 2019). As to the engagement agreements, such agreements are statutorily privileged under California law. *See* Cal. Bus. & Prof. Code § 6149; *Stoba v. Saveology.com, LLC*, 2015 WL 10857528, at *4 (S.D. Cal. July 7, 2015). And regardless, Defendant does not and cannot explain what relevant information in the engagement agreements he seeks to discover that Palantir has not already agreed to produce in its billing records.

*Background.* As this Court is aware, the parties are engaged in a series of disputes—both in the United States and Europe—arising out Defendant's theft of Palantir's proprietary information. Specifically, to protect its intellectual property rights, Palantir brought patent proceedings before the USPTO and the Munich Regional Court in Germany, in which Palantir seeks, among other things, declaratory relief that it is the true inventor of certain technologies Defendant has sought to patent. At the same time, Palantir also filed an application under 28 U.S.C § 1782 in this District to obtain discovery for the German proceedings. Palantir refers to these actions as the "Patent Proceedings."[3]

Separately, Palantir brought this action against Defendant for trade secret misappropriation under California law in which it seeks, among other forms of relief, reimbursement of the costs and fees it was forced to incur in the Patent Proceedings to remediate Defendant's misconduct.[4] To substantiate these damages, Palantir has agreed to produce non-privileged information in its billing invoices and statements reflecting, among other things, the amounts of the legal fees Palantir has expended in the Patent Proceedings for which it seeks reimbursement, the billing rates of all service providers, and descriptions of relevant services provided. Palantir has no objection, moreover, to producing documents sufficient to show the payments it has made in connection with the Patent Proceedings and non-privileged documents (if any) concerning the reasons for Palantir filing those proceedings. Defendant has nonetheless demanded that Palantir also produce its (i) privileged communications concerning Palantir's reasons for incurring the fees at issue and (ii) its engagement agreements with counsel. Neither of these categories of documents is discoverable.

*Privileged Communications*. "[P]rivileged communications do not become discoverable simply because they are related to issues raised in the litigation." *United States. v. Sanchez*, 2016 WL 10651085, at *5 (C.D. Cal. Sept. 12, 2016). "[W]here the privileged communication simply represents one of several forms of indirect evidence," and is not "essential" to the opposing party's defense, privilege is not waived. *See Sempra Energy v. Marsh USA, Inc.*, 2008 WL 11338481, at *3 (C.D. Cal. July 25, 2008). Rather, implied privilege waiver arises only when a party uses the

---

[3] Defendant makes highly misleading and inaccurate assertions concerning the Patent Proceedings and the general merits of Palantir's damages theories. To take just a few examples, Palantir did not lose the USPTO proceedings; Palantir did not file the German case to somehow gain litigation leverage (indeed, Magistrate Judge Corley has addressed similar arguments and held that discovery under 28 U.S.C § 1782 is appropriate in aid of the German proceedings); and Palantir's trade secrets do not lack value. Defendant's statements concerning Palantir other damages theories are also false or inaccurate. Because these factual disputes are irrelevant to the issue at hand, Palantir will address all these inaccuracies at an appropriate time.

[4] Defendant asserts that Palantir's damages theory is "unsupported under California law." This, too, is a mischaracterization of the relevant caselaw and Palantir's position. Palantir will address these mischaracterizations at an appropriate time.

privileged communications as both a "sword and a shield" by making assertions that the other party cannot rebut without them. *See Bittaker v. Woodford*, 331 F.3d 715, 719–20 (9th Cir. 2003).

Here, Palantir has not used and will not use its communications with counsel as both a "sword and a shield." *Id.* Palantir will not rely on such communications to prove that the fees it incurred in the Patent Proceedings were necessary to protect its intellectual property rights. Instead, Palantir can and will rely on non-privileged documents and testimony establishing that (i) in the Patent Proceedings, Palantir has requested declaratory relief that it is the true inventor of the technologies at issue; (ii) such relief would protect Palantir's intellectual property; and (iii) Palantir has incurred fees to obtain that relief. None of these factual premises is dependent on the legal advice Palantir's litigation counsel provided to Palantir. *See Rutgard v. Haynes*, 185 F.R.D. 596, 599 (S.D. Cal. 1999) ("[M]any other courts that have held that a party does not place otherwise privileged attorney-client communications 'at issue' merely by seeking an award of attorney fees as damages."); *see also Rhone–Poulenc v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) ("Advice is not in issue merely because it is relevant . . . . The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing [privileged] communication.").

