BARRY SIMON (admitted *pro hac vice*)
bsimon@wc.com
JONATHAN B. PITT (admitted *pro hac vice*)
jpitt@wc.com
STEPHEN L. WOHLGEMUTH (admitted *pro hac vice*)
swohlgemuth@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
NIELS J. MELIUS (SBN 294181)
niels.melius@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Attorneys for Defendant*

[Counsel for Plaintiff Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARC L. ABRAMOWITZ, in his individual capacity and as trustee of the MARC ABRAMOWITZ CHARITABLE TRUST NO. 2, KT4 PARTNERS LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:19-cv-06879-BLF<br><br>**JOINT LETTER BRIEF RE: DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS FROM THE FILES OF PALANTIR'S BOARD MEMBERS**<br><br>Date:       N/A<br>Time:       N/A<br>Courtroom  5 (4th Floor)<br>Judge:      Honorable Nathanael Cousins |

Dear Magistrate Judge Cousins:

The parties submit this joint letter pursuant to the Court's standing orders.

I. **Defendant's Position**

This dispute concerns whether the members of Palantir's board of directors[1] should be custodians in order to determine whether they were informed of Defendant Marc Abramowitz's alleged theft of Palantir's purported trade secrets, as Palantir's CEO Alex Karp suggested they were, and what actions, if any, they took or authorized after learning of the supposed "theft" of the company's "crown jewels." Because a targeted search of their files relates to a "nonprivileged matter that is relevant to" Abramowitz's defenses and is "proportional to the needs of the case," they should be custodians. Fed. R. Civ. P. 26(b)(1).

*Background.* Some short background is required. In the fall of 2014, Abramowitz, with Palantir's encouragement, was exploring a potential cyber insurance business; the idea was that the potential business could team up with Palantir in some unspecified way. In September 2014, Abramowitz told Palantir employees that he was filing patent applications related to his cyber insurance ideas (among others), but, at around that time, Palantir lost interest in working with Abramowitz on cyber insurance and moved on. Abramowitz—with Palantir's full knowledge—continued his exploration efforts. Abramowitz actually offered CEO Karp, the opportunity to invest personally in any potential cyber insurance business. Karp never responded to the offer, but, in May of 2015, Karp accused Abramowitz of stealing Palantir's intellectual property during a telephone call. Palantir has been unable to say what prompted Karp's blow up, as nothing had changed between September 2014, when Abramowitz informed Palantir of his applications, and May 2015, when Karp made his call. But Karp testified (in a related case) that he has a "crystal memory" of learning something around May 2015—it's not clear what—that prompted him to believe that Abramowitz "was involved in the theft of our intellectual property."

Over a year later, in September 2016, Palantir filed this lawsuit, claiming that Abramowitz misappropriated Palantir's trade secrets. In fact, Karp testified that Abramowitz's patent applications contain Palantir's "crown jewels." According to Karp, the theft of these "crown jewels" was a watershed moment in the company's history, calling it the most "severe and egregious breach" that the company had ever experienced. He also claimed that he "assum[ed]" that Palantir's board members were aware of the alleged theft and "were deeply hurt and affected" by it, although he could not recall any specific communications he had with other board members.

*Argument.* Defendant needs limited discovery into the files of Palantir's board members in order to confirm whether any of Karp's story is true and, if so, production of the relevant documents. Specifically, Defendant is entitled to learn whether (1) the board was ever informed of Abramowitz's alleged misappropriation or his patent applications and (2) what, if anything, the board did after learning that the company's "crown jewels" had supposedly been stolen. These

---

[1] During the relevant time, Palantir's board members were Peter Thiel, Stephen Cohen, and Nathan Gettings (as well as Alex Karp, who is already a custodian).

