1   John C. Hueston, State Bar No. 164921
    jhueston@hueston.com
2   Moez M. Kaba, State Bar No. 257456
    mkaba@hueston.com
3   Yahor Fursevich, State Bar No. 300520
    yfursevich@hueston.com
4   HUESTON HENNIGAN LLP
    523 West 6th Street, Suite 400
5   Los Angeles, CA 90014
    Telephone:    (213) 788-4340
6   Facsimile:    (888) 775-0898

7   Attorneys for Plaintiff
    Palantir Technologies Inc.

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12  PALANTIR TECHNOLOGIES INC., a          Case No. 5:19-cv-06879-BLF
    Delaware corporation,,
13                                          **JOINT STATEMENT RE PLAINTIFF'S**
                  Plaintiff,                **MOTION TO COMPEL DOCUMENTS**
14                                          **RESPONSIVE TO REQUESTS FOR**
            vs.                             **PRODUCTION NOS. 2–4, 12, 31, 38**
15
    MARC L. ABRAMOWITZ, in his individual
16  capacity and as trustee of the MARC
    ABRAMOWITZ CHARITABLE TRUST NO.
17  2, KT4 PARTNERS LLC, a Delaware limited
    liability company, and DOES 1 through 50,
18  inclusive,,

19                Defendants.

20

21

22

23

24

25

26

27

28

## I.     Palantir's Position

Pursuant to the parties' recent stipulation and the Court's order, Defendant was obligated to produce all documents concerning or reflecting "his patent counsel's conception, invention, or development of the claimed inventions contained in [Defendant's] patent applications." (*See* Dkt. 237.)   Defendant has nevertheless withheld from his production invoices and billing records describing counsel's work on the relevant inventions and the amounts they charged to Defendant. As described below, these materials are critical to rebutting Defendant's contention that he and his patent counsel developed the patent applications without any information from Palantir, as well as to Palantir's damages.   Accordingly, Palantir respectfully requests that the Court order Defendant to produce all such billing records and invoices within two days of the Court's order.

*Background.*   At the core of this case are the patent applications Defendant filed pertaining to the use of data analytics in the cyber, healthcare, and natural resources exploration spheres. Palantir has alleged that each of these applications is based on the proprietary and trade secret information Defendant obtained from Palantir while purporting to work on behalf of the company.   Defendant, on the other hand, has asserted that it was he and his patent counsel, John Squires, who together "developed" the inventions at issue without any input from Palantir.

In an attempt to support his narrative, Defendant has relied almost exclusively on information from Squires and Squires's team.   He has pointed to documents from Squires's files as evidence that "his" inventions did not derive from Palantir and, in the parallel German proceedings, even designated Squires (and no one else) to testify about the "development" of those inventions at trial. In short, Squires is one of the central fact witnesses in this case on whom Defendant has almost exclusively relied to support his defenses in this action.

The parties have already agreed to conduct discovery into Squires's and his team's "development" of the inventions in the patent applications.   Most recently, the parties stipulated, and the Court ordered, that Defendant produce all materials "concerning or reflecting" Squires's "conception, invention, or development of the claimed inventions contained in the patent applications." (*See* Dkt. 237.)   These documents are not just relevant, but critical, to Palantir's claims.   Without them, Palantir cannot examine or adequately rebut Defendant's contentions that he and Squires developed these inventions without any contribution from Palantir.

Defendant has nonetheless withheld one particular (and narrow) set of documents: the bills and invoices from Squires and his team describing the work they performed on the applications. These materials are relevant and should be produced for two reasons:

*First*, they constitute the most direct, probative, and accurate evidence of the exact work Squires and his team performed on the patent applications.   They could well show, for example, which inventions Squires and his team were "developing," how they were doing so, what sources of information they were using, and during what time period.   All this information falls squarely within the Court's order, entered pursuant to the parties' stipulation, requiring Defendant to produce patent counsel's documents reflecting the "conception, invention, or development of the claimed inventions contained in the patent applications."[1]   (*See* Dkt. 237.)

---

[1] Defendant asserts that the Court's order required him to produce documents only "reflecting" but

(Continued...)

*Second*, the billing records and invoices are independently relevant to Palantir's damages.  As noted above, Palantir claims that the inventions in Defendant's patent applications are based on the trade secrets Defendant misappropriated from Palantir.  One category of damages Palantir seeks to recover is the amount by which Defendant was unjustly enriched as a result of his misappropriation— *i.e.*, the value of the trade secrets at issue.  *See* Cal. Civil Code § 3426.3(a). The amount of money Defendant spent on developing the inventions in his patent applications shows that Defendant himself valued the trade secrets to be at least that amount.  For this reason, Palantir is entitled to ascertain how much money Squires and his team charged Defendant and for exactly what work.

