UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PALANTIR TECHNOLOGIES INC., <br><br>Plaintiff, <br><br>v. <br><br>MARC L. ABRAMOWITZ, <br><br>Defendant. | Case No. 19-cv-06879-BLF <br><br>**ORDER DENYING ABRAMOWITZ'S MOTION FOR SUMMARY JUDGMENT** <br><br>[Re: ECF No. 312] |

Before the Court is a motion for summary judgment filed by Defendant Marc Abramowitz on breach of contract and trade secret misappropriation claims brought by Plaintiff Palantir Technologies Inc. *See* ECF No. 312 ("MSJ"); *see also* ECF No. 328 ("Reply"). Palantir opposes the motion. *See* ECF No. 316 ("Opp."). The Court held a hearing on the motion on July 21, 2022. ECF No. 336. For the reasons explained below, the motion is DENIED as to both claims.

## I. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d

1099, 1102 (9th Cir. 2000).  If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses.  *Id.* at 1103.  If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049.  In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).

## II. DISCUSSION

### A. Breach of Contract

Abramowitz first moves for summary judgment on Palantir's breach of contract claim.  ECF No. 126 ("5AC") ¶¶ 88–93.  Under California law, to prove a breach of contract, a plaintiff must show (1) the existence of a contractual obligation, (2) plaintiff's performance or excuse, (3) breach, and (4) resulting damages.  *Oasis W Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  Abramowitz says there is no genuine dispute of material fact regarding elements three and four.  He argues that (1) there is no breach because the July 2014 NDA that is the basis of the claim did not apply retroactively to disclosures made before the NDA was executed and there is no evidence of disclosures after that date, MSJ at 11–13; and (2) Palantir cannot show damages for any supposed breach, *id.* at 13–14.  The Court finds that there are genuine disputes of material fact regarding both of these issues that preclude summary judgment on the claim.

#### i. Breach

Abramowitz first argues that Palantir has no evidence of breach because the nondisclosure agreement that Abramowitz signed on July 12, 2014—the only contract that is the subject of the claim—does not apply retroactively to impose confidentiality obligations on Abramowitz regarding information previously disclosed to him, and Palantir has no evidence of post-July 2014 disclosures of confidential and proprietary information.  MSJ at 11–13.  Palantir responds that the NDA covers all post-July 2014 uses or disclosures of confidential or proprietary information,

2

1  whether that information was obtained before or after July 2014, and that Palantir employees have
2  testified as to post-July 2014 conversations with Abramowitz regarding confidential information.
3  Opp. at 24–25.

4  This issue involves interpretation of the July 2014 NDA, which is governed by California
5  law.  ECF No. 316-5 ("Jackson Decl."), Ex. 1 ("NDA") ¶ 7.  Under California law, a contract must
6  be interpreted to give effect to the mutual intention of the parties at the time the contract was
7  formed.  Cal. Civ. Code § 1636.  The parties' intent is determined from the language of the
8  contract, "if the language is clear and explicit, and does not involve an absurdity."  *Id.* § 1638.
9  "Interpretation of a written contract is a question of law for the court unless that interpretation
10 depends upon resolving a conflict in properly admitted extrinsic evidence."  *Alki Partners, LP v.*
11 *DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 599 (2016).

12 The NDA begins with a preamble that reads as follows:

> Thank you for visiting Palantir Technologies Inc. ("Palantir"). In order to grant you access to Palantir's premises, Palantir requires you to agree to the terms in this Agreement.
>
> During your visit, you may or will become aware of non-public business, technical or other confidential information, materials and/or idea of Palantir ("Proprietary Information," which term shall include, without limitation, anything you learn or discover as a result of exposure to or analysis of any Proprietary Information).

18 *See* NDA.  The NDA then states, "You agree as follows:" with a list of numbered provisions.  As
19 is relevant here, one of those numbered provisions requires the signatory to "hold all Proprietary
20 Information in strict confidence and [ ] not use (except as expressly authorized by Palantir) or
21 disclose any Proprietary Information for any purpose."  *Id.* ¶ 1.

22 Abramowitz urges the Court to conclude that the NDA "only covers that single day"—i.e.,
23 July 12, 2014, the day Abramowitz visited Palantir's offices and signed the NDA.  MSJ at 11.
24 Abramowitz says that the NDA is not susceptible to a construction that "impose[s] a
25 confidentiality obligation retroactively, i.e., upon information that Palantir allegedly provided
26 before execution," pointing to language in the Preamble stating that "[d]uring your visit" the
27 signatory "may or will become aware of" confidential information  *Id.* at 11–12.  Palantir contends
28 that the NDA is not so limited, pointing to the broad definition of "Proprietary Information" and

3

the obligation to hold "all" such information in confidence. Opp. at 24.

