**HUESTON HENNIGAN LLP**
John C. Hueston, State Bar No. 164921
jhueston@hueston.com
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Yahor Fursevich, State Bar No. 300520
yfursevich@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 775-0898

*Attorneys for Plaintiff*
Palantir Technologies Inc.

*[Counsel for Defendant Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

PALANTIR TECHNOLOGIES INC., a Delaware corporation,

Plaintiff,

vs.

MARC L. ABRAMOWITZ,

Defendant.

Case No. 5:19-cv-06879-BLF

**REVISED JOINT [PROPOSED] JURY INSTRUCTIONS**

## PRELIMINARY INSTRUCTIONS

**STIPULATED INSTRUCTION NO. 1 RE**

**DUTY OF JURY**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.2 (2017).

**STIPULATED INSTRUCTION NO. 2 RE**

**CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, Palantir Technologies Inc. ("Palantir"), claims that defendant Marc L. Abramowitz ("Abramowitz") has misappropriated Palantir's protectable trade secrets. Palantir claims that it is the owner of confidential and valuable trade secrets in the fields of cyber security, cyber insurance, clinical drug trials, health insurance risk assessment, and natural resources exploration (collectively, the "alleged trade secrets"). Palantir claims that each one of Palantir's alleged trade secrets is a trade secret and that Abramowitz misappropriated one or more of them. "Misappropriation" means the improper acquisition, use, or disclosure of the alleged trade secrets. Specifically, and among other things, Palantir contends that Abramowitz, who it claims lacks technical expertise, filed patent applications based on Palantir's alleged trade secrets and took steps to establish businesses to compete with Palantir.

Abramowitz denies ever receiving or using Palantir's alleged trade secrets. He also contends that Palantir's alleged trade secrets are not protectible trade secrets, but rather consist of nothing more than the well-known concept of "big data" analysis applied to the relevant fields. Abramowitz further claims that Palantir did not treat its alleged trade secrets as trade secrets because Palantir did not take reasonable measures to protect them. Abramowitz further claims that he independently arrived at each of the inventions described in his patent applications, and that no technical expertise was required in order to do so.

Palantir also claims that Abramowitz breached the Non-Disclosure Agreement he entered into with Palantir by misusing or disclosing its alleged confidential information. Abramowitz denies that he breached the Non-Disclosure Agreement and denies misusing or disclosing Palantir's alleged confidential information.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.5 (2017).

**STIPULATED INSTRUCTION NO. 3 RE**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts that will be read to you. You must therefore treat these facts as having been proved.

STIPULATED FACTS:

1. Palantir was founded in 2003.
2. Palantir was a private company from the date of incorporation until September 29, 2020.
3. At various times from 2006 to 2011, Abramowitz and related entities purchased shares in Palantir stock.
4. Abramowitz and related entities currently hold no Palantir stock.
5. On March 5, 2014, Abramowitz filed a patent application entitled "System and Method for Generating a Dynamic Credit Risk Rating for a Debt Security."
6. On October 21, 2014, Abramowitz filed with the USPTO Application No. 62/066,716.
7. On October 21, 2015, Abramowitz filed with the USPTO Application No. 14/919,506. This application was published by the USPTO on April 21, 2016.
8. On October 21, 2015, Abramowitz filed the international Application No. WO 2016/065049 A1. This application was published by the EPO on April 28, 2016.
9. On October 20, 2015, Abramowitz filed with the USPTO Application No. 14/918,398. This application was published by the USPTO on April 21, 2016.
10. On October 20, 2015, Abramowitz filed the international Application No. WO 2016/064919 A1. This application was published by the EPO on April 28, 2016.
11. On October 29, 2014, Abramowitz filed with the USPTO Application No. 62/072,368.
12. On December 1, 2014, Abramowitz filed with the USPTO Application No. 62/086,125.
13. On October 29, 2015, Abramowitz filed with the USPTO Application No.

14/926,408. This application was published by the USPTO on May 5, 2016.

14. On November 26, 2018, Abramowitz filed with the USPTO Application No. 16/200,349.

15. On October 29, 2015, Abramowitz filed with the USPTO Application No. 14/926,343. This application was published by the USPTO on May 5, 2016.

16. On October 29, 2015, Abramowitz filed the international Application No. 2016/069857 A1. This application was published by the EPO on May 6, 2016.

17. On December 19, 2014, Abramowitz filed with the USPTO Application No. 62/094,888.

18. On December 18, 2015, Abramowitz filed with the USPTO Application No. 14/975,373. This application was published by the USPTO on June 23, 2016.

19. On November 19, 2018, Abramowitz filed with the USPTO Application No. 16/200349.

20. Marc Abramowitz is listed as the only inventor on each of the above-listed patent applications.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.2 (2017).

**STIPULATED INSTRUCTION NO. 4 RE**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.6 (2017)

**STIPULATED INSTRUCTION NO. 5 RE**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.7 (2017).

**STIPULATED INSTRUCTION NO. 6 RE**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I may instruct you to accept as proved.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.9 (2017)

**STIPULATED INSTRUCTION NO. 7 RE**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.10 (2017)

**STIPULATED INSTRUCTION NO. 8 RE**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.12 & cmt. (2017)

**STIPULATED INSTRUCTION NO. 9 RE**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.13 (2017)

**STIPULATED INSTRUCTION NO. 10 RE**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.14 (2017)

**STIPULATED INSTRUCTION NO. 11 RE**

**CONDUCT OF THE JURY**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

> Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial

process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.15 (2020)

**STIPULATED INSTRUCTION NO. 12 RE**

**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.17 (2017).

**STIPULATED INSTRUCTION NO. 13 RE**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom / jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.18 (2017)

**STIPULATED INSTRUCTION NO. 14 RE**

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.20 (2017)

**STIPULATED INSTRUCTION NO. 15 RE**

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.21 (2017).

**STIPULATED INSTRUCTION NO. 16 RE**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.4 (2017).

**STIPULATED INSTRUCTION NO. 17 RE**

**IMPEACHMENT EVIDENCE - WITNESS**

The evidence that a witness lied under oath on a prior occasion or gave different or inconsistent testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.9 (2017).

**STIPULATED INSTRUCTION NO. 18 RE**

**USE OF INTERROGATORIES**

Evidence will be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.11 (2017).

**STIPULATED INSTRUCTION NO. 19 RE**

**USE OF REQUESTS FOR ADMISSION**

Evidence will be presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.12 (2017).

**STIPULATED INSTRUCTION NO. 20 RE**

**EXPERT OPINION**

You are about to hear testimony from various witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.13 (2017).

**STIPULATED INSTRUCTION NO. 21 RE**

**CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.14 (2017).

**STIPULATED INSTRUCTION NO. 22 RE**

**CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.15 (2017).

**STIPULATED INSTRUCTION NO. 23 RE**

**EVIDENCE IN ELECTRONIC FORMAT**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the clerk.) If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the clerk, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

**Authorities:**

9th Cir. Civ. Jury Instr. 2.16 (2017).

**DISPUTED INSTRUCTION NO. 24 RE**

**EVIDENCE CONCEALMENT OR DESTRUCTION**

**OFFERED BY ABRAMOWITZ**

You may consider whether one party intentionally concealed or destroyed evidence. If you decide that a party did so, you may decide that the evidence would have been unfavorable to that party.

**Authorities:**

California Civil Jury Instructions ("CACI"), 204

**Argument:**

CACI makes clear that this instruction should be given when there is evidence of suppression, regardless of whether there has been a finding of spoliation. California Civil Jury Instructions ("CACI"), 204; *Ventura v. ABM Indus. Inc.*, 212 Cal. App. 4th 258, 273, 150 Cal. Rptr. 3d 861, 873 (2012) (finding no error in giving CACI 204 where there was only evidence that a party failed to interview relevant witnesses and redacted information from the investigation file and the court made no finding of spoliation). That is the case here. The jury will hear evidence that Palantir destroyed all Palantir visitor records that existed prior to 2018 and failed to preserve any paper NDAs *after* this litigation commenced. As Mr. Abramowitz's alleged NDA obligations to Palantir and his access to Palantir's offices are key facts for the jury, these documents—had they been preserved *after* the litigation was filed—would have been highly relevant. The jury should be instructed that can consider whether this destruction was intentional.

**DISPUTED INSTRUCTION NO. 24 RE**

**EVIDENCE CONCEALMENT OR DESTRUCTION**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz's suggestion that Palantir has engaged in intentional spoliation of evidence is baseless and without any evidence support in the record. Abramowitz has not filed a spoliation motion; nor has this Court ruled that any spoliation has occurred. Such an instruction therefore does not fit the facts of the case, including the Court's rulings, and thus is irrelevant. The Directions for Use for CACI 204, on which Disputed Instruction No. 24 is based, states that "This instruction should be given *only* if there is evidence of suppression." (Emphasis added). Here, there is none and this instruction is therefore irrelevant and improper. *See In re Estate of Moore* 180 Cal. 570, 585 (1919) (holding that jury instruction similar to CACI 204 constituted reversible error where "the record fail[ed] to disclose any instance of suppression of evidence or anything that could be properly construed as such withholding of facts."); *see also Ruderman v. Rolls Royce Motor Cars NA, LLC*, 2022 WL 3009464, at *3 (C.D. Cal. May 26, 2022) (declining to instruct jury using CACI 204 where plaintiff failed to meet standard supporting an adverse interest instruction regarding spoliation). Moreover, it would be highly confusing to the jury to include an instruction that is unsupported by the record and it should thus be excluded under Federal Rule of Evidence 403.

## FINAL INSTRUCTIONS

**STIPULATED INSTRUCTION NO. 25 RE**

**DUTY OF JURY**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.4 (2017)

**STIPULATED INSTRUCTION NO. 26 RE**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;
2. the exhibits that are admitted into evidence;
3. any facts to which the lawyers have agreed; and
4. any facts that I have instructed you to accept as proved.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.9 (2017)

**STIPULATED INSTRUCTION NO. 27 RE**

**WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.10 (2017)

## STIPULATED INSTRUCTION NO. 28 RE
## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Authorities:**

9th Cir. Civ. Jury Instr. 3.1 (2017)

**STIPULATED INSTRUCTION NO. 29 RE**

**CONSIDERATION OF THE EVIDENCE**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be

influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

**Authorities:**

9th Cir. Civ. Jury Instr. 3.2 (2020)

**STIPULATED INSTRUCTION NO. 30 RE**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal / bailiff, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

**Authorities:**

9th Cir. Civ. Jury Instr. 3.3 (2017)

**STIPULATED INSTRUCTION NO. 31 RE**

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk / bailiff that you are ready to return to the courtroom.

**Authorities:**

9th Cir. Civ. Jury Instr. 3.5 (2017)

**STIPULATED INSTRUCTION NO. 32 RE**

**CORPORATIONS – FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

**Authorities:**

9th Cir. Civ. Jury Instr. 4.1 (2017)

**DISPUTED INSTRUCTION NO. 33 RE**

**ACTIONS OF CORPORATIONS**

**OFFERED BY ABRAMOWITZ**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts or omissions of its employees, agents, directors, and officers performed within the scope of authority.

**Authorities:**

9th Cir. Civ. Jury Instr. 4.2 (2017)

**Argument:**

This instruction is appropriate and should be given to the jury. Palantir's actions and/or omissions in taking reasonable efforts to protect its alleged trade secrets cut to the core of Abramowitz's defense. For example, the jury will hear evidence that Lauren DeMeuse met with and supposedly disclosed Palantir trade secrets to Mr. Abramowitz without checking to see if there was a non-disclosure agreement in place. The jury should be instructed that Ms. DeMeuse's actions are attributable to Palantir because she was a Palantir employee. The instruction explains the black-letter law concept that the actions or omissions of Palantir's employees are the actions of Palantir. Without this instruction, the jury may incorrectly find that the actions of a Palantir employee are not attributable to Palantir. Such a conclusion would have no support in law.

**DISPUTED INSTRUCTION NO. 33 RE**

**ACTIONS OF CORPORATIONS**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Ninth Circuit Civil Jury Instruction No. 4.2, from which this jury instruction is drawn, is entitled "Liability of Corporations—Scope of Authority Not in Issue." It is intended for a specific situation in which the corporation does not deny that the acts or omissions of its employees, agents, directors, and/or officers at issue were performed within the scope of their authority. Here, Abramowitz explains that the employee/agent "acts or omissions" to which this instruction is directed are acts or omissions relating to protecting Palantir's trade secrets. But Palantir does not know at this time precisely what evidence Abramowitz will present regarding Palantir's employees' or agents supposed failure to protect Palantir's trade secrets. As such, this jury instruction—premised on the idea that whatever acts those are, they were performed within the scope of authority—is inappropriate. This is especially so because the term "scope of authority" is undefined in this jury instruction. Palantir's position is thus that this instruction should not be given. But if it is given, it should be given with the corresponding Ninth Circuit Civil Jury Instruction No. 4.5, which defines "scope of authority." Depending on the actions that Abramowitz is intending to reach with this jury instruction, a version of Ninth Circuit Civil Jury Instruction No. 4.12—"Principal Sued but Not Agent—Agency or Authority Denied"—may also be appropriate. At any rate, at the very least, this jury instruction should be located in the trade secrets section, close to the instruction regarding reasonable efforts to protect secrecy. Given how Abramowitz intends to use it, this jury instruction should not be presented as one of the primary, general jury instructions governing the case.

**DISPUTED INSTRUCTION NO. 34 RE**

**MISAPPROPRIATION OF TRADE SECRETS – INTRODUCTION**

**OFFERED BY PALANTIR**

Palantir claims that it is the owner of five confidential and valuable trade secret solutions in the fields of cyber security, cyber insurance, clinical drug trials, health insurance risk assessment, and natural resources exploration. I will refer to these alleged trade secrets collectively as the "Palantir Solutions." Palantir claims that each one of the Palantir Solutions is a trade secret and that Abramowitz misappropriated one or more of the Palantir Solutions. "Misappropriation" means the improper acquisition, use, or disclosure of the Palantir Solutions.

Palantir also claims that Abramowitz's misappropriation of the Palantir Solutions caused Palantir harm and/or that Abramowitz was unjustly enriched by his misappropriation of one or more of the Palantir Solutions. Abramowitz denies Palantir's claims and contends that none of the Palantir Solutions is trade secret information. Abramowitz also denies using the alleged trade secrets.

**Authorities:**

California Civ. Jury Instr. 4400 (2010)

**Argument:**

Abramowitz takes three issues with Palantir's instruction but none of them has merit.