Equally as important, the privileged communications Defendant demands are not "vital" to disputing Palantir's damages claim. *See KCC CLass Action Servs., LLC*, 2019 WL 8060670, at *1. To the extent Defendant believes that the Patent Proceedings were not necessary to protect Palantir's intellectual property, he is free to so argue through "objective evidence," such as expert testimony or the records Palantir has agreed to produce. *See id.* Defendant cannot explain, however, how Palantir's communications with its litigation counsel concerning the reasons for incurring legal fees are "vital" for him to rebut Palantir's contentions. *See id.* at *2 (holding that a party did not implicitly waive privilege because the issue at hand could "be resolved on the objective evidence without obtaining confidential communications [with counsel]"). Instead, Defendant's entire contention is based on a ***speculation*** that Palantir's privileged communication will reveal evidence that it incurred its legal fees for reasons other than to protect its intellectual property rights. If such speculations were sufficient to effect implied waiver of privilege, then every claim for attorneys' fees would render privileged communications regarding the reasons for the fee expenditures discoverable. Defendant has not cited ***a single case***, however, permitting such discovery.[5]

***Engagement Agreements***. For the first time in this Joint Statement, Defendant demands that Palantir produce several categories of documents in addition to its privileged communications, including engagement agreements with patent counsel. (*See* Joint St. at 2.) Engagement agreements are, however, statutorily privileged under California law applicable to Palantir's remaining state law claims. *See* Cal. Bus. & Prof. Code § 6149; *Stoba v. Saveology.com, LLC*, 2015 WL 10857528, at *4 (S.D. Cal. July 7, 2015). Moreover, Defendant does not explain what relevant information he seeks to obtain from the engagement agreements that has not already agreed to provide through billing invoices and statements. Without such a showing, his demand should be rejected.

---

[5] All of the cases Defendant cites are inapposite, as none involved the discovery Defendant seeks. *See In re Lidoderm Antitrust Litig.*, 2016 WL 4191612, at *5 (N.D. Cal. Aug. 9, 2016) (waiving privilege where "central issue" was defendant's belief that a settlement was lawful, and that belief was based on "legal advice"); *Amlani*, 169 F.3d at 1195 (waiving privilege as to communications surrounding former attorney's withdrawal because those communications were "necessary" to defend against a criminal defendant's attorney disparagement contention); *Spin Master v. Zobmondo Ent., LLC*, 2012 WL 8134011, at *1 (C.D. Cal. Mar. 9, 2012) (finding waiver over communications necessary to rebut a good faith defense).

Dated: July 13, 2021                          By:   /s/ Jack P. DiCanio
                                              SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP

                                              JACK P. DICANIO (SBN 138782)
                                              jack.dicanio@skadden.com
                                              NIELS J. MELIUS (SBN 294181)
                                              niels.melius@skadden.com
                                              525 University Avenue
                                              Palo Alto, California 94301
                                              Telephone: (650) 470-4500
                                              Facsimile: (650) 4704570

                                              BARRY SIMON (*pro hac vice*)
                                              bsimon@wc.com
                                              JONATHAN B. PITT (*pro hac vice*)
                                              jpitt@wc.com
                                              STEPHEN L. WOHLGEMUTH (*pro hac vice*)
                                              swohlgemuth@wc.com
                                              WILLIAMS & CONNOLLY LLP
                                              725 Twelfth Street, N.W.
                                              Washington, D.C. 20005
                                              Telephone: (202) 434-5000
                                              Facsimile: (202) 434-5029

                                              *Attorneys for Defendant*


Dated: July 13, 2021                          By:   /s/ Yahor Fursevich
                                              HUESTON HENNIGAN LLP

                                              JOHN C. HUESTON (SBN 164921)
                                              jhueston@hueston.com
                                              MOEZ M. KABA (SBN 257456)
                                              mkaba@hueston.com
                                              YAHOR FURSEVICH (SBN 300520)
                                              yfursevich@hueston.com
                                              523 West 6th Street, Suite 400
                                              Los Angeles, CA 90014
                                              *Attorneys for Plaintiff*

## SIGNATURE ATTESTATION

      Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

Dated: July 13, 2021                              */s/ Jack P. DiCanio*

                                                                                 Jack P. DiCanio