(Continued...)

could be accomplished by running the following terms from March 1, 2014 to September 1, 2016: "Abramowitz", "Marc A", "KT4", or "Squires".[2]

There are two possible outcomes from these searches.[3]  Both would yield relevant information.  If the board did learn of Abramowitz's patent applications or the alleged "theft," Abramowitz is entitled to those communications, as they would be indisputably relevant to this case.  What actions, if any, the board authorized after learning of the alleged misappropriation are certainly relevant.  On the other hand, if there are *no* communications in which the board was informed of Abramowitz's applications or the alleged loss of Palantir's "crown jewels," Karp's credibility would be undermined.  So would Palantir's allegations against Abramowitz.  The executives of a technology company that actually lost its "crown jewels" would inform the board and take prompt action.  This is particularly true for Palantir, as Karp has testified that its board members are "actively involved in" the company.  Abramowitz is entitled to know whether Karp or others at Palantir so informed the board.  Any failure to act would show that there was no loss of Palantir's "crown jewels" and would also, at a minimum, be relevant to whether Palantir took reasonable steps to preserve the secrecy of its supposed trade secrets or Palantir's efforts to mitigate damages.  *See* Cal. C. Civ. P. § 3426.1(d)(2) (plaintiff must take reasonable "efforts" to "maintain [a trade secret's] secrecy").

Burden is not an issue, as Palantir has not provided any hit counts for any searches of these custodians' documents.  And it is likely that any hit count would be low:  Abramowitz's terms are limited to the dates at issue and a handful of specific terms that target communications about Abramowitz.  Palantir's throwaway argument about "less burdensome" discovery means should be rejected given the modest searches requested and the likelihood of discovering relevant documents (if Karp's testimony is accurate).[4]  In any event, Palantir's offers of an interrogatory response rings hollow.  Defendant asked Palantir if it would stipulate that, aside from Karp, its board members were unaware of the alleged "theft."  Palantir refused.[5]

---

[2] John Squires was Abramowitz's patent counsel.

[3] Palantir makes much of the search protocol that it agreed to run, perhaps trying to create the impression that Defendant requested the board-member searches after the parties settled on a broader protocol.  Not so.  The board-member searches were always excluded from the broader protocol negotiations, and the parties agreed that the issue would be presented to the Court for resolution.

[4] The likely existence of these communications is not "speculation," Palantir asserts.  The substance of Karp's testimony is that the board was informed; he just did not remember any specific communications.  Indeed, if Karp's testimony were true, one would expect, at the very least, to see communications by the board members expressing their supposed "deep[] hurt" over Abramowitz's alleged conduct.

[5] Instead, Palantir offered to resolve this dispute by offering "board minutes," which is likely an empty set.  Palantir tried this exact same strategy in a related Delaware case.  Specifically, Palantir told the trial court that it should limit Palantir's production of documents to "board-level materials" (rather than emails) on a certain subject.  But it turns out that Palantir had no "board-level materials" to produce.  The Delaware Supreme Court described this conduct as Palantir making a false "implicit representation" that board-level materials existed, despite knowing that it "does much of its business informally." *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 750,

(Continued...)

For these reasons, Palantir's board members should be custodians and the above search terms should be run over their files from March 1, 2014 to September 1, 2016.

II.     **Palantir's Position**

To identify information responsive to Defendant's requests, Palantir has implemented an extensive search protocol spanning five pages of search terms and custodians. Despite the already significant burden this protocol imposes, Defendant has incessantly sought to expand it in an apparent attempt to increase Palantir's discovery costs. In this Motion, Defendant seeks to do so by demanding that Palantir collect and search the files of two current members and one former member of its Board of Directors (collectively, "Board Members") for communications concerning Defendant's theft of trade secrets and remedial actions regarding those trade secrets. The inferences Defendant seeks to draw from such searches, however, are irrelevant and unsupported by the law. Regardless, Defendant has not shown that Palantir's current search protocol, which includes custodians who communicated with the Board, is insufficient or that other less burdensome discovery methods are unavailable. *See Hofmann v. Fifth Generation, Inc.*, 2015 WL 7582425, at *3 (S.D. Cal. Nov. 25, 2015) (denying discovery where information was obtainable through more convenient discovery methods). Palantir respectfully requests that the Court deny the Motion.