Defendant makes four arguments in response but none has merit:

*First*, Defendant claims that the monetary amount he spent on the applications "has no bearing on the actual damages allegedly suffered by Palantir."  Palantir is not arguing, however, that the amount is relevant to the actual damages it has suffered; rather, it is relevant to the value of Defendant's unjust enrichment.  As California law makes clear, "A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." Cal. Civil Code § 3426.3(a).  Regardless, the bills and records are ***independently*** relevant for the first reason discussed above.

*Second*, Defendant claims that the production of the bills and invoices are unnecessary because he already provided the total amount he spent on the applications in an interrogatory response.  Again, this reasoning ignores the first reason as to why these invoices are relevant discussed above.  Regardless, the interrogatory response describes neither the tasks Squires and his team performed, nor breaks down the amounts Defendant paid by task.  This information is necessary to allow Palantir and its experts to determine what percentage of Defendant's expenditures is attributable to what patent application, which is critical for Palantir's damages theory.

*Third*, Defendant claims that the bills and invoices are protected under California's attorney-client privilege.  To be clear, Palantir has no objection to Defendant redacting any privileged communications from the invoices.[2]  Defendant nonetheless argues, citing a single California case, that the invoices are protected under the attorney-client privilege in their entirety.  Not so.  As an initial matter, federal—not California—privilege law applies because this Court's jurisdiction was originally based on a federal claim.  *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839-40 (9th Cir. 2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies.").  That is so even if the federal claim is later dismissed.  *See Ayers v. Lee*, 2018 WL 6589834 at *3 (S.D. Cal. Dec. 14, 2018) (applying federal law because "the Court

---

not "concerning" his counsel's development of the inventions at issue.  To begin with, as the introductory paragraphs of the stipulation make clear, it was certainly the parties' intent that Defendant produce documents "concerning" that development.  Although Palantir accepted the deletion of the word "concerning" later in the stipulation (along with many other edits) it did so because it perceived there to be no substantive difference between "concerning" and "reflecting" in this context.  Indeed, counsel's descriptions of their work surely "reflect" the work they performed.

[2] Of course, as Defendant knows, he may not redact any communications with Squires concerning the technologies described in the cyber patent applications.  As Magistrate Judge Corley determined in parallel proceedings under 28 U.S.C. § 1782, Defendant expressly waived privilege over such communications in the German proceedings. *See Palantir Technologies Inc. v. Marc L. Abramowitz*, 18-mc-80132-JSC (N.D. Cal.) (Dkt. 86) (holding that Defendant waived privilege over his "correspondence with Mr. Squires concerning the technologies described in the Cyber Patents").

1   originally exercised federal question jurisdiction"). Under federal law, courts routinely allow the
2   production of legal invoices with privileged information redacted. *See, e.g., Funai Elec. Co. v.*
    *Daewoo Elecs. Corp.*, 2009 WL 1110825, at *1 (N.D. Cal. Apr. 24, 2009). Indeed, in this very case,
3   Palantir produced its billing records and invoices from its own patent counsel with minor redactions.

4           In any event, the sole California case Defendant cites is inapposite even if California law
5   were to apply. In that case, the Court precluded from production invoices pertaining to a "pending"
    litigation, whereas here, the invoices do not pertain to any pending litigation but only patent work
6   that occurred 6-8 years ago. *Los Angeles Cty. Bd. of Supervisors v. Superior Ct.*, 2 Cal. 5th 282, 297
    (2016) ("***When a legal matter remains pending and active***, the privilege encompasses everything in
7   an invoice. . . ." (emphasis added).) In fact, as the California court expressly noted, the withholding
8   party had already produced invoices from "lawsuits that were no longer pending" in redacted form.
    *Id.* at 288. That is precisely what Defendant should do here.

9           *Fourth*, Defendant objects to producing invoices beyond the presumptive date range.
10  Although the parties agreed to conduct damages discovery—and produce documents subject to the
    stipulation above—beyond the presumptive date range, Palantir can agree to limit its request only to
11  the presumptive date range. To the extent Defendant claims that it would be unduly burdensome to
    review patent counsel's invoices within the three years of the presumptive date range, he has not
12  come close to substantiating that burden. He has not even identified how many invoices there are or
    their length. Palantir has produced almost five times the number of pages Defendant has produced
13  in this action and reviewed tens of thousands more documents. It is not unduly burdensome for
14  Defendant to review his patent counsel's invoices within the presumptive date range.