      The Court agrees with Palantir's construction. Abramowitz is correct that there is nothing in the NDA that retroactively makes any pre-July 12, 2014 disclosures or use of information newly improper. An express statement would be required to make the NDA have this effect. *See, e.g.*, *Swift Harvest USA, LLC v. Boley Int'l HK Ltd.*, 2020 WL 7380148, at *9 n.6 (C.D. Cal. Sep. 22, 2020) ("It is well-established California law that contracts can have retroactive effect when that date is specifically stated in the contract."). But the plain terms of the NDA impose a going-forward obligation on the signatory to "hold *all* Proprietary Information in strict confidence and [ ] not use . . . or disclose any Proprietary Information for any purpose." NDA ¶ 1. Abramowitz emphasizes that the preamble states that the signatory "may or will become aware of" Proprietary information "[d]uring your visit" to Palantir's premises. MSJ at 12 (quoting NDA at 1). But the definition of Proprietary Information—"non-public business, technical or other information, materials and/or ideas of Palantir"—is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days. Together, these provisions imposed on Abramowitz an obligation starting on July 12, 2014 to not "use . . . or disclose any Proprietary Information for any purpose," regardless of whether that Proprietary Information was obtained from Palantir prior to the signing the NDA, on the day the NDA was signed, or afterwards.

      There are genuine disputes of material fact regarding whether Abramowitz in fact "use[d] . . . or disclose[d]" any Proprietary Information after July 12, 2014. First, while it is undisputed that Abramowitz met with Palantir employees in February 2013, March 2014, and June 2014, it is hotly contested whether Palantir disclosed any Proprietary Information at those meetings. Palantir has pointed to sufficient evidence to avoid summary judgment on this issue. For example, multiple Palantir employees have testified to disclosing confidential Palantir information at these meetings. Lauren DeMeuse and Casey Ketterling testified that in a 2.5 hour-long "deep dive" meeting in February 2013, they "went through [Palantir's] clinical trial work into great depth," including by showing Abramowitz specific data sources and dashboards. ECF No. 317 ("Fursevich Decl.") Ex. 29 ("DeMeuse DE Dep.") 184:3–10; Fursevich Decl. Ex. 14 ("Ketterling

Dep.") 14:16–24. Kevin Kawasaki testified that he met with Abramowitz in March 2014 and discussed "in great detail" Palantir's oil and gas business and what it was doing for customer BP. Fursevich Decl. Ex. 34 ("Kawasaki CA Dep.") 133:19–23. And Palantir's COO Shyam Sankar testified that in June 2014, he met with Abramowitz and discussed Palantir's novel work in cyber security and cyber insurance. Fursevich Decl. Ex. 24 ("Sankar DE Dep.") 119:24–131:2. These employees testified that Abramowitz expressly recognized that the information being shared was confidential and that he would keep it that way. *See, e.g.*, Kawasaki CA Dep. 135:3–22 ("[I]t was always understood that what we are talking about was confidential. I said it, he acknowledged it."); Sankar DE Dep. 200:19–21 (Abramowitz stated "he would keep everything [they] talked about confidential"). There are genuine disputes of material fact about whether the information disclosed at these meetings fits within the definition of "Proprietary Information" in the NDA.[1]

Second, it is also disputed whether Abramowitz breached the NDA through "use" of any Proprietary Information in the patent applications he filed beginning in at least October 2014. *See* 5AC ¶ 66 (listing alleged patent applications); *accord* MSJ at 7 (provisional patent applications filed in October 2014, complete applications filed in December 2015). For example, Palantir's experts have opined that Abramowitz's patent applications were based on or derived from Palantir's confidential information that was disclosed in those meetings. *See* ECF Nos. 290-3 ¶¶ 74, 110 (Dr. Eric Cole expert report on cyber security and cyber insurance trade secrets); 290-4 ¶¶ 52, 57 (Stephan Ogenstad expert report on clinic trials trade secrets); 209-5 ¶¶ 57–58 (Stephen Parente expert report on health insurance risk assessment trade secrets); 209-6 ¶ 87 (Paul Pinto expert report on natural resources trade secrets). Whether Abramowitz in fact "use[d]" any

---

[1] In reply, Abramowitz moves to strike the affidavit of Alexander Karp, Palantir's co-founder and CEO, arguing that Karp was not timely disclosed as someone who possessed trade secrets and that his affidavit is at odds with Palantir's written discovery responses. *See* Reply at 3–4. Summary judgment is inappropriate even without considering Karp's declaration. Regardless, Palantir long ago said that Karp was an individual with whom Abramowitz met and discussed confidential information, ECF No. 311-7 at 5–6 (responses to Abramowitz's first set of interrogatories identifying Karp), and Abramowitz had ample opportunity to explore these issues with Karp in his February 2022 deposition in this action. *See* Fursevich Decl. Ex. 1 (Karp deposition transcript). The Court DENIES the motion to strike and, because it has considered Palantir's and Abramowitz's responses on this issue (ECF Nos. 329-1, 333-3), GRANTS Palantir's administrative motion for leave to file a limited response.