*First*, Abramowitz takes issue with Palantir's claim that he has misappropriated five trade secret solutions. Instead, in an attempt to rewrite Palantir's allegations, Abramowitz asserts that there are actually "eighteen different trade secrets" at issue in this case. Palantir has repeatedly explained that this characterization is wrong—including during discovery, in expert reports, and on summary judgment—and, in accordance with the Court's instructions at the pretrial conference, listed five solutions as its trade secrets in pretrial materials. To repeat: Palantir alleges that Abramowitz has misappropriated five trade secret solutions. Each of those solutions constitutes a separate trade secret

under CUTSA. The components of each solution are outlined in Palantir's trade secret disclosure. (*See* Dkt. 79-6 ¶¶ 1-2, 4-7 (cyber security solution); ¶¶ 9-14, 16-17 (cyber insurance solution); ¶ 18 (clinical trials solution); ¶ 20 (health insurance risk assessment solution); ¶¶ 21-22 (natural resources solution).[1] Palantir is not seeking recovery as to each individual component as a separate trade secret.[2]

*Second*, Abramowitz argues that the Court should use the term "alleged trade secrets," as opposed to "Palantir Solutions," when referencing Palantir's alleged trade secrets. But CACI 4400 directs the Court to provide a "general description of the alleged trade secrets," and the term "Palantir Solutions" accurately describes what is at issue here. Palantir (like other software and data analytics companies) often refers to its offerings as "solutions," and courts have issued jury instructions describing other data analytics trade secrets as "solutions." *See Zest Labs, Inc. v. Walmart Inc.*, 4:18-cv-00500-JM (E.D. Ark.) (Dkt. 369 at Jury Instruction 8.1) (describing alleged trade secret at the "Zest Fresh Solution"). Abramowitz's assertion that the "term" solution implies some inherent value misses the point. Numerous terms describing types of trade secrets—*e.g.*, "source code" or "algorithms"—imply intrinsic value. But the use of such terms does not suggest that the alleged trade secrets are, in fact, trade secrets because a trade secret is something that derives value "***from not being generally known.***" Cal. Civ. Code § 3426(d)(1). Finally, contrary to Abramowitz's contention, the use of the term will not confuse the jury because some documents on the parties'

---

[1] As Palantir has made clear to Abramowitz during discovery, it is not proceeding on a claim that Abramowitz misappropriated trade secret information described in paragraphs 3, 8, 15, 19, 23.

[2] Abramowitz accuses Palantir of "gamesmanship" for purportedly "[l]isting the 'solutions' it is proceeding on at trial for the first time in argument to the revised jury instructions." Palantir is genuinely perplexed by this accusation. Not only did Palantir make clear that it is proceeding on five solutions at numerous points in this litigation—*e.g.,* in expert reports and summary judgement—it has listed the same five solutions in all versions of its jury instructions and verdict forms, and then reiterated its theory at the final pretrial conference.

exhibit lists (which may never be even shown to the jury) reference software as being included in other data analytics solutions.

*Third*, Abramowitz takes issue with the reference to "Palantir harm" because, he asserts, there is no evidence supporting actual damages. But reference to "harm" is in the model instruction, and the use of the term does not suggest that Palantir is entitled to actual damages.

**DISPUTED INSTRUCTION NO. 34 RE**

**MISAPPROPRIATION OF TRADE SECRETS – INTRODUCTION**

**OFFERED BY ABRAMOWITZ**

Palantir claims that it is the owner of a set of information regarding data collection and processing related to various industries. I will refer to this as the "alleged trade secrets." Palantir claims that there are eighteen alleged trade secrets at issue in this case. Palantir claims that the alleged trade secrets are, in fact, trade secrets and that Abramowitz misappropriated them. "Misappropriation" means the improper use of the trade secrets.

Palantir also claims that Abramowitz's misappropriation caused Palantir harm and/or Abramowitz to be unjustly enriched.

Abramowitz denies that the data collection information and processing consist of trade secrets. Abramowitz also denies using the alleged trade secrets.

**Authorities:**

California Civ. Jury Instr. 4400

**Argument:**

*First*, Palantir has alleged that Abramowitz stole eighteen different trade secrets. To succeed on this claim, Palantir must satisfy every CUTSA element with respect to at least one of those eighteen trade secrets. Palantir's proposed jury instruction—contrary to its assertion—does not limit the jury's analysis to five *trade secrets,* but five "solutions", which include (apparently) all of the "component" trade secrets still remaining in the case. Because CUTSA relates to the misappropriation of "trade secrets," not "solutions," Palantir's instruction invites error. Indeed, at the Final Pretrial Conference, the Court asked Palantir to file a document making clear which trade secrets it was proceeding on at trial. Dkt No. 405 at 43 ("So you need to list each trade secret, and if you want to prove to the jury that a particular component standing alone, as opposed to all of them

in combination, is a trade secret, you have to list it.”). It has not done so. Palantir must make clear exactly which *trade secrets* – not “solutions” -- from the operative trade secret disclosure are being offered at trial. As the Court made clear, Palantir “can have five categories, but then [Palantir] will have given up the individual trade secrets.” *Id*. Listing the “solutions” it is proceeding on at trial for the first time in argument to the revised jury instructions is inconsistent with Court’s comments at the final pretrial conference and is continued gamesmanship by Palantir. Palantir’s broad characterization of its trade secrets invites error in this analysis.

*Second*, Palantir’s use of “Palantir Solutions” implies that Palantir has satisfied the first element of CUTSA, which requires Palantir to show that it owns the information it contends are trade secrets. The use of the word “Solutions” further suggests that the alleged trade secrets alleged trade secrets actually work—i.e., that they “solve” something. The word also improperly suggests that the alleged trade secrets have value—yet another element that Palantir needs to prove. Indeed, Palantir admitted that this suggestion was its goal in prior versions of these instructions, when it wrote that using the neutral term “information” suggests “that there is no value to Palantir’s intellectual property,” meaning that it picked “Solution” because it suggested the opposite. All of that is contrary to the evidence (most of the alleged trade secrets have never have been used by any of Palantir’s paying customers) and will be disputed by Abramowitz in this case. Further, Palantir used the phrase “Solutions” to refer to various of its software products, none of which are at issue as trade secrets in this case, in promotional materials, some of which are now exhibits to this case. *E.g.*, DX0982. This competing use of the phrase “Solutions” will lead to confusion. Finally, Palantir’s claim that the term “solution” is descriptive fails for these same reasons. The terms “algorithm” or “source code,” for example, describe something specific of which most people will have a basic understanding. “Solution,” on the other hand, is promotional jargon created by Palantir, which does not describe what the alleged trade secrets are at all, *e.g.*, big data collection and processing software or platforms. For these reasons, Abramowitz submits that, throughout the jury instructions, the Court should use the phrase “alleged trade secrets,” or some other neutral phrase, consistent with Stipulated Instruction No. 2, instead of “Palantir Solutions.” To avoid undue repetition, though, Abramowitz will not

restate this position in each disputed instruction in which Palantir uses the phrase "Palantir Solutions."

*Third*, Palantir has pursued only two theories of misappropriation damages in this action: unjust enrichment and reasonable royalty. Dkt. 364; Expert Report of Nisha Mody (no calculation of actual damages in report). Suggesting to the jury that it can find a *third* category of damages, of which there is no evidence, invites error.

**DISPUTED INSTRUCTION NO. 35 RE**

**MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS**

**OFFERED BY PALANTIR**

Palantir claims that Abramowitz has misappropriated one or more of the five Palantir Solutions: the Palantir cyber security solution; the Palantir cyber insurance solution; the Palantir clinical trials solution; the Palantir health insurance risk assessment solution; and the Palantir natural resources solution. To succeed on this claim, Palantir must prove all of the following with respect to one or more of the Palantir Solutions:

1. That Palantir owned the Palantir Solution;
2. The Palantir Solution was a trade secret at the time of the misappropriation;
3. That Abramowitz improperly used or disclosed the Palantir Solution;
4. That Palantir was harmed by, or Abramowitz was unjustly enriched by, Abramowitz's improper use or disclosure of the Palantir Solution; and
5. That Abramowitz's improper use or disclosure was a substantial factor in causing Palantir's harm or Abramowitz to be unjustly enriched.

**Authorities:**

California Civ. Jury Instr. 4401 (2014)

**Argument:**

Palantir's Disputed Instruction No. 35 tracks the elements of CACI 4401. By contrast, **ABRAMOWITZ'S DISPUTED INSTRUCTION NO. 35 RE MISAPPROPRIATION OF TRADE SECRETS – INTRODUCTION** varies from CACI 4401 in several objectionable ways.

*First*, in paragraph 3, Abramowitz has again narrowed the type of misappropriation to only "use," and eliminated "disclosure." (Inconsistently, in paragraph 5, Abramowitz refers to both "use" and "disclosure").

*Second*, Abramowitz again uses the generic term "alleged trade secrets," instead of the preferable term "Palantir Solutions," to refer to the trade secrets that Palantir claims to own. *See* CACI 4400. Palantir follows CACI 4401 by "*describ[ing] each item claimed to be a trade secret that is subject to the misappropriation claim*," namely "the Palantir cyber security solution; the Palantir cyber insurance solution; the Palantir clinical trials solution; the Palantir health insurance risk assessment solution; and the Palantir natural resources solution." As described in connection with Disputed Instruction No. 34, Abramowitz's quibble that Palantir has "collapse[d] . . . eighteen different trade secrets into five broad categories that lack precision" is meritless. Palantir has alleged that Abramowitz has misappropriated ***five*** solutions, consisting of separate elements. Abramowitz may not rewrite Palantir's allegations to suit his own narrative.

Abramowitz's assertion that Palantir is "conflicting" its "trade secrets" with "solutions" is difficult to follow. As explained in the context of Disputed Instruction No. 34, the term "solution" describes the ***type*** of Palantir's trade secrets, just like the term "source code" might describe a type of software trade secret. Such descriptive terms are necessary under CACI 4400 and 4401 to explain what types of trade secrets are being alleged.

*Fourth*, the final sentence of Abramowitz's disputed instruction No. 35 does not appear in CACI 4401 and is both unnecessary and confusing to the jury, as it focuses solely on what Palantir must prove, and places undue emphasis on Palantir's burden, as opposed to what Abramowitz himself must prove as part of his affirmative defenses.

**DISPUTED INSTRUCTION NO. 35 RE**

**MISAPPROPRIATION OF TRADE SECRETS – ESSENTIAL FACTUAL ELEMENTS**

**OFFERED BY ABRAMOWITZ**

Palantir claims that Abramowitz has misappropriated its trade secrets. To succeed on this claim, Palantir must prove all of the following:

1. For each alleged trade secret, that Palantir owned the alleged trade secret;

2. For each alleged trade secret that Palantir owned, that the alleged trade secret was a trade secret at the time of the misappropriation;

3. For each alleged trade secret that was a trade secret under element 2, that Abramowitz improperly used the alleged trade secrets;

4. That Palantir was harmed or Abramowitz was unjustly enriched; and

5. That Abramowitz's use or disclosure under element 3 was a substantial factor in causing Palantir's harm or Abramowitz to be unjustly enriched.

I will explain what Palantir needs to show to establish each of these elements of its claim in other instructions.

**Authorities:**

California Civ. Jury Instr. 4401

**Argument:**

As set forth in Abramowitz's argument for Disputed Instruction No. 34, the Court should use "alleged trade secrets," or some other neutral term," instead of "Palantir Solutions." Additionally, as explained in Disputed Instruction No. 4 and No. 34, Palantir alleges that Abramowitz stole eighteen different trade secrets. Palantir cannot now collapse these eighteen trade secrets into five broad categories that lack precision. Palantir's proposed instruction only further exemplifies the issue with Palantir's conflation of its alleged trade secrets with its "solution." As read, Palantir's instruction

does not even require its solutions to be trade secrets as an element of the offense. Palantir must make clear exactly which trade secrets – not "solutions" -- from the operative trade secret disclosure are being offered at trial.

**DISPUTED INSTRUCTION NO. 36 RE**

**"TRADE SECRET" DEFINED**

**OFFERED BY PALANTIR**

To prove that a Palantir Solution was a trade secret, Palantir must prove all of the following as to that Solution:

1. That the Palantir Solution was secret at the time of Abramowitz's alleged misappropriation;

2. That the Palantir Solution had actual or potential independent economic value because it was secret at the time of Abramowitz's alleged misappropriation; and

3. That Palantir made reasonable efforts to keep the Palantir Solution secret at the time of Abramowitz's alleged misappropriation.

**Authorities:**

California Civ. Jury Instr. 4402 (2008)

**Argument:**

The parties are largely in agreement over this instruction. However, Palantir's version should be used because (i) it clarifies that Palantir need only prove that its trade secrets were trade secrets "at the time of Abramowitz's misappropriation," and (ii) it uses the term "Palantir Solutions," which is accurate and appropriate for the reasons discussed in the context of Palantir's Disputed Instruction No. 34.

**DISPUTED INSTRUCTION NO. 36 RE**

**"TRADE SECRET" DEFINED**

**OFFERED BY ABRAMOWITZ**

To prove that any of the alleged trade secrets was a trade secret, Palantir must prove, as to that particular trade secret, all of the following:

1. that it was secret;

2. that such alleged trade secret had actual or potential independent economic value because it was secret; and

3. that Palantir made reasonable efforts to keep such alleged trade secret actually secret.

**Authorities:**

California Civ. Jury Instr. 4402

**Argument:**

As set forth in Abramowitz's argument for Disputed Instruction No. 34, the Court should use "alleged trade secrets," or some other neutral term," instead of "Palantir Solutions." Moreover, Abramowitz's proposed instruction does not "add" to Palantir's burden as they suggest. Additionally, Palantir's proposal unnecessarily deviates from CACI 4402 and risks juror confusion as to the time of misappropriation.