*Background*. After many weeks of negotiations, the parties agreed on an extensive search protocol for Palantir to employ. To limit the number of discovery disputes, Palantir compromised on many aspects of the protocol even when it believed that its positions were meritorious (including, for example, by agreeing to run searches outside the presumptive date range set by this Court). In its current form, the protocol consists of 24 custodians—including Palantir's high-level executives, such as its CEO and Board member, Alex Karp—124 search terms, and 12 separate sets covering a wide, 11-year time period. Pursuant to this protocol and targeted searches, Palantir has produced over 150,000 pages of documents (in comparison, Defendant has produced only 35,000 pages).

Defendant has nevertheless insisted that Palantir collect and search the custodial files of (i) Palantir's founder and outside director Peter Thiel, (ii) Palantir's founder and inside director Stephen Cohen, and (iii) Palantir's founder and former director Nathan Gettings, who left Palantir on January 1, 2016.[6] During the meet-and-confer process, Defendant claimed that *the absence* of documents notifying the Board Members of Defendant's misappropriation would somehow discredit Dr. Karp's deposition testimony regarding Defendant's misappropriation (testimony that Defendant mischaracterizes). In an attempt to compromise, Palantir agreed to run Defendant's proposed searches in Dr. Karp's and other executives' files for communications with the Board Members. Defendant nonetheless insisted on filing this Motion.

*Discussion*. Defendant cannot establish that Messrs. Thiel, Gettings, and Cohen are appropriate document custodians for several independent reasons.

---

757 (Del. 2019). The same will no doubt be true here: Palantir likely has no "board minutes" to produce. Defendants needs any responsive document, regardless of its form.

[6] Defendant has also insisted that Palantir collect and search the files of various executive assistants who worked for certain custodians in Palantir's protocol. The parties are conferring regarding this issue.

3

*First*, Defendant cannot show that the custodial files of these Board Members are reasonably likely to contain responsive, non-privileged materials. Defendant claims that "there are two possible outcomes" of the searches in the Board Members' files which "would yield relevant information." Defendant is incorrect with respect to each of these "outcomes."

As to the first outcome—which posits that Palantir's Board Members have files notifying them of Defendant's misappropriation—Defendant surmises he would obtain discovery concerning the "actions, if any, the board authorized after learning of alleged misappropriation [to protect the secrecy of the trade secrets or to mitigate damages]." To begin with, courts "require more than [such] mere speculation to order [a party] to include [] apex custodians in the search protocol," especially when, as here, the protocol is already extensive. *See Lauris v. Novartis AG*, 2016 WL 7178602, at *4 (E.D. Cal. Dec. 8, 2016); *McNabb v. City of Overland Park*, 2014 WL 1493124, at *3 (D. Kan. Apr. 16, 2014) (requiring "something more than mere speculation" to justify adding custodians). Regardless, Palantir has already described the steps it took (i) to protect the secrecy of its trade secrets (Interrogatory 2), and (ii) to mitigate damages (Interrogatory 17). Consequently—even assuming Defendant's speculation as to the existence of responsive documents in the Board Members' files is correct—the only additional information Defendant would learn is whether it was a Board Member or someone else at the company who authorized the protective and mitigating actions Palantir has already identified. Such information has trivial, if any, relevance or probative value.

As to the second outcome—which posits that the Board Members do not have files notifying them of Defendant's misappropriation—Defendant claims that the absence of such files would discredit Dr. Karp's supposed deposition testimony that Defendant stole Palantir's "crown jewels." But Dr. Karp did not testify that the trade secrets Defendant misappropriated were its "crown jewels"; instead, he testified generally that Defendant was expected to interact with third parties on Palantir's behalf without "explaining our crown jewels [to them]." More fundamentally, the negative proposition Defendant seeks to establish—*i.e.*, that Palantir's Board Members do not have documents notifying them of Defendant's misappropriation—would not show that Palantir's trade secrets lack value. Indeed, Palantir was not obligated to notify the Board Members of Palantir's allegations against Defendant—a fact Defendant does not dispute. Thus, a lack of documents in the Board Members' files is irrelevant to the value of the trade secrets or Palantir's allegations.

At bottom, if Defendant's contentions were correct, trade secret defendants would be permitted to seek discovery from the plaintiff-corporation's board members in every case. Notably, however, Defendant has not cited ***any caselaw at all*** in support of his Motion.