15  **II.     Defendant's Position**

16          Palantir's motion misrepresents the parties' agreement and misleads as to the information
    defendant has already provided. As an initial matter, the parties' stipulation did <u>not</u> "obligat[e
17  Defendant] to produce all documents ***concerning or*** reflecting 'his patent counsel's conception,
    invention, or development of the claimed inventions contained in Mr. Abramowitz's patent
18  applications.'" In negotiating the stipulation, defense counsel struck the bolded language and was
19  explicit in maintaining Defendant's long-held position that he will not agree to an overbroad request
    asking for any and all documents "concerning" the patent applications because it would require,
20  among other things, the review and redaction of more than eight-years of patent counsel's invoices.
    Palantir agreed to that limitation, and in so doing secured defendant's agreement to produce "all
21  documents in his possession ***reflecting*** his patent counsel's conception, invention or development."
22  Dkt. 237.

23          The legal invoices are also <u>not</u> "the most direct, probative, and accurate evidence of the exact
    work Squires and his team performed on the patent applications." That evidence has already been
24  produced in the form of more than 6,500 pages of documents and communications reflecting patent
    counsel's work on the at-issue applications. These documents and communications—not patent
25  counsel's billing records—contain all the information Palantir purportedly seeks, including "which
26  inventions Squires and his team were 'developing,' how they were doing so, what sources of
    information they were using, and during what time period." Defendant has also provided
27  interrogatory responses detailing the date and amount of each payment Mr. Abramowitz made to
28  patent counsel. Palantir has never explained why patent counsel's description of its work in the form
    of billing invoices is necessary or proportional given the amount of information already in Palantir's

1  possession.

2    Defendant fulfilled its obligations under the parties' stipulation, Dkt. 237, and Palantir has
3  received the benefit of that bargain:  it knows exactly how much Defendant paid patent counsel to
   draft and prosecute the at-issue patent applications and it has received all documents and
4  communications evidencing those efforts.   Palantir's attempt to rewrite the stipulation after it
5  received the benefit of its bargain should not be countenanced, and its attempt to foist on Defendant
   the additional cost of reviewing and redacting eight-years of legal invoices should be denied in its
6  entirety.

7    <u>Background</u>:    This  dispute  arose  from  Defendant's  response  to  Palantir's  eleventh
   interrogatory, which asked Defendant to "identify all investments, payments, expenditures, and
8  costs" that Defendant made or incurred in connection with the patent applications.   Defendant
9  provided timely responses and detailed two payments that Mr. Abramowitz made during the
   presumptive date range—a $76,503.75 payment to patent counsel on December 30, 2015 and a
10 $100,000 payment to ipCreate on November 16, 2015.

11   Palantir and Defendant then met and conferred, and Defendant agreed to amend the response
   to identify payments made after the presumptive date range (i.e., after Palantir filed suit on September
12 1, 2016).  Defendants provided the amended response on October 27, 2021, and identified additional
   payments by Mr. Abramowitz to patent counsel in the amount of $130,588.44.

13   Palantir then returned with a new demand:  "produce [the] invoices from patent counsel and
14 documents sufficient to show payments made to patent counsel."

15   <u>Argument</u>:  Palantir's motion to compel the production of invoices from patent counsel and
   "documents sufficient to show payments made to patent counsel" should be denied for at least the
16 following five reasons.

17   *First*, Defendant fully complied with the parties' agreement to produce all documents
   "reflecting his patent counsel's conception, invention, or development of the patent applications."
18 Dkt. 237.  Palantir's claim that it was "clearly the parties' intent" to include patent counsel's invoices
   is inaccurate:  Palantir knew full-well that Defendant objected to producing patent counsel's invoices
19 and ***accepted*** defense counsel's deletion of "concerning" from the stipulation.  Mr. Abramowitz
20 complied with the agreement as written and produced all documents and communications reflecting
   patent counsel's involvement in developing and drafting the patent applications.  Palantir should not
21 be permitted to expand the scope of the parties' agreement ***after*** securing Defendant's compliance
22 therewith.

23   *Second*, patent counsel's invoices and Defendant's payment of those invoices are neither
   relevant nor proportional to the needs of the case.  Palantir argues that the amount Defendant spent
24 on the patent applications is relevant to damages because it "shows that Defendant himself valued
   the trade secrets to be at least that amount."   This argument is a *non sequitur*:  even ignoring the
25 non-economic worth of a patent application, Mr. Abramowitz's subjective valuation of the patent
   applications (to the extent that can be gleaned from the amount he paid to patent counsel) has no
26 bearing on the damages Palantir may recover.  This is true even under an unjust enrichment theory:
27 it is undisputed that Mr. Abramowitz was not ***enriched***—whether justly or otherwise—in connection
   with the patent applications, and Palantir cannot provide a single citation to support its argument that
28 it can nonetheless recover "damages" in the amount of the ***costs incurred*** by Mr. Abramowitz.