5

Proprietary Information in the patent applications in breach of the NDA will be an issue for the jury.

Viewing this and the other evidence in the light most favorable to Palantir, there are genuine disputes of material fact about whether Abramowitz received Proprietary Information in these meetings and later used it in his patent applications.

### ii. Damages

Abramowitz also argues that Palantir has no evidence of damages from its breach of contract claim. MSJ at 13. Palantir responds that it incurred damages from monitoring and uncovering Abramowitz's breach, paying fees to the Patent & Trademark Office, and taking steps to mitigate harm from Abramowitz's breach. Opp. at 25. Palantir also says that it can recover nominal damages for the breach. *Id.*

The Court finds there are genuine disputes of material fact regarding whether Palantir suffered damages from Abramowitz's alleged breach of contract. Palantir is correct that costs incurred in mitigating harms from a breach of a confidentiality agreement are foreseeable damages from that breach. *See Planned Parenthood Fed'n. of Am. v. Ctr. for Med. Progress*, 735 F. App'x 241, 246 (9th Cir. 2018) ("increased security and IT costs" following alleged breach of contract were foreseeable damages). Regardless, recent California Court of Appeal authority confirms that nominal damages are available as a matter of law where a contract has been breached. *See Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965–66 (2021); *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, --- F. Supp. 3d ----, 2022 WL 1990225, at *22–23 (N.D. Cal. Jun. 6, 2022) (granting summary judgment on liability to party asserting breach of contract claim because even if it did not suffer actual damages as pleaded in complaint, "at least nominal damages are available" as a matter of law). There are thus genuine disputes of material fact regarding whether and to what extent Palantir was damaged as a result of the alleged breach of the NDA, so summary judgment is not warranted on this issue.

\*   \*   \*

Abramowitz's motion for summary judgment on Palantir's breach of contract claim is DENIED.

**B.     Trade Secret Misappropriation**

Abramowitz also moves for summary judgment on Palantir's trade secret misappropriation claim under the California Uniform Trade Secrets Act ("CUTSA"). 5AC ¶¶ 94–102. The elements of a CUTSA claim are (1) existence of a trade secret, (2) disclosure to the defendant under circumstances giving rise to an obligation not to use or disclose the trade secret to the detriment of the discloser, and (3) use or disclosure by the defendant to a third party. *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1112–13 (N.D. Cal. 2012). Information is a trade seret if it (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use," and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3246.1(d)(1)–(2). Abramowitz contends there is no genuine dispute of material fact regarding the first and third elements of a CUTSA claim. First, he argues that Palantir did not make reasonable efforts to maintain the secrecy of information it claims are trade secrets. MSJ at 15–22. Second, Abramowitz contends that there is no actual evidence that he used or disclosed any trade secret information. *Id.* at 22–23. The Court finds that genuine disputes of material fact remain as to both issues.

**i.     Reasonable Efforts to Maintain Secrecy**

Abramowitz argues that Palantir did not make reasonable efforts to maintain the secrecy of information that it claims are protectable trade secrets. MSJ at 15–22. Abramowitz says that Palantir (1) disclosed the alleged trade secrets to him with no contractual confidentiality obligations, (2) disclosed the information without specific instructions or training on how or to whom the information could be disclosed, and (3) took no action to prevent publication of the trade secrets when it learned Abramowitz was planning to file a patent applications. *Id.* Palantir identifies a number of steps it took to protect its confidential information and contends that whether it took "reasonable" efforts to protect its trade secrets is an issue of fact for the jury, and it points to several types of evidence it contends (individually and collectively) create a genuine dispute of material fact on this issue.

The Court agrees with Palantir. Whether a company has taken reasonable efforts to protect

7

its trade secrets is a "quintessentially fact-specific" inquiry. *SPS Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 5785264, at *8 (C.D. Cal. Sep. 3, 2021) (quoting *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420571, at *2 (C.D. Cal. Aug. 4, 2011)); *see also AT&T Commc'ns of Cal., Inc. v. Pac. Bell*, 238 F.3d 427 (9th Cir. 2000) (unpublished) ("Only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment."); *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070–71 (9th Cir. 2016) (declining to affirm summary judgment against trade secret claim even where plaintiff "did not do much, if anything, to explicitly protect its [trade secrets]" because there were at least "implicit business expectations that [defendant] would keep the prototype secret").