**DISPUTED INSTRUCTION NO. 37 RE**

**SECRECY REQUIREMENT**

**OFFERED BY PALANTIR**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Palantir's use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

**Authorities:**

California Civ. Jury Instr. 4403 (2007)

**Argument:**

Palantir's Disputed Instruction No. 37 tracks the elements of CACI 4403 precisely and should be given as written. By contrast, **ABRAMOWITZ'S DISPUTED INSTRUCTION NO. 37 RE SECRECY REQUIREMENT** varies from CACI 4403 by adding the words "and required" to the following sentence: "It may be disclosed to employees involved in Palantir's use of the trade secret as long as they are instructed **and required** to keep the information secret." (Emphasis added). Abramowitz has thus added an extra element to CACI 4403 that the Judicial Council did not include when it defined the "secrecy requirement." Under the plain language of CACI 4403, it is sufficient that Palantir employees are <u>instructed</u> to keep the information secret. The addition of the words "and required" (which apparently was lifted from the title of CACI 4403, which is not part of the instruction to be read to the jury) is unnecessary and will confuse the jury, who will be left to speculate as to what "required" even means in this context – something that Abramowitz does not define. Abramowitz's citation to *DVD Copy Control Assn, Inc. v. Bunner*, 116 Cal. App. 4th 241,

251 (2004) is inapposite, as it is wholly unsupportive of his creative attempt to add a new element to CACI 4403. That case does not contain the words "and required" anywhere in defining the secrecy element (nor does CACI 4403). In fact, *DVD* merely states it is sufficient "that the owner has attempted to keep [the solution] secret." *Id.* at 251. In addition, the final sentence of 4403, which was approved by the Judicial Council, already states "However, it must not have been generally known to the public *or to people who could obtain value from knowing it*." (Emphasis added). Abramowitz has tacked onto the final sentence of CACI 4403 an additional and superfluous phrase, namely "such as experts in the trade or business." This addition is unnecessary; the final sentence of CACI 4403 is clear as it stands. Abramowitz's contention that "Without the clause ending this instruction, the jury could erroneously believe that a trade secret is not a secret only if it is generally known *to members of the public who could obtain value from knowing it*" is meritless, given the actual text of the final sentence of CACI 4403.

**DISPUTED INSTRUCTION NO. 37 RE**

**SECRECY REQUIREMENT**

**OFFERED BY ABRAMOWITZ**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in Palantir's use of the trade secret as long as they are instructed and required to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it, such as experts in the trade or business.

**Authorities:**

California Civ. Jury Instr. No. 4403; *DVD Copy Control Assn., Inc. v. Bunner* (2004) 116 Cal.App. 4th 241, 251 [10 Cal.Rptr.3d 185].

**Argument:**

This proposed instruction represents an accurate, precise statement of the law. A trade secret is not a secret if it is known to experts in the trade who could obtain value from it. Without the clause ending this instruction, the jury could erroneously believe that a trade secret is not a secret only if it is generally known to members of the public who could obtain value from knowing it. Abramowitz's instruction avoids juror confusion.

**DISPUTED INSTRUCTION NO. 38 RE**

**"INDEPENDENT ECONOMIC VALUE" EXPLAINED**

**OFFERED BY PALANTIR**

Each of the Palantir Solutions have independent economic value if they give Palantir an actual or potential business advantage over others who do not know the Palantir Solutions and who could obtain economic value from their disclosure or use.

In determining whether any of the Palantir Solutions had actual or potential independent economic value because they were secret, you may consider the following:

(a) The extent to which Palantir obtained or could obtain economic value from any of the Palantir Solutions in keeping them secret;

(b) The extent to which others could obtain economic value from any of the Palantir Solutions if they were not secret;

(c) The amount of time, money, or labor that Palantir expended in developing any of the Palantir Solutions; and

(d) The amount of time, money, or labor that was saved by a competitor who used any of the Palantir Solutions.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authorities:**

California Civ. Jury Instr. 4412 (2008)

**Argument:**

Palantir's proposal tracks the elements of CACI 4412 and should be given as written. By contrast, Abramowitz's proposed instruction significantly varies from CACI 4412. In subsection (b), Abramowitz has added language that appears nowhere in CACI 4412: "The extent to which the alleged trade secret is readily ascertainable through public sources or was not difficult to obtain."

That is one of Abramowitz's ***affirmative defenses*** under CACI 4420, as to which ***he*** bears the burden of proof. It is the subject of a separate jury instruction for that very reason. (*See* CACI 4420.) Abramowitz attempts to justify including his affirmative defense into this instruction based on language from *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*, 226 Cal. App. 4th 26, 62 (2014). But the language on which Abramowitz relies comes directly from a case quoted in *Altavion* called *Syngenta Crop Protection, Inc. v. Helliker,* 138 Cal. App. 4th 1135 (2006), which purported to summarize the statutory definition of a trade secret in California Civil Code 3426.1(d). That statutory definition of a trade secret does not, however, refer to whether information claimed to be a trade secret is "is readily ascertainable through public sources or was not difficult to obtain." *Sygenta* improperly conflated the definition of a trade secret in Section 3426.1(d) with the affirmative defense reflected in CACI 4420. Specifically, *Sygenta* incorrectly stated: "The focus of the first part of the statutory definition [of Civil Code 3426.1(d)] is on whether the information is generally known to *or readily ascertainable by business competitors or others to whom the information would have some economic value*." *Id.* at 1172 (italics added). The italicized language from *Sygenta,* which *Altavion* quoted, is a patently erroneous statement of Civil Code Section 3426.1(d). Accordingly, subsection (b) of Abramowitz's Disputed Instruction 38 is improper. Moreover, Abramowitz eliminated the concluding sentence of CACI 4412: "The presence or absence of any one or more of these factors is not necessarily determinative." The elimination of this sentence suggests that the presence or absence of any one or more of these factors ***is*** necessarily determinative, which is a misstatement of the law. Finally, Palantir objects to the two concluding paragraphs in Abramowitz's Instruction No. 38, which appear nowhere in CACI 4412.

Abramowitz also claims that Palantir has deviated from CACI 4412 by "dropping factors and adding factors that have no basis in law," however each of the factors included in Palantir's proposed instruction is present in the model instruction and vice versa.

**DISPUTED INSTRUCTION NO. 38 RE**

**"INDEPENDENT ECONOMIC VALUE" EXPLAINED**

**OFFERED BY ABRAMOWITZ**

Each alleged trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the alleged trade secret and who could obtain economic value from its disclosure or use.

In determining whether each of the alleged trade secrets had actual or potential independent economic value because they were secret, you may consider the following:

(a) The extent to which Palantir obtained or could obtain economic value from the alleged trade secret by keeping it secret;

(b) The extent to which the alleged trade secret is readily ascertainable through public sources or was not difficult to obtain;

(c) The extent to which others could obtain economic value from the alleged trade secret if it was not secret;

(d) The amount of time, money, or labor that Palantir expended in developing the alleged trade secret;

(e) The amount of time, money, or labor that would be saved by a competitor who used the alleged trade secret;

(f) Merely stating that an alleged trade secret was helpful or useful to another person in carrying out a specific activity, or that an alleged trade secret of that type may save someone time, however, does not compel the conclusion that the particular alleged trade secret at issue was sufficiently valuable to afford an economic advantage over others. You are entitled to expect evidence from which you can form some solid sense of how useful the alleged trade secrets are, e.g., how much time, money, or labor they would save, or at least that these savings would be more than trivial;

In determining this economic value, keep in mind that it is not the value of the alleged trade secrets in isolation that must be considered, but value that arises from the secrecy of those alleged trade secrets.

**Authorities:**

California Civ. Jury Instr. No. 4412; Rest.3d, Unfair Competition, § 39, com.e., *Yield Dynamics, Inc., v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 564-565 [66 Cal.Rptr.3d.1]

**Argument:**

As set forth in Abramowitz's argument for Disputed Instruction No. 34, the Court should use "alleged trade secrets," or some other neutral term," instead of "Palantir Solutions." Additionally, this proposed instruction represents an accurate statement of the law. CACI 4412 invites the Court to "[i]nsert other applicable factors." Each factor listed above provides useful guidance to the jury. Factor (b), for example, comes from a case cited in the comments of CACI 4412 stating that "the focus of the inquiry regarding the independent economic value element is on whether the information is generally known to or readily ascertainable by business competitors or others to whom the information would have some economic value. Information that is readily ascertainable by a business competitor derives no independent economic value from not being generally known." *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.*, 226 Cal.App.4th 26, 62 (2014). The Court should not entertain Palantir's counterargument that multiple California Appellate courts do not know California law. Several of the factors in Palantir's proposed instruction, by contrast, deviate from the CACI instruction—both by dropping factors and adding factors that have no basis in law.

**DISPUTED INSTRUCTION NO. 39 RE**

**REASONABLE EFFORTS TO PROTECT SECRECY**

**OFFERED BY PALANTIR**

To establish that one or more of the Palantir Solutions are trade secrets, Palantir must prove that it made reasonable efforts under the circumstances to keep them secret. "Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Palantir, exercising due care to protect important information of the same kind.

To be clear, the test is not whether Palantir has complied with "industry norms," "industry standards," or "industry best practices" when taking measures to protect its trade secret information. Rather, the test is whether Palantir's protection efforts were reasonable under the circumstances. Palantir's efforts could be reasonable, even if they fall short of industry norms or best practices.

This requirement applies separately to each one of the Palantir Solutions that Palantir claims to be a trade secret.

In determining whether or not Palantir made reasonable efforts to keep the Palantir Solutions secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

a. Whether Palantir and its employees treated the Palantir Solutions as confidential;

b. Whether Palantir restricted access to the Palantir Solutions to persons who had a business reason to know the information;

c. Whether Palantir restricted physical access to its offices or places where the Palantir Solutions were kept;

d. Whether Palantir required employees or others with access to the Palantir Solutions to sign confidentiality or nondisclosure agreements;

e. Whether Palantir required employees or others with access to the Palantir Solutions to orally agree to keep them confidential;

f. Whether Palantir implemented policies designed to protect the secrecy of the Palantir Solutions;

g. The extent to which any general measures taken by Palantir would prevent the unauthorized disclosure of the Palantir Solutions;

h. Whether Palantir conducted legal trainings for its employees covering confidentiality and data security;

i. Whether the persons to whom Palantir disclosed the Palantir Solutions had an implied relationship of confidentiality with Palantir;

j. Whether the persons to whom Palantir disclosed the Palantir Solutions owed fiduciary duties to Palantir to keep them confidential.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Authorities:**

California Civ. Jury Instr. 4404 (2007); July 26, 2022 Order Denying Abramowitz's Motion for Summary Judgment at 8 (Dkt. 339); *see MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521-22 (9th Cir. 1993) (finding "reasonable efforts" requirement satisfied due to general confidentiality agreements); *see also Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420571, at *6 (C.D. Cal. Aug. 4, 2011) (explaining that, under Ninth Circuit precedent, "general representations" of confidentiality not targeted toward any specific trade secret are sufficient); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007) (discussing agent's duty "not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party"); *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1070 (9th Cir. 2016) ("[A] confidential relationship may reasonably be implied" where "the facts show that a disclosure is made in order to further a particular relationship."); *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011) ("The existence of a trade secret is not negated merely because an employee or other person has acquired the trade secret without express or specific notice that it is a trade secret if, under all the circumstances, the employee or other person knows or has reason to know that the owner intends or expects the secrecy . . . to be maintained."); *Wyeth v. Natural Biologics, Inc.,* 395 F.3d 897, 899–900 (8th Cir.2005) (holding that plaintiff took reasonable efforts to protect secrecy by limiting access

to confidential information, training employees, controlling documents, and obtaining oral and written understandings of confidentiality).

**Argument:**

Palantir's Disputed Instruction No. 39 largely tracks the elements of CACI 4404 and should be given as written. The authorities cited by Palantir under Disputed Instruction No. 39 support Palantir's instruction. By contrast, Abramowitz's proposal varies from CACI 4404 materially. Subsection (c) of CACI 4404 states that a factor to consider is "Whether [Palantir] restricted access to the [Palantir Solutions] to persons who had a *business reason to know the information*." (Emphasis added). Abramowitz materially changed subsection (c) to state "Whether Palantir restricted access to the alleged trade secrets to persons who had a *legal obligation to maintain the secrecy* of the alleged trade secrets." (Emphasis added.) A disclosure to someone who had a "business reason to know the information"—the language of CACI 4404(c)—states a materially different factor than a disclosure to someone who had a "*legal obligation to maintain the secrecy*" of the information, which is something Abramowitz has made up. Moreover, subsection (b) of CACI 4404 states that a factor to consider is whether the plaintiff merely "instructed" its employees to treat the information as confidential, not whether the plaintiff "legally obligated" its employees to treat the information as confidential. In subsection (i), Abramowitz added the following statement that does not exist in CACI 4404: "Whether Palantir at any point ceased to take reasonable measures to maintain the secrecy of the alleged trade secrets." This statement does not differentiate among any of the "alleged trade secrets" (again, "Palantir Solutions" is more appropriate under CACI), is vague as to time, and misleadingly suggests that the failure to protect the secrecy at any unspecified time of ***any one*** of the "alleged trade secrets" is fatal to Palantir's ***entire case***, which is certainly not the law, and is highly likely to confuse and mislead the jury. Moreover, the concluding paragraph of Abramowitz's Disputed Instruction 39 appears nowhere in CACI 4404 and misstates the law by stating that if Palantir did not restrict access to persons who had an "obligation" to maintain secrecy ("instructing"

them, as stated in CACI 4404(b), is sufficient), then Palantir should lose. Finally, Abramowitz inexplicably eliminated the concluding sentence of CACI 4404, namely: "*The presence or absence of any one or more of these factors is not necessarily determinative.*" (Emphasis is added). By eliminating this critical sentence, Abramowitz misleadingly suggest that if ***any one*** of the examples of reasonable efforts to protect secrecy is absent, then Palantir should lose the entire case.

Abramowitz also takes issue with the second paragraph of Palantir's instruction. But at the hearing on Palantir's *Daubert* Motion, the Court expressly stated that it will give a limiting instruction making clear that the jury ***does not*** need to find that Palantir has acted in accordance with industry norms, standards, or best practices. Palantir's proposal does precisely that.

**DISPUTED INSTRUCTION NO. 39 RE**

**REASONABLE EFFORTS TO PROTECT SECRECY**

**OFFERED BY ABRAMOWITZ**

To establish that the alleged trade secrets are trade secrets, Palantir must prove that it made reasonable efforts under the circumstances to keep each alleged trade secret secret.

"Reasonable efforts" are the efforts that would be made by a reasonable business in the same situation and having the same knowledge and resources as Palantir, exercising due care to protect important information of the same kind. This requirement applies separately to each item that Palantir claims to be a trade secret.

In determining whether or not Palantir made reasonable efforts to keep the alleged trade secrets secret, you should consider all of the facts and circumstances. Among the factors you may consider are the following:

(a) Whether documents or computer files containing the alleged trade secrets were marked with confidentiality warnings;

(b) Whether Palantir instructed its employees to treat the alleged trade secrets as confidential;

(c) Whether Palantir restricted access to the alleged trade secrets to persons who had a legal obligation to maintain the secrecy of the alleged trade secrets;

(d) Whether Palantir kept the alleged trade secrets in a restricted or secured area;

(e) Whether Palantir required employees or others with access to the alleged trade secrets to sign confidentiality or nondisclosure agreements;

(f) Whether Palantir took any action to protect the alleged trade secrets or whether it relied on general measures taken to protect its business information or assets;

(g) The extent to which any general measures taken by Palantir would prevent the unauthorized disclosure of the alleged trade secrets;

(h) Whether there were other reasonable measures available to Palantir that it did not take; and

(i) Whether Palantir at any point ceased to take reasonable measures to maintain the secrecy of the alleged trade secrets.