*Second*, even if there was some likelihood that the requested searches would lead to discovery of relevant documents, the searches would still be improper because "the right to even plainly relevant discovery is not limitless." *See Lauris*, 2016 WL 7178602, at *4. As noted, Palantir has already agreed to a protocol that includes custodians who communicated with the Board Members (such as Dr. Karp). Defendant does not even attempt to argue that this protocol fails to account for some Palantir executive or employee who may have responsive, non-privileged communications with the Board Members. Given the already expensive, burdensome protocol and Defendant's failure to show that it is insufficient to capture the information he seeks, his demand that Palantir add the Board Members as additional custodians is inappropriate. *See id.* (denying request to add four apex custodians to a search protocol already containing nine custodians).

4

*Third*, Defendant's attempt to obtain the negative inferences he seeks is improper because other more convenient and less burdensome discovery means are available.  For instance, instead of demanding that Palantir collect and search the files of the Board Members for the sole purpose of demonstrating an absence of specific documents or their alleged inaction, Defendant can use written discovery to ascertain whether Palantir notified its Board Members of Defendant's misappropriation.  *See Frieri v. Sysco Corp.*, 2017 WL 3387713, at *2 (S.D. Cal. Aug. 4, 2017) (rejecting RFPs that sought potentially relevant materials because "other means of discovery are better suited to obtain the information"); *Sheakalee v. Fortis Benefits Ins. Co.*, 2008 WL 4279383, at *4 (E.D. Cal. Sept. 16, 2008) (same).  Indeed, Defendant has already used such alternative discovery methods to ascertain what steps Palantir has taken to protect its trade secrets and to mitigate its damages.

In response, Defendant claims that "[b]urden is not an issue" because Palantir has not provided "hit counts" for the searches.  This misses the point.  As an initial matter, burden must be assessed in light of ***the entire*** protocol and not simply the incremental burden with respect to each additional, individual custodian.  *See Lauris*, 2016 WL 7178602, at *4.  It is not simply the hit counts, moreover, that impose undue burden; it is the collection process itself, which would impose significant (and needless) hassle on Palantir's Board Members.  *Radio Music License Comm., Inc. v. Glob. Music Rts., LLC*, 2020 WL 7636280, at *4 (C.D. Cal. Jan. 2, 2020) (rejecting request to add non-employee board members as custodians, noting the burden of collecting their files).

*Finally,* Defendant's demand that Palantir search the Board Members' files between March 1, 2014 and September 1, 2016, is overbroad.  As Palantir explained in interrogatory responses, it learned of the claims in Defendant's patent applications in August 2016 and filed this action shortly thereafter.  Given these undisputed facts, Defendant offers no justification for searching the files of Mr. Gettings, who left Palantir on January 1, 2016, or the files of the other two Board Members before August 2016, for communications concerning Defendant's misappropriation.

Dated: July 29, 2021

By: ___/s/ Jack P. DiCanio___
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
NIELS J. MELIUS (SBN 294181)
niels.melius@skadden.com
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 4704570

BARRY SIMON (*pro hac vice*)
bsimon@wc.com
JONATHAN B. PITT (*pro hac vice*)
jpitt@wc.com

5

|  |  |
|---|---|
|  | STEPHEN L. WOHLGEMUTH (*pro hac vice*)<br>swohlgemuth@wc.com<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>Telephone: (202) 434-5000<br>Facsimile: (202) 434-5029<br><br>*Attorneys for Defendant* |
| Dated: July 29, 2021 | By: ___*/s/ Yahor Fursevich*___<br>HUESTON HENNIGAN LLP<br><br>JOHN C. HUESTON (SBN 164921)<br>jhueston@hueston.com<br>MOEZ M. KABA (SBN 257456)<br>mkaba@hueston.com<br>YAHOR FURSEVICH (SBN 300520)<br>yfursevich@hueston.com<br>523 West 6th Street, Suite 400<br>Los Angeles, CA 90014<br>*Attorneys for Plaintiff* |

6

## **SIGNATURE ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

DATE:  July 29, 2021                             */s/ Jack P. DiCanio*

                                                                Jack P. Dicanio