1      *Third*, even if the amount Mr. Abramowitz paid patent counsel were relevant to Palantir's
2  damages (it is not), Defendant already provided (1) the amount Mr. Abramowitz paid to patent
counsel and (2) all documents and communications evidencing that work. Mr. Abramowitz's patent
3  counsel worked on multiple legal matters for Mr. Abramowitz and other members of his family—
both before and after the presumptive date range—which do not relate to the preparation, drafting,
4  or prosecution of the patent applications at issue in this litigation, and Palantir has provided no
5  explanation as to why Defendant should bear the burden of re-reviewing and redacting eight-years-
worth of legal invoices just so Palantir can discover patent counsel's "description of the tasks"
6  performed in the underlying documents.

7      *Fourth*, even if the physical invoices were relevant and proportionate to the needs of the case
(again, they are not), California law—not federal law—governs privilege over Palantir's remaining
8  state-law claims, Fed. R. Evid. 501, and California law, unlike federal law, protects legal invoices in
9  their entirety. *See Grant & Eisenhofer, P.A. v. Brown*, 2018 WL 4945303, at *3 (C.D. Cal. May 14,
2018) (applying California law and recognizing that "when, as here, a legal matter remains pending
10  and active, the [litigation] privilege encompasses everything in an invoice, including the amount of
aggregate fees"). Palantir's claim that federal courts routinely apply federal law in such
11  circumstances relies on a single case that is a clear outlier. *See, e.g.*, *Platypus Wear, Inc. v. K.D. Co.*,
12  905 F. Supp. 808, 812 (S.D. Cal. 1995) ("Where the application of state privilege law to evidence in
support of a claim arising under state law creates no conflict, such as where the evidence sought can
13  be relevant only to state law claims, the state law privilege should be applied consistent with the
express language of Rule 502."). And the Ninth Circuit case Palantir relies upon is of no help, as it
14  holds that "the federal law of privilege" applies where "there are federal question claims and pendant
15  state law claims present." *Agster*, 422 F.3d at 839-40. Here, there are no "federal question claims .
. . present," as Palantir's RICO claims have been dismissed and only state law claims remain. The
16  plain language of Rule 501 therefore controls, and "state law governs privilege regarding a claim or
defense for which state law supplies the rule of decision."
17

18      *And finally*, nearly half of the invoices requested by Palantir relate to services performed ***after***
the presumptive date range in this case (i.e., after Palantir filed suit), and thus implicate both the
19  attorney-client ***and*** work-product privileges.[3] And even the invoices within the presumptive date
range will require careful, time-consuming review and redaction: Mr. Abramowitz's patent counsel
20  worked on multiple legal matters for Mr. Abramowitz and other members of his family—both before
and after the presumptive date range—which do not relate to the preparation, drafting, or prosecution
21  of the patent applications at issue in this litigation. This Court has already rejected once Palantir's
22  attempt to foist the cost of reviewing and redacting Defendant's lawyer's files outside the
presumptive date range for discovery, Dkt. No. 169, and Palantir has failed to provide any
23  explanation or good cause as to why a different outcome is warranted here.

24

25

26

27  _____

[3] That Palantir provided redacted legal invoices is irrelevant because Palantir put that burden on
28  itself: Palantir is claiming the amount it paid its lawyers as damages. There is no such claim or
defense as to Defendant's legal invoices.

1

2   Dated: December 7, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16   Dated: December 7, 2021

17

18

19

20

21

22

23

24

25

26

27

28

By: /s/ *Jack P. DiCanio*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

JACK P. DICANIO (SBN 138782)
jack.dicanio@skadden.com
ALLEN RUBY (SBN 47109)
allen.ruby@skadden.com
NIELS J. MELIUS (SBN 294181)
niels.melius@skadden.com
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

BARRY SIMON (*pro hac vice*)
bsimon@wc.com
JONATHAN B. PITT (*pro hac vice*)
jpitt@wc.com
STEPHEN L. WOHLGEMUTH (*pro hac vice*)
swohlgemuth@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Attorneys for Defendant*

By: /s/ *Yahor Fursevich*
HUESTON HENNIGAN LLP

JOHN C. HUESTON (SBN 164921)
jhueston@hueston.com
MOEZ M. KABA (SBN 257456)
mkaba@hueston.com
YAHOR FURSEVICH (SBN 300520)
yfursevich@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff*

Case No.  5:19-cv-06879-BLF
JOINT STATEMENT RE PLAINTIFF'S MOTION TO COMPEL DOCUMENTS

1

## **SIGNATURE ATTESTATION**

2       Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in

3  the filing of this document has been obtained from any other signatory to this document.

4

5  Dated: December 7, 2021                                         */s/ Yahor Fursevich*

6                                                                           Yahor Fursevich

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -
Case No.  5:19-cv-06879-BLF
JOINT STATEMENT RE PLAINTIFF'S MOTION TO COMPEL DOCUMENTS