This is not the "extreme" case in which summary judgment on this issue is appropriate because there are genuine disputes of material fact over whether Palantir's efforts to protect its trade secrets were "reasonable." *Pac. Bell*, 238 F.3d at 427. For example, as the Court has already held, Palantir has pointed to evidence that Abramowitz repeatedly affirmed his understanding that information that was shared with him was confidential and should not be shared. *See, e.g.*, Kawasaki CA Dep. 135:3–22 ("[I]t was always understood that we are talking about was confidential. I said it, he acknowledged it."); Sankar DE Dep. 200:19–21 (Abramowitz stated "he would keep everything [they] talked about confidential"). Oral representations of confidentiality alone have been held to preclude summary judgment on this issue. *VBS Distrib. v. Nutrivita Lab'ys, Inc.*, 811 F. App'x 1005, 1009 (9th Cir. 2020) (reversing summary judgment where VBS "orally review[ed]" confidentiality obligations with vendors, notwithstanding lack of written agreements); *see also Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1201 (S.D. Cal. 2008) (denying summary judgment because "lack of confidentiality agreements is not dispositive on the issue of secrecy" because plaintiff "may have taken other precautions to keep its information secret"). Palantir also says that it employs physical and network security measures to protect its confidential information and conducts mandatory legal training covering confidentiality and data security. *See* Jackson Decl. ¶¶ 2, 5–7. This and the other evidence to which Palantir points is sufficient to avoid summary judgment. *See Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, 2018 WL 4697255, at *5–6 (C.D. Cal. Aug. 3, 2018) (denying summary judgment on "reasonable

8

efforts" notwithstanding lack of NDA with every customer to whom trade secrets were disclosed because plaintiff "may take other precautions to keep its information secret, such as verbally telling its clients that the information was confidential or limiting access to information on a 'need to know' basis") (citation omitted).

Abramowitz strenuously disputes that Palantir's measures and course of action demonstrate "reasonable efforts" to protect its trade secrets. Abramowitz questions why Palantir would disclose its supposed "crown jewels" to an individual with whom it had no true employment or contractual relationship, contends that Palantir never gave Abramowitz instructions or training on what information he could and could not share with third parties, and asserts that Palantir failed to timely act despite warnings that Abramowitz's patent applications might contain this information. Abramowitz may have strong arguments on these points, but that is for the jury to decide, not this Court. Because there are genuine disputes of material fact over whether Palantir's efforts to protect its trade secrets were "reasonable," summary judgment on this issue is not appropriate.

### ii. Use or Disclosure

Abramowitz also argues that there is no evidence that he actually misappropriated Palantir's trade secrets by using or disclosing them to a third party. MSJ at 22–23. Palantir says that there are genuine disputes of material fact on this issue, pointing to expert reports that opine that Abramowitz's patent applications were based on or substantially derived from Palantir's trade secrets. Opp. at 22–24.

The Court agrees with Palantir. The Court has already found that there are genuine disputes of material fact over whether Abramowitz "use[d] . . . or disclose[d]" *Proprietary Information* in breach of the NDA he signed. *See supra* Section II.A.i. The Court similarly concludes that there are genuine disputes of material fact as to whether Abramowitz used or disclosed Palantir's *trade secrets* such that he actually misappropriated them. "[P]roof that trade secrets have been 'used' [under CUTSA] can come in various forms," and "an actor is liable for using the trade secret with independently created improvements or modification if the result is substantially derived from the trade secret." *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL

452111, at *5 (N.D. Cal. Jan. 17, 2018) (citing Restatement (Third) of Unfair Competition § 40 cmt. c (1995)). Here, for example, as the Court has already recounted, Palantir's experts have opined that Abramowitz's patent applications were based on or derived from the Palantir's trade secrets. *See* ECF Nos. 290-3 ¶¶ 74, 110 (Dr. Eric Cole expert report on cyber security and cyber insurance trade secrets); 290-4 ¶¶ 52, 57 (Stephan Ogenstad expert report on clinic trials trade secrets); 209-5 ¶¶ 57–58 (Stephen Parente expert report on health insurance risk assessment trade secrets); 209-6 ¶ 87 (Paul Pinto expert report on natural resources trade secrets).

There are thus genuine disputes of material fact regarding whether Abramowitz misappropriated Palantir's trade secrets, so summary judgment is inappropriate.

\*     \*     \*

Abramowitz's motion for summary judgment on Palantir's trade secret misappropriation claim is DENIED.

### III.   ORDER

Abramowitz's motion for summary judgment is thus DENIED and both the breach of contract claim and the trade secret misappropriation claim will go forward. The case schedule (ECF No. 361) remains in effect, and the parties' *Daubert* motions (ECF Nos. 291, 297) remain set for hearing on September 29, 2022 at 9:00 a.m. via Zoom.

Dated: July 26, 2022

_____
BETH LABSON FREEMAN
United States District Judge

10