If you find that (a) Palantir did not restrict access to the alleged trade secrets to persons who had an obligation to maintain the secrecy of the alleged trade secrets or that (b) Palantir ceased to take reasonable measures to maintain the secrecy of the alleged trade secrets, you must find that Palantir's alleged trade secrets are not trade secrets

**Authorities:**

California Civ. Jury Instr. No. 4404; *Hirel Connectors, Inc. v. United States*, 2005 U.S. Dist. LEXIS, 44170 at *14 (C.D. Cal. Jan. 4, 2005).

**Argument:**

As set forth in Abramowitz's argument for Disputed Instruction No. 34, the Court should use "alleged trade secrets," or some other neutral term," instead of "Palantir Solutions." Additionally, this instruction is largely copied from CACI 4404. Per CACI 4404, it specifies factor (i) as an additional consideration to clarify that the duty to take reasonable measures persists over the entire time period that trade secret status is claimed, which is an accurate statement of the law. It alters factor (c) to more precisely represent the law. And it clarifies that certain of the factors could be determinative. The second paragraph of Palantir's proposed instruction (beginning with "To be clear") is also objectionable because it is found nowhere in CACI and goes well beyond the potential limiting instruction the Court suggested may be appropriate at argument on the parties' *Daubert* motions.

**DISPUTED INSTRUCTION NO. 40 RE**

**"AGENCY" DEFINED**

**OFFERED BY PALANTIR**

An agent is a person who performs services for another person under an express or implied agreement, who is subject to the other's control or right to control the manner and means of performing the services, and who manifests assent or otherwise consents so to act. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written. Palantir claims that Abramowitz was Palantir's agent. If Palantir proves that it gave Abramowitz authority to act on its behalf, and Abramowitz manifested assent or otherwise consented so to act, then Abramowitz was Palantir's agent.

**Authorities:**

9th Cir. Civ. Jury Instr. 4.4 (2017); California Civ. Jury Instr. 3705.

**Argument:**

The parties are largely in agreement with respect to the wording of this instruction. However, the last two sentences of Abramowitz's instruction represent a misstatement of the law. As to the first sentence—"A shareholder of a company is not a fiduciary or agent of the company based solely on the status or actions taken as a shareholder of the company"—Abramowitz fails to support it with any authority. Indeed, even an action a shareholder takes could be taken in a fiduciary capacity if the requirements described in Palantir's proposed instruction are satisfied. This sentence is also irrelevant and confusing because Palantir is not arguing that Abramowitz's status as shareholder creates an agency relationship or fiduciary duty. Abramowitz does not explain why this bespoke addition to the model language is necessary under the circumstances of this action.

As to the last sentence—"Further, if you find that Palantir was aware that Abramowitz was acting for his own purposes or those of a third party, then Abramowitz is not Palantir's agent"—that sentence comes from the Ninth Circuit's Manual of Model Civil Jury Instructions, Instruction 4.13

("Adverse Interest Exception"), and it is inappropriate in this lawsuit. Instruction 4.13 is an instruction on adverse interest intended for use in a narrow factual circumstance not present here. It concerns the liability of a principal *to a third party* for the actions of an agent who has gone rogue; it does not concern the *existence* of an agency relationship, which is the relevant issue for the jury to determine here. The Comment to Instruction 4.13 makes the point clearly that the last sentence of Instruction 4.13 should not be given to the jury, as Abramowitz erroneously proposes: "The adverse interest exception is narrow and generally requires an agent to completely abandon the principal's interests and act entirely for his own purposes." *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1144-45 (N.D. Cal. 2013) (cleaned up). In response, Abramowitz suggests that this sentence is necessary to make clear that there can be no agency relationship if Abramowitz was acting for his own interests, ***even if*** his actions were taken pursuant to an agency agreement, within the scope of Abramowitz's agency relationship, and benefited Palantir. Abramowitz cites no support for this proposition. Indeed, an agent does not cease to be an agent simply by taking actions that also result in advancing his own interests (as well as those of the principal). Additionally, Abramowitz adds "if you find that Palantir was aware" to the beginning of the instruction, a deviation from Instruction 4.13, without providing any citation to authority to justify that change.

**DISPUTED INSTRUCTION NO. 40 RE**

**"AGENCY" DEFINED**

**OFFERED BY ABRAMOWITZ**

An agent is a person who performs services for another person under an express or implied agreement, who is subject to the other's control or right to control the manner and means of performing the services within the scope of that agreement, and who manifests assent or otherwise consents so to act. The other person is called a principal. One may be an agent without receiving compensation for services. The agency agreement may be oral or written. A shareholder of a company is not a fiduciary or agent of the company based solely on the status or actions taken as a shareholder of the company. Further, if you find that Palantir was aware that Abramowitz was acting for his own purposes or those of a third party, then Abramowitz is not Palantir's agent.

**Authorities:**

9th Cir. Civ. Jury Instr. 4.4, 4.13 (2017); California Civ. Jury Instr. 3705; Restatement (Third) Of Agency § 1.01 (2006); *Rental Hous. Owners Assn. of S. Alameda Cnty., Inc. v. City of Hayward*, 200 Cal. App. 4th 81, 91, 133 Cal. Rptr. 3d 155, 162–63 (2011).

**Argument:**

Palantir's instruction is incomplete, contrary to law, and would only confuse and mislead the jury. For example, a key part of Abramowitz's argument that there was no agency relationship is that he was solely acting for his own interests and not at Palantir's direction—although his actions may have also *benefitted* Palantir, that is true in almost every commercial relationship and it does not turn all counterparties into each other's "agents." Palantir has no language that captures this critical defense. Palantir cites the *Cement & Concrete Workers* case for the proposition that the adverse interest exception is narrow. Palantir's reliance on this authority is baseless as it presumes the existence of an agency relationship. This is disputed outright by Abramowitz since Palantir knew from the

beginning that Abramowitz had his own interests. Moreover, even if Abramowitz was Palantir's agent as to some matters, there is no requirement in Palantir's instruction that Abramowitz was acting within the scope of that agency relationship, as opposed to for his own purposes. Indeed, Palantir recognized the import of such clarification in its Fifth Amended Complaint in which it expressly included allegations that there was a mutual understanding between the parties that Abramowitz was acting for the "sole benefit" of Palantir. Dkt. No. 126 at ¶33. Abramowitz's instruction remedies that issue.  Finally, the last two sentences of Palantir's instruction are not found in the models and are therefore inappropriate.

**DISPUTED INSTRUCTION NO. 41 RE**

**"FIDUCIARY DUTY" EXPLAINED**

**OFFERED BY PALANTIR**

An agent owes what is known as a fiduciary duty to his principal. A fiduciary duty imposes on an agent a duty to act with the utmost good faith in the best interests of his principal.

Because an agent is classified by the law as a fiduciary and holds a confidential relationship to his principal, agents have an inherent duty not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party.

Palantir claims that Abramowitz owed Palantir a fiduciary duty of confidentiality. To establish that a fiduciary duty of confidentiality exists, Palantir must prove:

1. That Abramowitz was Palantir's agent.
2. That Abramowitz had information relating to Palantir that he knew or should have known was confidential.

**Authorities:**

California Civ. Jury Instr. 4100 & 4103 (2016); *Gerhardt v. Weiss* 247 Cal. App. 2d 114, 116 (1966); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007).

**Argument:**

Palantir's Disputed Instruction No. 41 is critical to its theory of the case. As explained in Palantir's opposition to Abramowitz's motion for summary judgment, it reasonably protected its trade secrets because (among many other things) Abramowitz had a fiduciary duty to maintain the confidentiality of those trade secrets as Palantir's agent. This instruction clarifies that agents owe certain fiduciary duties to their principal and may not misuse the principals' confidential information. Abramowitz contends that this instruction is unnecessary in light of the instruction on agency and on "reasonable efforts." However, the agency instruction concerns the "existence" of an agency relationship not what such a relationship means with respect to the duties owed by an agent to its principal. Further, the "reasonable efforts" instruction does not define a fiduciary relationship or

explain that an agent owes duties to its principal, and Abramowitz's proposed "reasonable efforts" instruction neglects to mention a fiduciary relationship at all. Moreover, Palantir's proposed instruction, contrary to Abramowitz's claim, is an accurate statement of the law regarding fiduciary duties owed by agents. The first paragraph of the instruction mirrors CACI 4100 to the letter. The second paragraph accurately reflects California law with respect to the duties owed by an agent. *Gerhardt v. Weiss* 247 Cal. App. 2d 114, 116 (1966) ("An agent is classified by the law as a fiduciary and holds a confidential relationship to his principal."); *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 416 (2007) (agent owes "duty not to use or communicate confidential information of the principal for the agent's own purposes or those of a third party"). And the third paragraph sets forth the requisite elements from CACI 4103 to find that a fiduciary duty of confidentiality exists. Abramowitz faults Palantir for failing to include the remaining elements of CACI 4103, however those elements do not apply here as Palantir is not asserting a claim for *breach* of the duty of confidentiality and therefore the elements of CACI 4103 pertaining to breach, causation, and damages are inapposite and should not be included. Palantir's proposed instruction is an accurate statement of the applicable law and should be given. Abramowitz also claims that Palantir's instruction does not give guidance as to the "scope" of his fiduciary duties, but it clearly provides that those duties attach only to actions taken within the scope of the agency relationship.

**DISPUTED INSTRUCTION NO. 41 RE**

**"FIDUCIARY DUTY" EXPLAINED**

**OFFERED BY ABRAMOWITZ**

Abramowitz contends no such instruction is necessary in light of the instruction on agency and on "reasonable efforts." Moreover, Palantir's instruction is incomplete and misstates the law. First, the existence of a fiduciary relationship is disputed here, and Palantir's instruction provides no guidance on what the jury must find in order to conclude what the jury must find in order to conclude that a fiduciary relationship exists or not. For example, Palantir's instruction fails to indicate the circumstances in which a fiduciary relationship does not exist—i.e., in nearly all commercial settings. Nor does it indicate that Abramowitz may reject the imposition of fiduciary duties merely by saying so. Second, Palantir's proposed instruction deviates from the CACI instruction by adding language about a "confidential relationship" between a fiduciary and a beneficiary. That language is not in CACI, and there is no basis for it. Third, as drafted, Palantir's instruction is hopelessly vague about what the existence of "confidential relationship" actual requires of the fiduciary. There is a CACI instruction that goes to those issues—California Civ. Jury Instr. 4103—but Palantir has simply ignored its requirements, which include proof that the fiduciary knew or should have known that the information was confidential, that the information was used for the fiduciary's benefit, that the beneficiary did not consent to the fiduciary's conduct, that the information was not a matter of general knowledge, and that the beneficiary was harmed. These missing elements go to the heart of Abramowitz's defense of this case and leaving them out would be severely prejudicial to Abramowitz. But, on the other hand, adding those elements would only multiply the number of jury instructions on this tangential issue and would only confuse the jury as to what it needed to find. Fourth, Palantir's instruction gives the jury no guidance as to the *scope* of the supposed duties and how to determine whether Abramowitz was acting with that scope.

**DISPUTED INSTRUCTION NO. 42 RE**

**MISAPPROPRIATION BY DISCLOSURE**

**OFFERED BY PALANTIR**

Abramowitz misappropriated Palantir's trade secrets by disclosure if he:

1. Disclosed them without Palantir's consent; and

2. At the time of disclosure, knew or had reason to know that his knowledge of Palantir's trade secrets was acquired under circumstances that created a duty to keep the Palantir Solutions secret.

**Authorities:**

California Civ. Jury Instr. 4406 (2010).

**Argument:**

Abramowitz contends that this instruction should not be given but provides no authority or rationale for rejecting an instruction that is both based on a model instruction and applicable to Palantir's claims. Abramowitz states only that the Court should use the term "alleged trade secrets," as opposed to "Palantir Solutions," to describe Palantir's trade secrets. As is explained in the context of Disputed Instruction No. 34, this contention is meritless.

**DISPUTED INSTRUCTION NO. 42 RE**

**MISAPPROPRIATION BY DISCLOSURE**

**OFFERED BY ABRAMOWITZ**

Abramowitz contends that no such instruction should be given.

**Argument:**

As set forth in Abramowitz's argument for Disputed Instruction No. 34, Palantir's instruction is misleading and flawed at least because of its use of "Palantir's Solution" instead of "alleged trade secrets" or some other neutral term.

**DISPUTED INSTRUCTION NO. 43 RE**

**MISAPPROPRIATION BY USE**

**OFFERED BY PALANTIR**

Abramowitz misappropriated Palantir's trade secrets by use if he:

1. used them without Palantir's consent; and

2. at the time of use, knew or had reason to know that his knowledge of Palantir's trade secrets was acquired under circumstances creating a legal obligation to limit use of the Palantir Solutions.

Proof that trade secrets have been "used" can come in various forms. An actor is liable for using a trade secret with independently created improvements or modifications if the result is substantially derived from the trade secret. Misappropriation by use can be established by evidence that a defendant made use of the trade secrets by substantially deriving his own claimed inventions from the trade secrets. Similarly, a defendant has misappropriated a trade secret by use if he has used the trade secret to create patents therefrom.

**Authorities:**

California Civ. Jury Instr. 4407 (2010); July 26, 2022 Order Denying Abramowitz's Motion for Summary Judgment (Dkt. 339); *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 2018 WL 452111, at *5 (N.D. Cal. Jan. 17, 2018) ("[A]n actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secrets."); *Altavion Inc. v. Konica Minolta Systems Laboratory, Inc.*, 226 Cal. App. 4th 26, 49 & n. 13 (2014) ("[E]ven if the patents did not ultimately disclose [the trade secrets] in all of [their] particulars . . . misappropriation [can] be established by the evidence that [the defendant] ***made use of*** [the trade secrets] in developing [his] own . . . patents."); *Bohnsack v. Varco L.P.*, 668 F. 3d 262, 280 (5th Cir. 2012) (defendant's act of "filing a patent application" reflecting plaintiff's trade secret "constituted a 'use' in this case.").

**Argument:**

Both parties rely on the same model instruction. Palantir adds to that model instruction the explanation that substantially deriving something from a trade secret constitutes "use" of that trade secret, consistent with the case law set forth above. *See, e.g.*, *BladeRoom*, 2018 WL 452111, at *5 ("[A]n actor is liable for using the trade secret with independently created improvements or modifications if the result is substantially derived from the trade secrets.") Palantir's addition is also consistent with this Court's Order Denying Abramowitz's Motion for Summary Judgment, in which this Court found "genuine disputes of material fact regarding whether Abramowitz misappropriated Palantir's trade secrets," because "Palantir's experts have opined that Abramowitz's patent applications were based on or derived from Palantir's trade secrets." Dkt. 339 at 9-10. Palantir believes that it will be helpful to the jury to more fully understand the meaning of "use"—and in particular its relationship to substantial derivation—in the context of trade secret misappropriation.

In response to Palantir's additional paragraph, Abramowitz submits his own additional paragraph purporting to further describe the law regarding what constitutes "use." But Abramowitz cites no legal authority for his additional paragraph, and it is incorrect. For example, Abramowitz's proposal states that "[a]n actor has not used a trade secret if he filed patent applications solely based on information that did not include specific trade secrets at issue." Not so. If the information Abramowitz used was ***substantially derived*** from Palantir's trade secrets, he is subject to liability, under the case law cited above, even if his "derivative" inventions "did not include the specific trade secrets at issue."

Abramowitz's proposed instruction also states that "[t]here is not sufficient evidence that an actor has 'used' a trade secret if he merely filed a patent application relating to the same subject matter as the alleged trade secret." But Abramowitz cannot escape liability by filing patent applications that "merely" relate to the same subject matter as Palantir's trade secrets, if he used Palantir's trade secrets in the process.

**DISPUTED INSTRUCTION NO. 43 RE**

**MISAPPROPRIATION BY USE**

**OFFERED BY ABRAMOWITZ**

Abramowitz misappropriated Palantir's trade secrets by use if he:

1. Used them without Palantir's consent; and

2. At the time of use, knew or had reason to know that his knowledge of Palantir's trade secrets was acquired under circumstances creating a legal obligation to limit his use of Palantir's alleged trade secrets.

An actor has not used a trade secret if he filed patent applications based solely on information that did not include specific trade secrets at issue, such as ideas that the actor or other third parties independently developed or that were publicly available. Similarly, an actor has not "used" a trade secret if he merely filed a patent application relating to the same subject matter as the alleged trade secret.

**Authorities:**

California Civ. Jury Instr. 4407

**Argument:**

The final paragraph of Palantir's instruction is not found in California Civ. Jury Instr. 4407 and there is no basis for it. The CACI instruction is sufficient and there is no reason to deviate from it. Palantir's new paragraph does nothing more that characterize the evidence in a way that it views as favorable. If the Court is inclined to add additional language beyond that CACI instruction, it should also include additional language along the lines of Abramowitz's final paragraph. Finally, the last sentence in Palantir's instructions is vague, incomplete, and a misstatement of the law. The filing of a patent application by a defendant that reflects trade secrets does mean that

misappropriation has necessarily occurred. A defendant may have, for example, independently derived at the subject matter of the patent. Palantir's oversimplified instruction to the contrary invites error.

**DISPUTED INSTRUCTION NO. 44 RE**

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

**OFFERED BY ABRAMOWITZ**

Improper means of acquiring a trade secret or knowledge of a trade secret include breach of a duty to maintain secrecy or inducing the breach of a duty to maintain secrecy.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1. Independent efforts to invent or discover the information;
2. Observing the information in public use or on public display; or
3. Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

**Authorities:**

California Civ. Jury Instr. 4408

**Argument:**

This instruction follows the CACI instruction to the letter. There is no basis for not including it. Abramowitz contends that his patent applications reflect significant independent efforts to invent or discover the content of those applications, including by researching a variety of publicly available sources, particularly since Palantir included "improper acquisition" as one of the theories of misappropriation identified in "Instruction No. 2." Moreover, the instruction is relevant to Abramowitz's defense, as he does not concede—contrary to Palantir's argument—that he received the alleged trade secrets under a duty of maintain secrecy. Without this instruction, the jury will not understand that Abramowitz acquiring the information at issue via the means listed in the CACI model—nor will it understand how favorable that is to Abramowitz. Palantir argues this instruction is unnecessary because it has no objection to removing "improper means" from instruction no. 2.

Rewording that instruction, however, does nothing to dilute the relevance of this instruction to the defenses and theories Abramowitz intends to present at trial. Not including this standard instruction would severely prejudice Abramowitz's defense.

**DISPUTED INSTRUCTION NO. 44 RE**

**IMPROPER MEANS OF ACQUIRING TRADE SECRET**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz's proposed jury instruction sets forth defenses to a theory of misappropriation that Palantir is not offering at trial, thereby threatening to seriously prejudice Palantir and confuse the jury. Under Civil Code § 3426.1(b), "misappropriation" can consist of three types of actions: (1) "acquisition of a trade secret . . . by improper means"; (2) "disclosure . . . of a trade secret"; or (3) "use of a trade secret." Palantir's theory of misappropriation ***does not rely*** on the first type of action described in § 3426.1(b)(1) or § 3426.1(b)(2)(A*)—i.e.*, improper acquisition—which the model instruction Abramowitz cites addresses. There is thus no need to define "improper means" for the jury. Abramowitz seeks to invent a new claim that Palantir has never alleged to proffer instructions that help his defense to claims that Palantir ***has*** alleged. This is improper. Other instructions included in this joint set expressly address Palantir's existing claims and Abramowitz's defenses. There can be no justification for making up new claims and new instructions here.

Abramowitz also points to the inclusion of "improper means" in Instruction No. 2. But that instruction does not set forth Palantir's misappropriation theories but only defines what "misappropriation" means under CUTSA. Regardless, Palantir has no objection to deleting "improper means" from Instruction No. 2.

**DISPUTED INSTRUCTION NO. 45 RE**

**INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

**OFFERED BY ABRAMOWITZ**

Abramowitz also did not misappropriate Palantir's trade secrets if Abramowitz proves that each alleged trade secret was readily ascertainable by proper means at the time of the alleged acquisition and use.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

**Authorities:**

California Civ. Jury Instr. 4420

**Argument:**

This instruction follows the CACI instruction to the letter and should be given. Palantir's argument to the contrary distorts the record. During a meet and confer call, counsel for Abramowitz confirmed that the referenced interrogatory response recited the facts that were "available right now." That call occurred on March 1, 2022—before expert disclosures were served. And the interrogatory response to which Palantir referred stated that the "information required to respond . . . [was] subject to expert testimony." After that date, Mr. Abramowitz served his technical expert reports, which includes opinions that he may use to argue that the alleged trade secrets were readily ascertainable.

**DISPUTED INSTRUCTION NO. 45 RE**

**INFORMATION WAS READILY ASCERTAINABLE BY PROPER MEANS**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz has elected not to pursue this affirmative defense in this action. As a "Third Defense" in his Answer, Abramowitz asserted that Palantir's trade secret information "is readily ascertainable by proper means and/or was independently developed by Defendant." (Dkt. 203 at 10.) Toward the end of fact discovery, Palantir served a contention interrogatory asking Abramowitz to "identify and describe all facts supporting [his] 'Third Defense' set forth in [his] Answer." Abramowitz included ***no facts whatsoever*** supporting his contention that Palantir's trade secret information "is readily ascertainable by proper means." Instead, during the parties' meet-and-confer conference, Abramowitz made clear that he would argue only that Palantir's trade secrets were purportedly "independently developed" by him—and not that they were readily ascertainable by proper means. Because Abramowitz expressly disavowed his "readily ascertainable" defense, this instruction is improper.

In his response, Abramowitz misrepresents the parties' meet-and-confer discussions to suggest that he did not disavow his "reasonably ascertainable" defense and instead claimed that additional information on that defense would be provided in expert discovery. Not only is this suggestion false, Abramowitz did not provide any information whatsoever in expert discovery regarding this purported defense. Indeed, ***none*** of Abramowitz's experts offer ***any opinions at all*** pertaining to this "defense." The Court should not countenance such gamesmanship.

**STIPULATED INSTRUCTION NO. 46 RE**

**CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

**Authorities:**

California Civ. Jury Instr. 430 (2020).

**DISPUTED INSTRUCTION NO. 47 RE**

**REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET**

**OFFERED BY PALANTIR**

If Palantir proves that Abramowitz misappropriated its trade secrets, then Palantir is entitled to recover damages if the misappropriation caused Palantir to suffer an actual loss or Abramowitz to be unjustly enriched.

If you determine that the full amount of Palantir's actual damages or Abramowitz's unjust enrichment is not provable, Palantir may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.

**Authorities:**

California Civ. Jury Instr. 4409 (2007); *see De Lage Landen Operational Services, LLC v. Third Pillar Systems, LLC*, 2011 WL 1627899, *2 (E.D. Pa. 2011) ("Although the Seventh Amendment is not binding on the states, it is binding on the federal courts even in diversity cases since the use of a jury is not deemed to be an application of substantive state law."); *see also Wright & Miller*, 9 Fed. Prac. & Proc. Civ. § 2303 (4th ed.) ("[F]ederal law determines whether there is a jury trial right in a case involving state law that has been brought in federal court, and [] state law on the subject is wholly irrelevant.").

**Argument:**

The parties' dispute over this instruction—as well subsequent instructions concerning Palantir's reasonable royalties theory of damages—centers on whether the issue of reasonable royalty should be bifurcated and decided during a second phase of trial. Palantir respectfully submits that no bifurcation should be ordered for three independent reasons.

*First*, bifurcation of the reasonable royalty issue is unduly prejudicial to Palantir and will cause jury confusion. Under California law and the Seventh Amendment, Palantir is entitled to argue to the jury that the true amount of unjust enrichment damages is impossible to prove and that reasonable royalties represent a more accurate method for compensating Palantir. *See Ajaxo Inc. v.*

*E*Trade Fin. Corp.*, 187 Cal.App.4th 1295 (2010). Although Palantir intends to present evidence that Abramowitz saved ***at least*** $2.5 million by misappropriating Palantir's trade secrets, it will explain that the true amount of his unjust enrichment is many multiples greater but is impossible to prove; therefore, the jury should award reasonable royalties. Among other reasons, the true amount of Abramowitz's unjust enrichment is not provable because, to develop the Palantir Solutions, Abramowitz would have needed to also develop the foundational ideas, methods, and designs from which those Solutions evolved at Palantir. The costs of that foundational work are impossible to calculate and not captured in the $2.5 million of avoided costs estimated by Palantir damages expert. Consequently, although the $2.5 million avoided-costs floor is relevant to the jury's calculation of a reasonable royalty, it does not constitute the true amount of unjust enrichment under California law. *Id*. at 1313 ("[W]here a defendant has not realized a profit or other calculable benefit as a result of his or her misappropriation of a trade secret, unjust enrichment is not provable . . . .").

In response, Abramowitz argues that Palantir's factual contention is impermissible because unjust enrichment is "not provable" only when the jury determines that the amount of enrichment is "zero." He is incorrect as a matter of established California law. Unjust enrichment is "not provable" not only "where the jury concludes that the defendant did not profit from its wrongdoing" (*i.e.*, where the amount is zero) but also, as a matter of law, "for lack of sufficient evidence" (*i.e.*, where the defendant may have been enriched but it is not possible to prove the amount of the enrichment with evidence). *Id.* at 1299–300; *see also id.* at 1313 ("[U]njust enrichment is not provable within the meaning of section 3426.3, subdivision (b), whether the lack of benefit is determined as a matter of law or as a matter of fact"). Indeed, any other conclusion would lead to absurd results. According to Abramowitz, as long as the jury can conclude that a defendant, by misappropriating a trade secret, saved ***at least one cent*** in costs, unjust enrichment is automatically "provable," even if the true amount of unjust enrichment is in the millions (but impossible to prove). This result is antithetical to the very purpose of reasonable royalties under CUTSA: to provide fair compensation to a plaintiff where it is not possible to prove actual amounts of damages or unjust enrichment.

Ignoring this caselaw and reasoning, Abramowitz mischaracterizes Palantir's contention as suggesting that reasonable royalties are appropriate "when a plaintiff can only prove less damages

than it feels entitled to." Abramowitz misses the point. There is a fundamental difference between (i) the jury finding damages provable but in a lesser amount than the plaintiff wanted, and (ii) the jury finding damages not provable, even though damages are indisputably ***not zero***. Palantir is entitled to argue to the jury that this case presents the latter scenario, rendering royalties appropriate.

*Second*, because CUTSA ties punitive damages to compensatory damages, Cal. Civ. Code § 3426.3(c), bifurcating reasonable royalties would also require a bifurcation of punitive damages—an idea that the Court has already rejected. (Dkt. 405 at 73:6-7 ("The punitive damages though, will be part of the first phase").) Abramowitz concedes as much but nonetheless claims that bifurcating punitive damages would not be prejudicial because whether Abramowitz acted maliciously will be decided during the first phase. Once again, Abramowitz misses the point. Because determination of ***the amount*** of punitive damages would have to be made during the second phase (if the jury agrees with Palantir that unjust enrichment is not provable), Palantir will be forced to present evidence concerning the appropriate penalty (*e.g.*, Abramowitz's wealth to show the ability to pay twice the amount of the royalty) during the second phase. This is neither practical nor appropriate, as the Court recognized during the pretrial conference.

*Third*, bifurcation would threaten to result in presentations of duplicative evidence. If the jury concludes that the amount of Palantir's unjust enrichment is "not provable," then the parties would be forced to present evidence pertaining to the costs Palantir expended on the development of its trade secrets during both phases of trial. For example, during the first phase, Palantir would present such evidence to show that, although Abramowitz saved at least $2.5 million in costs, unjust enrichment is not provable. Should the jury agree, Palantir would present identical evidence during the second phase of trial, but this time to show that the reasonable royalty should be at least $2.5 million because it constitutes the minimum Abramowitz would have expended on developing the trade secrets himself. Abramowitz's assertion to the contrary—that no evidence of avoided costs would need to be presented during the reasonable royalty phase—is contradicted by his own damages expert, whose ***primary contention*** is that reasonable royalty would be limited to the amount of avoided costs. (Dkt. 412 at 21 (describing Hansen's opinion "that the cost to develop the asserted trade secrets would limit the reasonable royalty Mr. Abramowitz would have been willing to pay").

**DISPUTED INSTRUCTION NO. 47 RE**

**REMEDIES FOR MISAPPROPRIATION OF TRADE SECRET**

**OFFERED BY ABRAMOWITZ**

If Palantir Technologies Inc. proves by a preponderance of the evidence that Marc Abramowitz misappropriated Palantir's trade secrets under the California Uniform Trade Secrets Act, then Palantir is entitled to recover damages if the misappropriation caused Palantir to suffer an actual loss or Abramowitz to be unjustly enriched.

**Authorities:**

California Civ. Jury Instr. 4409; California Civ. Jury Instr. 4410.

**Argument:**

Abramowitz's proposed instructions related to Palantir's reasonable royalties theory of damages appropriately reflect the necessary ordering of the issues, and present that remedy to the jury only after it has found liability and found that the amount of harm or unjust enrichment to be not provable. Palantir's proposals rest on a number of arguments that distort the language and purpose of CUTSA.

*First*, Palantir argues that bifurcation is prejudicial because it denies Palantir the opportunity to present reasonable royalties as a way to garner more damages than it is able to prove otherwise. Under CUTSA, however, here, Palantir is only entitled to a reasonable royalty if unjust enrichment is "not provable"—i.e., if it is a zero. *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1313, 115 Cal. Rptr. 3d 168, 183 (2010). The statute does not permit, as Palantir suggests, that reasonable royalties can be used to accommodate evidence that does not justify more than what Palantir considers to be its "minimal" damages. Put simply, reasonable royalties are appropriate "where a plaintiff fails to prove damages" not when a plaintiff can only prove less damages than it

feels entitled to. *Id.* Palantir's new theory is that it is entitled to argue to the jury that unjust enrichment is not *provable* as a matter of law. To be clear: Palantir has never said before this filing that it believes its unjust enrichment damages are not provable as a matter of law. Here, both parties have proffered experts that opine on the amount of Abramowitz's unjust enrichment. Under Palantir's view, if the jury agrees with Abramowitz's expert as to the amount of Abramowitz's unjust enrichment, the jury would have found the amount of unjust enrichment to be provable but nonetheless would still hear arguments from Palantir that it should be awarded more in damages as a reasonable royalty. That is impermissible under CUTSA. *Id.* at 1313 ("We conclude that where a defendant has *not* realized a profit or *other calculable benefit* as a result of his or her misappropriation of a trade secret, unjust enrichment is not provable within the meaning of section 3426.3, subdivision (b), whether the lack of benefit is determined as a matter of law or as a matter of fact.") (emphases added).

Palantir also argues against bifurcation on the issue of reasonable royalties because it would require bifurcation on punitive damages as well, which would prejudice Palantir. That is incorrect. Per Cal. Civ. Code § 3426.3(c), a jury need only consider whether willful and malicious misappropriation exists in determining whether to award punitive damages. Palantir has the burden to prove those elements in the first phase of the trial along with liability. Should the jury need to reach reasonable royalties, Palantir has not set forth a reason why it would be prejudicial for the jury to determine the amount of punitive damages after the jury has determined reasonable royalties. Palantir manufactures a claim that it will be prejudiced despite the reality that it will not need to introduce any additional evidence should the jury need to calculate punitive damages during the second phase of the trial.

Nor would bifurcation necessarily cause duplication of the evidence as Palantir suggests. Here, the same fact finder will adjudicate both phases of the trial. All that will be required in the second phase will be the presentation of Palantir's evidence that speaks solely to its theory of reasonable royalties. There will be no need to present again any predicate evidence which the jury has already heard. Indeed, it is Palantir's proposal, which presents the jury with a smorgasbord of remedy options, absent any guarantee that they are considered in the required sequential order, that

invites error and risks duplication should reversal be necessary. As the Court noted, absent bifurcation, there is real risk that a jury "make a less statutorily appropriate determination." Dkt. 405 at 72.

**DISPUTED INSTRUCTION NO. 48 RE**

**UNJUST ENRICHMENT**

**OFFERED BY PALANTIR**

Abramowitz was unjustly enriched if his misappropriation of Palantir's trade secrets caused Abramowitz to receive a benefit that he otherwise would not have achieved.

Palantir claims that Abramowitz's misappropriation caused Abramowitz to receive a benefit by avoiding the costs he otherwise would have incurred from developing the Palantir Solutions himself. To decide the amount of any unjust enrichment, determine the value of Abramowitz's benefit that would not have been achieved except for his misappropriation.

In calculating the amount of any unjust enrichment obtained by Abramowitz, do not take into account any amount that you included in determining any amount of damages for Palantir's actual loss due to Abramowitz's misappropriation of any of Palantir's trade secrets.

**Authorities:**

California Civ. Jury Instr. 4410 (2007).

**Argument:**

Palantir's Disputed Instruction Nos. 47 and 48 properly track CACI 4409 and 4410, respectively. Those model instructions set forth, first, the multiple remedies for trade secret misappropriation, and second, how unjust enrichment is calculated. As set forth above, Abramowitz's Disputed Instruction No. 47 improperly ignores certain remedies from 4409. In addition, Abramowitz's Disputed Instruction No. 47 improperly bundles 4410 with 4409, and then restates and adds and subtracts language to and from 4410 in ways that are unsupported by that model jury instruction. *Then*, Abramowitz's Disputed Instruction No. 48 restates 4410 yet again (again subtracting important language). Abramowitz thus includes a similar (incorrect) instruction in both Disputed Instruction Nos. 47 and 48. Abramowitz offers no authority for this structure and these

changes. Accordingly, Palantir submits that its proposal, which properly follows the California model jury instructions, will be more helpful to the jury. Abramowitz's Disputed Instruction No. 48 also deviates from CACI 4410 by including the final sentence "Such amounts must be assessed for each alleged trade secret individually." That new final sentence added by Abramowitz does not appear in CACI 4410 and is likely to result in jury confusion.

The only real difference between Palantir's Disputed Instruction No. 48 and CACI 4410 is that Palantir has properly omitted language contained in CACI 4410 about subtracting Abramowitz's reasonable expenses from the benefit he gained from his unjust enrichment. Palantir's modest modification to CACI 4410 is appropriate in the context of this case, because the benefit Abramowitz gained was avoiding development costs. It does not make sense to subtract reasonable expenses from a benefit category that is avoided costs. The calculation of avoided costs takes care of that without further subtraction. As such, Palantir's formulation is appropriate, and any other formulation would be confusing to the jury.

**DISPUTED INSTRUCTION NO. 48 RE**

**UNJUST ENRICHMENT**

**OFFERED BY ABRAMOWITZ**

Abramowitz was unjustly enriched if his misappropriation of Palantir's trade secrets caused Abramowitz to receive a benefit that he otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of Abramowitz's benefit that would not have been achieved except for his misappropriation. Then subtract from that amount Abramowitz's reasonable expenses, including the value of the fees and costs Abramowitz incurred in connection with his patent applications and business exploration efforts. Such amounts must be assessed for each alleged trade secret individually.

**Argument:**

Palantir's instruction inexplicably deviates from CACI No. 4410, the substance of which Abramowitz proposed in his Disputed Instruction No. 47. There is no reason for Palantir to delete relevant sections of CACI No. 4410, particularly those which instruct the jury to subtract from Palantir's potential award reasonable costs and expenses undertaken by Mr. Abramowitz. Palantir should not be allowed to artificially inflate its potential jury award in this way. Further, the Court indicated at the pretrial conference that damages needed to be assessed for each trade secret individually. Abramowitz's proposed instruction is in line with that guidance.

**DISPUTED INSTRUCTION NO. 49 RE**

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

**OFFERED BY PALANTIR**

If you decide that Abramowitz's misappropriation of any of Palantir's Solutions caused Palantir harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Palantir and to discourage similar conduct in the future.

In order to recover punitive damages, Palantir must prove by clear and convincing evidence that Abramowitz acted willfully and maliciously. You must determine whether Abramowitz acted willfully and maliciously. If you find that Abramowitz acted willfully and maliciously, you will then be asked to determine the amount of any punitive damages.

The amount of punitive damages awarded may not be more than (a) double Palantir's actual damages or Abramowitz's unjust enrichment or (b) double the amount of the reasonable royalty you determined should be paid by Abramowitz to Palantir.

"Willfully" means that Abramowitz acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that Abramowitz acted with an intent to cause injury, or that Abramowitz's conduct was despicable and was done with a willful and knowing disregard for the rights of others.

"Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. Abramowitz acted with knowing disregard if he was aware of the probable consequences of his conduct and deliberately failed to avoid those consequences.

**Authorities:**

California Civ. Jury Instr. 4411 (2007)

**Argument:**

Palantir's Disputed Instruction No. 49 is almost *in hac verba* of CACI 4411. Abramowitz's proposed Instruction 49 contains a misstatement of the law in its final sentence, which reads: "If you find that Palantir is entitled to punitive damages, the amount awarded may not be more than double the actual damages you calculated arising from Palantir's harm or Abramowitz's unjust enrichment." In fact, Civil Code § 3426.3(c) states that "[i]f willful and malicious misappropriation exists," then "exemplary damages" may be awarded "in an amount not exceeding twice any award made under subdivision (a) or (b)." Whereas subdivision (a) refers to "actual loss" or "unjust enrichment," subdivision (b) refers to payment of a reasonable royalty. Abramowitz's proposed Instruction 49 thus eliminates Palantir's statutory entitlement under subdivision (b) of Civil Code § 3426.3 to an award of exemplary damages in an amount not to exceed twice the amount of any reasonable royalty awarded to Palantir. This problem only exemplifies why bifurcation of reasonable royalties is impractical and improper. (*See infra at* Disputed Instruction No. 47.)

Curiously, Abramowitz takes the opposite view, claiming that without bifurcating both punitive damages and reasonable royalties, the jury would get confused. Palantir addressed this false contention in detail in the context of its Disputed Instruction No. 47.

**DISPUTED INSTRUCTION NO. 49 RE**

**PUNITIVE DAMAGES FOR WILLFUL AND MALICIOUS MISAPPROPRIATION**

**OFFERED BY ABRAMOWITZ**

If you decide that Abramowitz's misappropriation caused Palantir harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the harmful conduct and to discourage similar conduct in the future.

In order to recover punitive damages, Palantir must prove by clear and convincing evidence that Abramowitz acted willfully and maliciously. You must determine whether Abramowitz acted willfully and maliciously.

"Willfully" means that a party acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that a party acted with an intent to cause injury, or that its conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. A party acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

If you find that Palantir is entitled to punitive damages, the amount awarded may not be more than double the actual damages you calculated arising from Palantir's harm or Abramowitz's unjust enrichment.

**Authorities:**

California Civ. Jury Instr. 4411 (2007)

**Argument:**

Palantir's instruction illustrates exactly why unjust enrichment and reasonable royalty cannot be assessed by the jury concurrently. As discussed above relating to Disputed Instruction No. 47, at the pretrial conference the Court correctly identified that, absent bifurcation, should the jury find

liability, it may skip over the statutorily required analysis for unjust enrichment in favor of a larger award under the reasonable royalty analysis. Palantir's instruction, if given, would magnify this problem as it relates to punitive damages. As the Court noted, absent bifurcation, there is real risk that a jury "make a less statutorily appropriate determination" because the jury will be presented with a smorgasbord of remedy options, absent any guarantee that they are considered in the required sequential order. This means that the jury could forgo the statutorily required damages calculation for unjust enrichment (and punitive damages, if found) in favor of the higher reasonable royalty damages (and corresponding punitive damages). To be clear, Abramowitz is not asking for the punitive damages trial to be bifurcated, contrary to Palantir's assertion.

**STIPULATED INSTRUCTION NO. 50 RE**

**BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.6 (2017)

**STIPULATED INSTRUCTION NO. 51 RE**

**BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Authorities:**

9th Cir. Civ. Jury Instr. 1.7 (2017)

**DISPUTED INSTRUCTION NO. 52 RE**

**REASONABLE ROYALTY – ENTITLEMENT**

**OFFERED BY ABRAMOWITZ**

You have found liability but no harm to Palantir and no unjust enrichment by Abramowitz; we are now moving to the next phase. Palantir may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited. A reasonable royalty is merely discretionary—it need not be awarded, even if liability is proved.

**Argument:**

Abramowitz's proposed instruction is an accurate statement of the law and should be given. Additionally, Abramowitz incorporates his arguments related to bifurcation from Disputed Instruction No. 47 here. This instruction should be given during the second stage of the trial which will only be necessary if the jury finds that actual damages or unjust enrichment are not provable.

**DISPUTED INSTRUCTION NO. 52 RE**

**REASONABLE ROYALTY – ENTITLEMENT**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz's proposed instruction should be rejected both because it is duplicative of Disputed Instruction 53 and finds no support in any model instruction. Regardless, Abramowitz's proposed instruction is deficient because, as discussed in connection with Disputed Instruction No. 47, bifurcation of reasonable royalties is improper.

**DISPUTED INSTRUCTION NO. 53 RE**

**MISAPPROPRIATION OF TRADE SECRETS – REASONABLE ROYALTY**

**OFFERED BY PALANTIR**

If you determine that the full amount of actual damages that Palantir has suffered as a result of Abramowitz's misappropriation of any of the Palantir Solutions is not provable, or that the full amount of unjust enrichment that Abramowitz enjoyed as a result of misappropriating any of the Palantir Solutions is not provable, you may still award Palantir a reasonable royalty for no longer than the period of time the use could have been prohibited. A reasonable royalty is the payment that Abramowitz would have made to Palantir to license the use of any of the Palantir Solutions. In calculating a reasonable royalty, you should seek to calculate the royalty that would have resulted from a willing, arms-length hypothetical negotiation between Palantir and Abramowitz that would have taken place on or around the time of Abramowitz's first misappropriation of any of the Palantir Solutions.

In considering the nature of this negotiation, you must assume that the trade secret owner and the misappropriator would have acted reasonably and would have entered into a license agreement. You must also assume that both parties believed the trade secret owner to be in possession of enforceable trade secrets. Your role is to determine what the result of that hypothetical negotiation would have been. The test is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred. A reasonable royalty offers no promise of mathematical precision. Accordingly, some flexibility in the analysis is required to ensure that any difficulty of assessing damages in a trade secret case does not prevent fair compensation to the trade secret owner for loss or injury caused by misappropriation.

Among the relevant considerations are: whether it was the potential licensor's (Palantir's) practice to seek compensation from its licensees for their access to its trade secrets; whether it was the potential licensor's (Palantir's) practice to license its trade secrets to potential competitors; whether the potential licensor (Palantir) was concentrating its efforts on and directing significant resources towards developing business around the ideas embodied in its trade secrets; whether the potential licensor (Palantir) had derived value from its trade secrets, and if so, the amount of such

value; whether the potential licensor (Palantir) has previously licensed software, services, or products incorporating its trade secrets, and if so, the monetary amounts of such licenses; whether the prospective licensee (Abramowitz) sought to engage in competition with the potential licensor (Palantir) by using its trade secrets; the steps the potential licensee (Abramowitz) has taken, or the investments he has made, to commercialize any services, software, or products based on the Palantir trade secrets; the anticipated amount of net profits that the prospective licensee (Abramowitz) reasonably thought he could make by using or licensing the trade secrets; and any other economic factor that normally prudent businessmen would, under similar circumstances, take into consideration in negotiating the hypothetical license. For purposes of this hypothetical negotiation analysis, you should assume that Palantir would have licensed the Palantir Solutions to Abramowitz.

**Authorities:**

California Civil Code § 3426.3 (b); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970); N.D. Cal. Model Patent Jury Instr. 5.7 (2017); *Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 161-162 (2020). Pursuant to the Seventh Amendment of the United States Constitution, the "reasonable royalty" issue must be submitted to a jury when a claim under the California Uniform Trade Secret Act is litigated in federal court. *See De Lage Landen Operational Services, LLC v. Third Pillar Systems, LLC*, 2011 WL 1627899, *2 (E.D. Pa. 2011) ("Although the Seventh Amendment is not binding on the states, it is binding on the federal courts even in diversity cases since the use of a jury is not deemed to be an application of substantive state law."); *see also Wright & Miller*, 9 Fed. Prac. & Proc. Civ. § 2303 (4th ed.) ("[F]ederal law determines whether there is a jury trial right in a case involving state law that has been brought in federal court, and [] state law on the subject is wholly irrelevant.").

**Argument:**

Palantir's proposed instruction represents an accurate statement of the law as presented in the authorities Palantir cites. Abramowitz's Disputed Instruction No. 53, however, is deficient for several reasons:

*First*, for the reasons discussed in connection with Disputed Instruction No. 47, the Court should not order bifurcation of the reasonable royalties issue. Consequently, the first sentence of Abramowitz's proposed instruction is improper.

*Second*, Abramowitz's proposed instruction unduly emphasizes through repetition that "A reasonable royalty is merely discretionary—it need not be awarded, even if liability is proved." No court has held that such language to be required in a jury instruction. Palantir's proposal making clear that the jury "may"—not that it must—award Palantir a reasonable royalty is more neutral and appropriate.

*Third*, the final paragraph of Abramowitz's proposed instruction is improper because it contains a series of partisan, confusing statements that are slanted from the defense perspective. The first sentence—"Although some approximation is permitted in calculating a reasonable royalty, you must have sound economic and factual predicates for your analysis"—is unnecessary and slanted in Abramowitz's favor; the Court should instead adopt Palantir's proposal describing the correct parameters for a royalties calculation. The second sentence—"Using industry-wide data as a starting point is improper"—is unclear as to what "data" is being referenced and is otherwise unsupported by law. The third sentence—"Using license agreements that are not comparable to the hypothetical license agreement to be entered into by Abramowitz is improper"—is unnecessary, partisan, and amounts to an instruction that the jury should not consider irrelevant agreements; instead, the jury should be instructed to consider, as is the case under Palantir's proposal, whether Palantir "previously licensed software, services, or products incorporating its trade secrets." The final sentence—"You may also consider Abramowitz's alternatives to entering into a license agreement with Palantir when assessing what royalty, if any, is reasonable"—is unsupported by law and is unclear as to what is meant by "Abramowitz's alternatives."

**DISPUTED INSTRUCTION NO. 53 RE**

**MISAPPROPRIATION OF TRADE SECRETS – REASONABLE ROYALTY**

**OFFERED BY ABRAMOWITZ**

You have found liability but no harm to Palantir and no unjust enrichment by Abramowitz; we are now moving to the next phase. Palantir may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited.

A reasonable royalty is the payment that Abramowitz would have agreed to make to Palantir to license the use of any of the alleged trade secrets that you find to have been misappropriated. A reasonable royalty is merely discretionary—it need not be awarded, even if liability is proved. You should consider all the facts known and available to the parties at the time of the alleged misappropriation.

Although some approximation is permitted in calculating a reasonable royalty, you must have sound economic and factual predicates for your analysis. Using industry-wide data as a starting point is improper. Using license agreements that are not comparable to the hypothetical license agreement to be entered into by Abramowitz is improper. Any reasonable royalty award must be based in economic reality and not vague attributions of fees. You may also consider Abramowitz's alternatives to entering into a license agreement with Palantir when assessing what royalty, if any, is reasonable.

**Argument:**

Palantir's instruction is lengthy, confusing, and has no basis in law. By way of example, Palantir's instruction is inconsistent with California law that holds that a reasonable royalty is merely discretionary—it need not be awarded, even if liability is proved. *Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 165 (2020). Palantir's proposed instruction actually states the opposite, namely, that an agreement "would have" been reached in the hypothetical negotiation. Similarly, Palantir incorrectly asserts that the jury may award a "reasonable royalty if the "full amount" of unjust enrichment is not provable. This is a misstatement of the law. As discussed in relation to Disputed Instruction No. 47, Palantir is only entitled to a reasonable royalty if unjust

enrichment is "not provable"—i.e., if it is a zero. *Ajaxo, Inc. v. E*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 165 (2020). The statute does not permit, as Palantir suggests, that reasonable royalties can be used to accommodate evidence that does not justify more than what Palantir considers to be its "minimal" damages. Put simply, reasonable royalties are appropriate "where a plaintiff fails to prove damages" not when a plaintiff can only prove less damages than it feels entitled too. Id. Here, both parties have proffered experts that opine on the amount of Abramowitz's unjust enrichment. Under Palantir's view, if the jury agrees with Abramowitz 's expert as to the amount of Abramowitz's unjust enrichment, the jury would have found the amount of unjust enrichment to be provable but nonetheless would still hear arguments from Palantir that it should be awarded additional amounts. That is impermissible under CUTSA. Palantir's instruction also inappropriately instructs the jury that "flexibility" is required and fails to instruct the jury that the comparator licenses that Palantir's expert relied upon must be comparable to the hypothetical license. *NetFuel, Inc. v. Cisco Sys. Inc.*, 2020 WL 1274985, at *14–15 (N.D. Cal. Mar. 17, 2020). Nor does Palantir's instruction reflect the caselaw requiring that the reasonable royalty award be based in economic reality. *E.g.*, *Viasat, Inc. v. Space Sys./Loral, Inc.*, 2014 WL 3896073, at *9 (S.D. Cal. Aug. 8, 2014). Additionally, this instruction should be given during the second stage of the trial which will only be necessary if the jury finds that actual damages or unjust enrichment are not provable.

**DISPUTED INSTRUCTION NO. 54 RE**

**BREACH OF CONTRACT – INTRODUCTION**

**OFFERED BY PALANTIR**

Palantir claims that it and Abramowitz entered into a Non-Disclosure Agreement to maintain the confidentiality of Palantir's proprietary information. The terms of the Non-Disclosure Agreement impose a going forward obligation on the signatory to "hold *all* Proprietary Information in strict confidence and [] not use … or disclose any Proprietary Information for any purpose."

The terms of the Non-Disclosure Agreement impose on Abramowitz an obligation starting on the date of its execution—July 12, 2014—to not "use … or disclose any Proprietary Information for any purpose," regardless of whether that Proprietary Information was obtained from Palantir prior to the signing of the Non-Disclosure Agreement, on the day the Non-Disclosure Agreement was signed, or afterwards.

Palantir claims that Abramowitz breached this contract by misusing or disclosing Palantir's Proprietary Information, including by drafting, filing, and pursuing patent applications based on or substantially derived from Palantir's Proprietary Information, communicating Palantir's Proprietary Information to third parties, and undertaking efforts to commercialize his inventions.

Palantir also claims that Abramowitz's breach of this contract caused harm to Palantir for which Abramowitz should pay.

Abramowitz denies that he breached the Non-Disclosure Agreement and that Palantir was harmed.

**Authorities:**

California Civ. Jury Instr. 300 (2007); July 26, 2022 Order Denying Abramowitz's Motion for Summary Judgment (Dkt. 339).

**Argument:**

Palantir's Disputed Instruction No. 54 closely follows the form of CACI 300, inserting into that form the interpretation of the July 12, 2014 NDA set forth in this Court's Order Denying Abramowitz's Motion for Summary Judgment (Dkt. 339). As the Court properly found as a matter of law, the July 12, 2014 NDA is not—as Abramowitz argues—limited to a single day. *Id.* at 3-4. Abramowitz's Disputed Instruction No. 54 improperly ignores the Court's holding, attempting to instruct the jury that because "Palantir did not disclose any confidential information to [Abramowitz] on July 12, 2014 …, Palantir cannot show any breach." Abramowitz offers no support for the idea that, although the Court has already duly interpreted the July 12, 2014 NDA as a matter of law, the question of the interpretation of that contract should nonetheless be sent to the jury. Indeed, there are no issues of fact, as Abramowitz erroneously suggests, pertaining to "what the parties understanding and intent was" when creating the NDA because the Court has already determined that the NDA is unambiguous. At any rate, Abramowitz's proposed instruction does not send that question to the jury, but rather instructs the jury as to *Abramowitz's* preferred interpretation of that contract.

Abramowitz's Disputed Instruction No. 54 also improperly limits its description of Palantir's allegations by stating that Palantir's allegations are directed to improper "disclosure," but not to improper "use," of Palantir's Proprietary Information. Finally, the bottom half of Abramowitz's Disputed Instruction No. 54 contains language that does not come from CACI 300, and is thus unnecessary, unsupported, duplicative, and confusing here.

**DISPUTED INSTRUCTION NO. 54 RE**

**BREACH OF CONTRACT – INTRODUCTION**

**OFFERED BY ABRAMOWITZ**

Palantir alleges that Abramowitz breached a contract by violating the terms of a Nondisclosure Agreement signed on July 12, 2014. Palantir claims that Abramowitz violated this contract by disclosing Palantir's confidential information as defined and within the scope of that agreement. Palantir also claims that Abramowitz's breach of this contract caused harm to Palantir for which Abramowitz should pay.

Abramowitz denies that he breached the contract. He claims that Palantir did not disclose any confidential information to him on July 12, 2014 and, as such, Palantir cannot show any breach. Abramowitz also denies that Palantir and Abramowitz had a mutual understanding of the terms and scope of the contract. Abramowitz further denies that Palantir suffered any harm from his alleged breach of any contract.

Your job for this second claim will be to decide whether: (1) Palantir and Abramowitz entered into a contract; (2) Palantir did all, or substantially all, of the significant things that the contract required it to do; (3) Abramowitz did something that the contract prohibited him from doing; (4) Palantir was harmed; and (5) Abramowitz's breach of contract was a substantial factor in causing Palantir's harm. The July 12, 2014 Nondisclosure Agreement is the only contract at issue in this cause of action.

**Authorities:**

CACI 303

**Argument:**

This proposed instruction follows the CACI model. As Abramowitz argued at summary judgment, this interpretation of the July 12, 2014 NDA is correct and should be presented to the jury. In addition, there can be no valid agreement—and thus no contract to breach—if there was no meeting of the minds as to the terms of the NDA. Abramowitz's proposal instructs the jury as to that defense.

Moreover, although Abramowitz believes his interpretation of the contract should be adopted as a matter of law,  the Court has declined to adopt that instruction.  But there is still an issue as to what the parties understanding and intent was which is presented in instruction (and other of Abramowitz's proposed instructions).

**STIPULATED INSTRUCTION NO. 55 RE**

**CONTRACT FORMATION – ESSENTIAL FACTUAL ELEMENTS**

Palantir claims that the parties entered into a contract. To prove that a contract was created, Palantir must prove all of the following:

1. That the contract terms were clear enough that the parties could understand what each was required to do;

2. That the parties agreed to give each other something of value, a promise to do something or not to do something may have value; and

3. That the parties agreed to the terms of the contract. When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions.

If Palantir did not prove all of the above, then a contract was not created.

**Authorities:**

California Civ. Jury Instr. 302

**DISPUTED INSTRUCTION NO. 56 RE**

**BREACH OF CONTRACT – ESSENTIAL FACTUAL ELEMENTS**

**OFFERED BY PALANTIR**

To recover damages from Abramowitz for breach of contract, Palantir must prove all of the following:

1. That Palantir and Abramowitz entered into a contract;
2. That Abramowitz used or disclosed any Palantir Proprietary Information for any purpose after July 12, 2014;
3. That Palantir was harmed;
4. That Abramowitz's breach of contract was a substantial factor in causing Palantir's harm.

**Authorities:**

California Civ. Jury Instr. 303 (2020); July 26, 2022 Order Denying Abramowitz's Motion for Summary Judgment (Dkt. 339).

**Argument:**

Abramowitz's proposed version of this instruction seeks to artificially augment Palantir's burden with respect to its breach of contract claim by including inapplicable elements. Notably, Abramowitz's proposed instruction includes optional element 2 from CACI 303 even though the CACI instructions expressly provide that optional element 2 "involve[s] conditions precedent" and clarify that optional "element 2 should not be given unless the court has determined that dependent obligations are involved." Abramowitz has not alleged that his obligations to perform under the Palantir NDA were in any way dependent on an act of Palantir's and the NDA itself does not allow of such an interpretation. Contrary to Abramowitz's argument below, this provides a compelling "reason to depart from the CACI instruction" as the CACI instruction itself calls for such a departure under the circumstances of this action. Abramowitz's instruction also needlessly injects a

superfluous recitation of the burden of proof applicable to Palantir's cause of action not present in the model language. Further, this Court should adopt Palantir's articulation of element 2 in its instruction because it appropriately reflects this Court's summary judgment ruling regarding Abramowitz's obligation under the NDA (Dkt. 339 at 4) and will therefore clarify for the jury what Palantir must prove to succeed on that element.

**DISPUTED INSTRUCTION NO. 56 RE**

**BREACH OF CONTRACT – ESSENTIAL FACTUAL ELEMENTS**

**OFFERED BY ABRAMOWITZ**

To recover damages from Abramowitz for breach of contract, Palantir must prove by a preponderance of the evidence all of the following:

1. That Palantir and Abramowitz entered into a contract;
2. That Palantir did all, or substantially all, of the significant things that the contract required it to do;
3. That Abramowitz did something that the contract prohibited him from doing;
4. That Palantir was harmed; and
6. That Abramowitz's breach of contract was a substantial factor in causing Palantir's harm.

**Authorities:**

California Civ. Jury Instr. 303

**Argument:**

Palantir's proposed instruction improperly deletes one of the elements of breach of contract as outlined in the CACI No. 303. There is no reason to depart from the CACI instruction, which Abramowitz has proposed here.

**DISPUTED INSTRUCTION NO. 57 RE**

**BREACH OF CONTRACT**

**OFFERED BY ABRAMOWITZ**

The dispute in this cause of action is whether Abramowitz did something prohibited by the July 12, 2014 Agreement and whether that breach caused Palantir harm. To find for Palantir, you must find that:

1. That Palantir and Abramowitz entered into a contract—specifically, the July 12, 2014 Agreement.
2. Abramowitz disclosed information that was "Proprietary Information" as defined in the July 12, 2014 Agreement;
3. Palantir disclosed said information to him on the date the Agreement was signed; and
4. Abramowitz's breach of the July 12, 2014 Agreement was a substantial factor in causing Palantir's harm.

The July 12, 2014 Agreement is the only contract at issue in this case. You may not find for Palantir based on any other contract, written or oral.

**Authorities:**

California Civ. Jury Instr. 303

**Argument:**

This proposed instruction follows the CACI model and applies the elements in CACI No. 303 to the facts of this case. Such an instruction will assist the jury in adjudicating this case.

**DISPUTED INSTRUCTION NO. 57 RE**

**BREACH OF CONTRACT**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz's proposed instruction should be rejected both because it is duplicative of Disputed Instruction 56 (which is based on the same CACI instruction) and because it attempts to relitigate an issue the Court resolved in Palantir's favor in the Court's Order Denying Abramowitz's Motion for Summary Judgment. (Dkt. 339 at 4.) Element 3 in Abramowitz's instruction would direct the jury to adopt Abramowitz's view that the NDA's definition of "Proprietary Information" is limited to information Palantir disclosed to Abramowitz on the date the agreement was signed despite this Court's clear rejection of that argument. *Id.* ("The definition of Proprietary Information [in the NDA] … is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days.").

**DISPUTED INSTRUCTION NO. 58 RE**

**INTERPRETATION – DISPUTED WORDS**

**OFFERED BY ABRAMOWITZ**

Palantir and Abramowitz dispute the meaning of the following words in the July 12, 2014 NDA Agreement: "all Proprietary Information".

Plaintiff claims that the words mean all Palantir's confidential information disclosed before or after the Agreement was signed. Abramowitz claims that the words mean Palantir's information disclosed on the date the agreement was signed.

Palantir must prove by a preponderance of the evidence that its interpretation is correct. In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

**Authorities:**

California Civ. Jury Instr. 314

**Argument:**

This proposed instruction follows the CACI model. The interpretation of the July 12, 2014 NDA should be presented to the jury, who may consider all appropriate evidence regarding that contract, such as the intent of the parties, the language of the contract, the formation and drafting of the contract, and the like. Although Abramowitz believes his interpretation of the contract should be adopted as a matter of law, the Court has declined to adopt that instruction. But there is still an issue as to what the parties understanding and intent was which is presented in instruction (and other of Abramowitz's proposed instructions).

**DISPUTED INSTRUCTION NO. 58 RE**

**INTERPRETATION – DISPUTED WORDS**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

As with Disputed Instruction 57, Abramowitz's proposed instruction should be rejected because it attempts to relitigate an issue the Court resolved in Palantir's favor in the Court's Order Denying Abramowitz's Motion for Summary Judgment. (Dkt. 339 at 4.). CACI Instruction 314, upon which this instruction is based, makes clear that the "interpretation of a contract can be a matter of law for the court" and the instruction is appropriate only if a question of fact remains for the jury. Abramowitz's proposed instruction impermissibly seeks a jury determination on an issue already decided as a matter of law by the court. (Dkt. 339 at 4.) ("The definition of Proprietary Information [in the NDA] … is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days."). Indeed, there are no issues of fact, as Abramowitz erroneously suggests, pertaining to "what the parties understanding and intent was" when creating the NDA because the Court has already determined that the NDA is unambiguous. Abramowitz's instruction also needlessly injects a superfluous recitation of the burden of proof applicable to Palantir's cause of action not present in the model language. ("Palantir must prove by a preponderance of the evidence that its interpretation is correct.")

**DISPUTED INSTRUCTION NO. 59 RE**

**INTERPRETATION – MEANING OF ORDINARY WORDS**

**OFFERED BY ABRAMOWITZ**

You should assume that the parties intended the words in their contract to have their usual and ordinary meaning unless you decide that the parties intended the words to have a special meaning.

**Authorities:**

California Civ. Jury Instr. 315

**Argument:**

This proposed instruction follows the CACI model. There is no reason not to give it, for the reasons set forth above regarding Disputed Instruction No. 24.

**DISPUTED INSTRUCTION NO. 59 RE**

**INTERPRETATION – MEANING OF ORDINARY WORDS**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

As with Disputed Instructions 57 and 58, Abramowitz's proposed instruction should be rejected because it attempts to relitigate an issue the Court resolved in Palantir's favor in the Court's Order Denying Abramowitz's Motion for Summary Judgment. (Dkt. 339 at 4.). CACI 315, upon which this instruction is based, makes clear that this instruction is appropriate only where "contract interpretation may be a proper jury role." Abramowitz's proposed instruction impermissibly seeks a jury determination on an issue already decided as a matter of law by the court. (Dkt. 339 at 4.) ("The definition of Proprietary Information [in the NDA] … is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days.").

**DISPUTED INSTRUCTION NO. 60 RE**

**INTERPRETATION – CONSTRUCTION OF CONTRACT AS A WHOLE**

**OFFERED BY ABRAMOWITZ**

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts. You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**Authorities:**

California Civ. Jury Instr. 317

**Argument:**

This proposed instruction follows the CACI model. There is no reason not to give it, for the reasons set forth above regarding Disputed Instruction No. 24.

**DISPUTED INSTRUCTION NO. 60 RE**

**INTERPRETATION – CONSTRUCTION OF CONTRACT AS A WHOLE**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

As with Disputed Instructions 57 through 59, Abramowitz's proposed instruction should be rejected because it attempts to relitigate an issue the Court resolved in Palantir's favor in the Court's Order Denying Abramowitz's Motion for Summary Judgment. (Dkt. 339 at 4.). CACI 317, upon which this instruction is based, makes clear that this instruction is appropriate only where "contract interpretation may be a proper jury role." Abramowitz's proposed instruction impermissibly seeks a jury determination on an issue already decided as a matter of law by the court. (Dkt. 339 at 4.) ("The definition of Proprietary Information [in the NDA] … is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days.").

**DISPUTED INSTRUCTION NO. 61 RE**

**INTERPRETATION – CONSTRUCTION AGAINST DRAFTER**

**OFFERED BY ABRAMOWITZ**

In determining the meaning of the words of the contract, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against Palantir.

**Authorities:**

California Civ. Jury Instr. 320

**Argument:**

This proposed instruction follows the CACI model. There is no reason not to give it, for the reasons set forth above regarding Disputed Instruction No. 24.

**DISPUTED INSTRUCTION NO. 61 RE**

**INTERPRETATION – CONSTRUCTION AGAINST DRAFTER**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

As with Disputed Instructions 57 through 60, Abramowitz's proposed instruction should be rejected because it attempts to relitigate an issue the Court resolved in Palantir's favor in the Court's Order Denying Abramowitz's Motion for Summary Judgment. (Dkt. 339 at 4.). CACI 320, upon which this instruction is based, makes clear that this instruction is appropriate only where "contract interpretation may be a proper jury role." Abramowitz's proposed instruction impermissibly seeks a jury determination on an issue already decided as a matter of law by the court. (Dkt. 339 at 4.) ("The definition of Proprietary Information [in the NDA] … is not restricted by date to cover only information disclosed on that single day, or even information disclosed on that day or future days.").

**DISPUTED INSTRUCTION NO. 62 RE**

**INTRODUCTION TO CONTRACT DAMAGES**

**OFFERED BY PALANTIR**

If you decide that Palantir has proved its claim against Abramowitz for breach of contract, you also must decide how much money will reasonably compensate Palantir for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Palantir in as good a position as it would have been if Abramowitz had performed as promised.

To recover damages for any harm, Palantir must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

Palantir also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

Palantir claims damages for taking reasonable steps to mitigate harm from Abramowitz's breach.  Costs incurred in mitigating harms from a breach of a confidentiality agreement are foreseeable damages from that breach.

**Authorities:**

California Civ. Jury Instr. 350 (2010); July 26, 2022 Order Denying Abramowitz's Motion for Summary Judgment (Dkt. 339).

**Argument:**

In his Motion *in Limine* No. 2, Abramowitz seeks to exclude Palantir's breach-of-contract damages seeking reimbursement of the costs and expenses Palantir incurred in remediating Abramowitz's misconduct.  As described in Palantir's Opposition to that motion, his contentions are meritless.  Abramowitz also takes issue with the last sentence of Palantir's proposed instruction, but

that sentence accurately sets forth the applicable law. As the Court found in denying Abramowitz's motion for summary judgment, "Palantir is correct that costs incurred in mitigating harms from a breach of a confidentiality agreement are foreseeable damages from that breach." (Dkt. 339 at 6.)

**DISPUTED INSTRUCTION NO. 62 RE**

**INTRODUCTION TO CONTRACT DAMAGES**

**OFFERED BY ABRAMOWITZ**

If you decide that Palantir has proved its claim against Abramowitz for breach of contract, you also must decide how much money will reasonably compensate Palantir for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put Palantir in as good a position as it would have been if Abramowitz had performed as promised.

To recover damages for any harm, Palantir must prove by a preponderance of the evidence that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as result of the breach of the contract. Palantir also must prove by a preponderance of the evidence the amount of its damages.

It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

**Authorities:**

California Civ. Jury Instr. 350

**Argument:**

This proposed instruction follows the CACI model, except that it identifies the burden on Palantir. Additionally, the last sentence of Palantir's proposed instruction impermissibly deviates from the form instruction.

**STIPULATED INSTRUCTION NO. 63 RE**

**DUTY TO MITIGATE**

If Abramowitz breached the July 12, 2014 Agreement, and the breach caused harm, Palantir is not entitled to recover damages for harm that Abramowitz proves by a preponderance of the evidence Palantir could have avoided with reasonable efforts or expenditures.

You should consider the reasonableness of Palantir's efforts in light of the circumstances facing it at the time, including its ability to make the efforts or expenditures without undue risk or hardship.

If Palantir made reasonable efforts to avoid harm, then your award should include reasonable amounts that it spent for this purpose.

**Authorities:**

California Civ. Jury Instr. 358

**STIPULATED INSTRUCTION NO. 64 RE**

**NOMINAL DAMAGES**

If you decide that Abramowitz breached the contract but also that Palantir was not harmed by the breach, you may still award it nominal damages such as one dollar.

**Authorities:**

California Civ. Jury Instr. 360 (2003)

**STIPULATED INSTRUCTION NO. 65 RE**

**ARGUMENTS OF COUNSEL NOT EVIDENCE OF DAMAGES**

The arguments of the attorneys are not evidence of damages. Your award must be based on your reasoned judgment applied to the testimony of the witnesses and the other evidence that has been admitted during trial.

**Authorities:**

California Civ. Jury Instr. 3925

**DISPUTEDINSTRUCTION NO. 66 RE**

**PATENT LAW: INVENTORSHIP**

**OFFERED BY PALANTIR**

Abramowitz contends that he had "little influence on the specific contents" of his patent applications and that the specific claimed inventions in those applications were developed by his patent attorneys. Palantir contests these allegations and contends that the patent attorneys could not have developed any substantive portions of the claimed inventions in Abramowitz's applications because, if they had, they should have been named as co-inventors in those applications. In order for you, the jury, to assess these arguments, I will instruct you as follows.

Any person who makes a contribution to the conception of at least one of the claimed inventions in a patent application that is not insignificant in quality must be named as an inventor or co-inventor in the application.

**Authorities:**

FCBA Model Patent Jury Instructions at 4.3d; *Fina Oil and Chemical Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("The case law thus indicates that to be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.") (citations omitted).

**Argument:**

As his central defense in this action, Abramowitz has asserted that he personally had "little influence" over the specific claimed inventions in his patent applications, and that his patent attorneys came up with those claims themselves after doing independent research. (Dkt. 290-11 ¶¶ 189-90.) Palantir is entitled to rebut this contention by pointing out if that, if Abramowitz's contention were

true, his patent counsel should have been listed as co-inventors in his applications. Acknowledging this point, the Court recognized the need to provide an instruction on what constitutes inventorship in its *Daubert* order. (Dkt. 412 at 12.) Following the Court's guidance, Palantir respectfully submits that such an instruction should be given to the jury.

## . DISPUTED INSTRUCTION NO. 66 RE
## PATENT LAW: INVENTORSHIP
## OFFERED BY ABRAMOWITZ

Abramowitz contends that no such instruction should be given.

**Argument:**

Palantir cites to the Federal Circuit Bar's patent law model instructions on inventorship as basis for this instruction but largely ignores the appropriate context for when this kind of instruction should be given. The FCBA itself advises that "[t]his instruction should only be given in the event [an] alleged infringer has contended that the patent suffers from improper inventorship" which is not the case here. FCBA Model Patent Jury Instructions at 4.3d. This is not a patent infringement case and this instruction will only serve to confuse the jury.

## DISPUTED INSTRUCTION NO. 67 RE
## INSTRUCTION TO SEAL NOT RELEVANT TO MERITS
## OFFERED BY ABRAMOWITZ

I may order that certain information at trial be kept under seal. This is irrelevant to whether any information constitutes a trade secret. You should not draw any inferences related to the merits of the case from my decision to seal or not seal any information.

**Argument:**

At the Final Pretrial Conference, Palantir stated that it would seek to keep sealed certain documents at trial. If that occurs, this instruction is appropriate and necessary to prevent juror confusion on a key issue: whether Palantir's alleged trade secrets were, in fact, secret. Otherwise, the jury could infer that a document or information contains "trade secrets" because it is not shown to the public during trial. This would be improper and invites error.

**DISPUTED INSTRUCTION NO. 67 RE**

**INSTRUCTION TO SEAL NOT RELEVANT TO MERITS**

**OFFERED BY PALANTIR**

Palantir contends that no such instruction should be given.

**Argument:**

Abramowitz cites no model rule or other authority as a basis for his proposed instruction. It is also unclear what potential harm this instruction is intended to prevent or if the jury will hear any references to the sealing of certain documents. This instruction is unnecessary and should not be given.

Dated: November 10, 2022

HUESTON HENNIGAN LLP

By: /s/ *Yahor Fursevich*
Yahor Fursevich
Attorneys for Plaintiff
PALANTIR TECHNOLOGIES INC.

Dated: November 10, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ *Jack P. DiCanio*

Jack P. DiCanio
Attorneys for Defendant
MARC L. ABRAMOWITZ

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

*/s/ Yahor Fursevich*

Yahor Fursevich